**MUEHLBAUER LAW OFFICE, LTD.**
ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: (702) 330-4505
Facsimile: (702) 825-0141
Email:  andrew@mlolegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email:  jalieberman@pomlaw.com
          ahood@pomlaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JAIME R. MORENO, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>                    v.<br><br>MARATHON DIGITAL HOLDINGS, INC., MERRICK OKAMOTO, FREDERICK G. THIEL, SIMEON SALZMAN, and HUGH J. GALLAGHER,<br><br>                              Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jaime R. Moreno ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Marathon Digital Holdings, Inc. ("Marathon" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Marathon securities between May 10, 2021 and February 28, 2023, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Marathon operates as a digital asset technology company that mines digital assets with a focus on the blockchain ecosystem and the generation of digital assets in the United States.

3.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company overstated

the efficacy of its disclosure controls and procedures and internal control over financial reporting; (ii) as a result, the Company's revenues and cost of revenue were materially misstated during the Class Period; (iii) the foregoing, once revealed, was reasonably likely to have a material negative impact on the Company's financial condition; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

4.     On February 28, 2023, Marathon issued a press release "announc[ing] . . . that it has cancelled its webcast and conference call for the fourth quarter and fiscal year 2022, initially scheduled for today, February 28, 2023, at 4:30 p.m. Eastern time, and will postpone the publication of its corresponding financial results." That same day, Marathon disclosed receipt of a letter from the SEC relating to accounting errors in the Company's previously issued financial statements. The Company advised investors that the "statements contained in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2021 and the previously issued unaudited condensed consolidated financial statements for the interim periods in 2022 and 2021 as contained in the Company's Quarterly Reports on Form 10-Q for the fiscal periods ended March 31, 2021 and 2022, June 30, 2021 and 2022 and September 30, 2021 and 2022 . . . should no longer be relied upon" and will be restated.

5.     Also on February 28, 2023, market analyst *Seeking Alpha* commented on Marathon's announcement, stating that "[t]he company said its method for calculating the impairment of digital assets, chiefly bitcoin [], on a daily basis using a standard cutoff time wasn't in compliance with a requirement that calls for the intraday low price to be used," and, as such, "Marathon [] now estimates that both its revenue and cost of revenue for the year ended Dec. 31, 2021 were understated. Revenue [. . .], energy, hosting and other, are expected to increase in the restated 2021 numbers."

6.      On this news, Marathon's stock price fell $0.59 per share, or 8.31%, to close at $6.51 per share on March 1, 2023.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Marathon is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

11.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.      Plaintiff, as set forth in the attached Certification, acquired Marathon securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Marathon is a Nevada corporation with principal executive offices located at 1180 North Town Center Drive, Suite 100, Las Vegas, Nevada 89144. Marathon's common stock and redeemable warrants trade in an efficient market The Nasdaq Capital Market ("Nasdaq") under the ticker symbol "MARA".

14.     Defendant Merrick Okamoto ("Okamoto") served as the Company's Chief Executive Officer ("CEO") from prior to the start of the Class Period until April 2022.

15.     Defendant Frederick G. Thiel ("Thiel") has served as the Company's CEO since April 2022.

16.     Defendant Simeon Salzman ("Salzman") served as the Company's Chief Financial Officer ("CFO") from prior to the start of the Class Period until March 2022.

17.     Defendant Hugh J. Gallagher ("Gallagher") has served as the Company's CFO since March 2022.

18.     Defendants Okamoto, Thiel, Salzman, and Gallagher are sometimes referred to herein as the "Individual Defendants."

19.     The Individual Defendants possessed the power and authority to control the contents of Marathon's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Marathon's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Marathon, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then

materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

20.     Marathon and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Marathon operates as a digital asset technology company that mines digital assets with a focus on the blockchain ecosystem and the generation of digital assets in the United States.

### Materially False and Misleading Statements Issued During the Class Period

22.     The Class Period begins on May 10, 2021, Marathon issued a press release announcing the Company's Q1 2021 results.  The press release stated, in relevant part:

> "As our financial and operational results for the first quarter demonstrate, 2021 is lining up to be a banner year for Marathon as we are transforming our business into one of the largest enterprise Bitcoin mining operations in North America during what is currently one of the most profitable mining environments in Bitcoin's history," said Fred Thiel, Marathon's CEO. "Since the start of 2021, we have taken several steps to establish Marathon as one of the leading pure-play Bitcoin investment opportunities by increasing our hashrate over 689%, rebranding our organization, and increasing our total bitcoin holdings to over 5,324 bitcoins. We have continued to build on that leadership position by becoming the first Bitcoin miner to produce bitcoin that is fully compliant anti-money laundering laws and OFAC's standards by directing all of our hashrate to the Marathon OFAC Pool. With new miners being delivered and installed every day, we remain on track to achieve 10.37 EH/s by early 2022, and we look forward to continuing to scale the business for the betterment of our shareholders and the broader Bitcoin ecosystem in the coming quarters."

> Marathon's chief financial officer, Sim Salzman, commented, "The first quarter marked a substantial improvement in our financial performance as we grew revenues to $9.2 million, generated net income of $83.4 million, and earned $137.4 million in adjusted EBITDA. Additionally, we exited the quarter with $211.9 million in cash and with a total liquidity, defined as cash and bitcoin holdings, of approximately $504.5 million. While Bitcoin's future price and the network difficulty rate are subject to change, we believe Marathon's financial performance will continue to improve as more miners come online, increasing our ability to

generate revenues and yielding better economies of scale, which will drive profitability."

23.     That same day, Marathon filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2021 (the "Q1 2021 10-Q").  With respect to the Company's disclosure controls and procedures, the Q1 2021 10-Q stated, in relevant part:

> Our management is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act. Our management is also required to assess and report on the effectiveness of our internal control over financial reporting in accordance with Section 404 of the Sarbanes-Oxley Act of 2002 ("Section 404"). Our internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes of accounting principles generally accepted in the United States. Management assessed the effectiveness of our internal control over financial reporting as of March 31, 2021. In making this assessment, we used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) in Internal Control - Integrated Framework in the 2013 COSO framework. ***Based on this assessment, management concluded that our disclosure controls and procedures were effective***.
>
> ***
>
> As part of our ongoing program to implement changes and further improve our internal controls and in conjunction with our Code of Ethics, our independent directors have been working with management to include protocols and measures aimed at ensuring quality of our internal controls. Among those measures is the implementation of a whistleblower hotline, which allows third parties to anonymously report noncompliant activity.

(Emphasis added.)

24.     Appended to the Q1 2021 10-Q as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Thiel and Salzman, attesting that "[t]he information contained in the [Q1 2021 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

25.    On August 13, 2021, Marathon issued a press release announcing the Company's Q2 2021 results.  The press release stated, in relevant part:

> Marathon's CFO, Sim Salzman, commented, "When comparing Q2 2021 to Q1 2021, we grew our revenues by 220% to $29.3 million while generating non-GAAP operating income of $20.1 million. We exited the quarter with $170.6 million in cash and with a total liquidity, defined as cash and bitcoin holdings, of approximately $366.5 million. Given the number of non-cash items that impact our financial results, including but not limited to depreciation expense and impairments on our mined bitcoin holdings, we have introduced non-GAAP operating income. This metric portrays an operational equivalent to our formerly reported metric, adjusted EBITDA, and we believe it will help investors more objectively track our financial progress. Bitcoin's future price and the network difficulty rate are subject to change. However, we maintain our belief that Marathon's financial performance will continue to improve as more miners come online, increasing our probability of earning bitcoin."

26.    That same day, Marathon filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2021 (the "Q2 2021 10-Q").  With respect to the Company's disclosure controls and procedures, the Q2 2021 10-Q stated, in relevant part:

> Our management is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act. Our management is also required to assess and report on the effectiveness of our internal control over financial reporting in accordance with Section 404 of the Sarbanes-Oxley Act of 2002 ("Section 404"). Our internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes of accounting principles generally accepted in the United States. Management assessed the effectiveness of our internal control over financial reporting as of June 30, 2021. In making this assessment, we used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) in Internal Control - Integrated Framework in the 2013 COSO framework. ***Based on this assessment, management concluded that our disclosure controls and procedures were effective***.
>
> ***
>
> As part of our ongoing program to implement changes and further improve our internal controls and in conjunction with our Code of Ethics, our independent

directors have been working with management to include protocols and measures aimed at ensuring quality of our internal controls. Among those measures is the implementation of a whistleblower hotline, which allows third parties to anonymously report noncompliant activity.

(Emphasis added.)

27.    Appended to the Q2 2021 10-Q as exhibits were substantively similar certifications signed pursuant to SOX as discussed, *supra*, in ¶ 24, by Defendants Thiel and Salzman.

28.    On November 10, 2021, Marathon issued a press release announcing the Company's Q3 2021 results.  The press stated, in relevant part:

Marathon's CFO, Sim Salzman, commented, "With our increased hash rate and bitcoin's price appreciating, we grew our revenues 76% quarter-over-quarter from $29.3 million in the second quarter of 2021 to $51.7 million in the third quarter of 2021. This growth coupled with our efficient operations allowed us to generate non-GAAP income from operations of $43.5 million, or $0.43 per diluted share. Additionally, our non-GAAP net income, which excludes non-cash items and includes the change in fair value of our investment fund, was $85.4 million, or $0.85 per diluted share, as the increase in bitcoin's price drove our investment fund to appreciate as well. We exited the quarter with $32.9 million in cash and with total liquidity of approximately $315.6 million. Subsequent to the quarter's end, we obtained a $100 million line of credit, secured by our bitcoin holdings and USD, which further strengthened our liquidity position. Given our track record and growth trajectory, we maintain our position that Marathon's financial performance will continue to improve as we focus on efficiently increasing our hash rate."

29.    On November 15, 2021, Marathon filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2021 (the "Q3 2021 10-Q").  With respect to the Company's disclosure controls and procedures, the Q3 2021 10-Q stated, in relevant part:

Our management is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act. Our management is also required to assess and report on the effectiveness of our internal control over financial reporting in accordance with Section 404 of the Sarbanes-Oxley Act of 2002 ("Section 404"). Our internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes of accounting principles generally

accepted in the United States. Management assessed the effectiveness of our internal control over financial reporting as of September 30, 2021. In making this assessment, we used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) in Internal Control - Integrated Framework in the 2013 COSO framework. ***Based on this assessment, management concluded that our disclosure controls and procedures were effective***.

\*\*\*

As part of our ongoing program to implement changes and further improve our internal controls and in conjunction with our Code of Ethics, our independent directors have been working with management to include protocols and measures aimed at ensuring quality of our internal controls. Among those measures is the implementation of a whistleblower hotline, which allows third parties to anonymously report noncompliant activity.

30.    Appended to the Q3 2021 10-Q as exhibits were substantively similar certifications signed pursuant to SOX as discussed, *supra*, in ¶ 24, by Defendants Thiel and Salzman.

31.    On March 1, 2022, Marathon issued a press release announcing the Company's Q4 and fiscal year 2021 results. The press release stated, in relevant part:

"Our primary objectives for 2022 are to effectively deploy our miners, achieve our growth targets, and continue expanding our competitive moat. Deploying at scale behind the meter involves breaking some new ground, and now that we have overcome some of those initial hurdles, we expect deployments to accelerate this quarter and throughout the rest of the year. We believe Marathon remains well positioned to generate approximately 23.3 Eh/s and for our mining operations to be 100% carbon neutral by early 2023. We look forward to another strong year for Marathon as we continue our mission of supporting the adoption, security, and evolution of Bitcoin by building one of the largest, most agile, and most sustainably operated Bitcoin mining operations in the world."

Marathon's CFO, Sim Salzman, commented, "In 2021, we grew our revenues 3,353% year-over-year to $150.5 million. Due to the leverage in our business model, we produced non-GAAP income from operations of $118.7 million and non-GAAP net income of $168.7 million, or $1.70 per diluted share, during the same time period. In the fourth quarter, we achieved two financial milestones that strengthened our liquidity position. We obtained a $100 million line of credit secured by our bitcoin holdings, and we raised approximately $747.5 million in a convertible note offering in which the notes are unsecured and the coupon rate is 1%. Given the strength of our business model, our track record of efficiently capitalizing on market events, and our current growth trajectory, we continue to

believe that our financial and operational performance will continue to improve as we focus on efficiently increasing our hash rate."

32.     On May 4, 2022, Marathon issued a press release announcing the Company's Q1 2022 results.  The press release stated, in relevant part:

**First Quarter 2022 Financial Results**
Revenue increased to $51.7 million, an increase of $42.6 million, or 465%, from the prior-year quarter and a decrease of $8.6 million, or 14%, from the fourth quarter of 2021. Bitcoin production increased to 1,259 bitcoin during the period, a 556% increase from the prior-year quarter and a 15% increase from the fourth quarter of 2021. The revenue decline from the fourth quarter of 2021 was the result of an approximate 25% decrease in average revenue per bitcoin mined, partially offset by the increase in bitcoin production during the first quarter of 2022.

\*\*\*

"In the first quarter of 2022, we increased our bitcoin production 556% year-over-year and 15% from the prior quarter, producing a record 1,259 bitcoin even as the global hash rate rose by approximately 17% in the same period," said Fred Thiel, Marathon's chairman and CEO. "At Marathon, we are constantly pushing boundaries to propel our business and our industry forward, but as the first quarter and subsequent events have demonstrated, not every industry operates at the same pace as we do. Innovation is not a linear process, and in the first quarter, we experienced regulatory friction related to breaking the mold on deploying our miners behind the meter at power facilities operated by some of the largest renewable energy companies in the United States. As a result, our deployment schedule shifted by 45 days in the first quarter. Encouragingly, in March, the grid operators in Texas granted permission for all 280 megawatts of the first major facility in Texas to be energized. Currently, the pace of deployment is predominantly determined by the pace of construction, which continued unimpeded as we worked through the regulatory and permitting friction.

"Our primary focus for 2022 remains the deployment of our miners. This year is all about execution. Given the progress we have made to date in deploying behind the meter, we believe we will be through our backlog of miners and fully back on track with deployments before the end of this year, keeping us on pace to reach 23.3 EH/s by early 2023. We believe 2022 will be transformational for Marathon as we are in the process of deploying nearly 200,000 miners and transitioning our operations to be 100% carbon neutral."

33.     That same day, Marathon hosted an earnings call with investors and analysts to discuss the Company's Q1 2022 results (the "Q1 2022 Earnings Call").  During the scripted portion of the Q1 2022 Earnings Call, Defendant Thiel stated, in relevant part:

> Some strategic and operational highlights. In Q1, we made substantial progress, strengthening Marathon's competitive advantages to expand our position as the leading Bitcoin miner in North America. A year ago, when I transitioned from the Board of Directors to become CEO, we had 12,000 miners operating. Our hash rate was 1.3x hash and Marathon consisted of 4 full-time employees. Today, we have approximately 37,000 miners installed. Our hash rate is more than 3x higher and we have 15 full-time employees. Most of whom are in senior level positions that extend across technology, operations, strategy and finance.

34.     On August 8, 2022, Marathon issued a press release announcing the Company's Q2 2022 results and bitcoin and mining operation updates for July 2022.  The press release stated, in relevant part:

> "In the second quarter of 2022, we increased our bitcoin production 8% year-over-year, producing 707 bitcoin, and we continued to install miners in Texas in anticipation of energization as we worked through both operational obstacles and a challenging macro environment," said Fred Thiel Marathon's chairman and CEO. "Energization delays, maintenance and weather issues in Montana, and an approximately 56% decline in the price of bitcoin during the quarter, severely impacted our bitcoin production and financial results. These items reduced our revenues, caused us to record a $127.6 million impairment on our bitcoin holdings, and decreased the fair market value of our investment fund by $79.7 million. However, given the groundwork we laid during the quarter and the progress we have made since, we are optimistic that Marathon's operational and financial positioning is improving.

35.     That same day, Marathon hosted an earnings call with investors and analysts to discuss the Company's Q2 2022 results (the "Q2 2022 Earnings Call").  During the scripted portion of the Q2 2022 Earnings Call, Defendant Thiel stated, in relevant part:

> The second quarter tested our resilience and our resourcefulness. As a result, even as recent events have demonstrated, we not only weathered the difficult times, but we capitalized on opportunities to improve our operational and financial position subsequent to the quarter's end.

***

In summary, the second quarter was challenging for the industry and for Marathon in particular. Bitcoin mining is a nascent industry, and as I mentioned in our last call, there is no playbook. However, given our progress, we're confident that we remain on track to grow our position as a leader in this space. Miners are coming online in Texas. We have hosting arrangements secured to achieve our target of 23.3 exahash by mid-next year. Our mining fleet is state-of-the-art, consisting predominantly of the most efficient bitcoin miners available in the market. We have a warchest big point in our liquidity position, balance sheet continued to improve.

Overall, we have entered the second half of the year with added confidence that we remain on track to grow our position as a leader in supporting and securing the bitcoin ecosystem.

36.     On November 8, 2022, Marathon issued a press release announcing the Company's

Q3 2022 results.  The press release stated, in relevant part:

"The third quarter of 2022 was a transition and rebuilding period at Marathon, during which we fully exited the Hardin facility in Montana and began energizing servers at new locations, most notably the 280-megawatt data center that resides behind the meter at the King Mountain wind farm in McCamey, Texas," said Fred Thiel, Marathon's chairman and CEO. "We sequentially improved our bitcoin production each month during the quarter as we rebuilt our hash rate from approximately 0.7 exahashes per second in early July to 3.8 exahashes per second by September 30. This progress continued subsequent to the quarter's end as we increased our hash rate an additional 84% to approximately 7 exahashes per second by November 1. We also realized our highest production month to date in October when we produced 615 bitcoin, nearly equal to our entire production during the third quarter.

"We believe Marathon has a strong foundation on which we can continue to build our hash rate. Our near-term goal is to reach approximately 9.0 exahashes per second by the end of the year, and we continue to target 23 exahashes per second near the middle of 2023 as we strive to establish our position as a leader in supporting and securing the bitcoin ecosystem."

37.     That same day, Marathon hosted an earnings call with investors and analysts to

discuss the Company's Q3 2022 results (the "Q3 2022 Earnings Call").  During the scripted portion

of the Q3 2022 Earnings Call, Defendant Thiel stated, in relevant part:

The third quarter was a transition and rebuilding period at Marathon. With the facility in Hardin, Montana off-line and energization of miners in Texas delayed, we entered the third quarter with only 6,000 miners operational, producing approximately 0.7x exahashes per second. Unsurprisingly, the operational

transition that occurred during the third quarter caused our financial results to dip both quarter-over-quarter and year-over-year. However, as our consistently improving Bitcoin production substantiates, our confidence in our ability to rebuild our hash rate while maintaining a healthy balance sheet was well founded. Today, we believe Marathon is a strong foundation on which we can continue to efficiently grow towards our goal of 23 exahashes per second by mid-2023, and expand our position as the leader in securing and supporting the Bitcoin ecosystem.

38.     The statements referenced in ¶¶ 22-37 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company overstated the efficacy of its disclosure controls and procedures and internal control over financial reporting; (ii) as a result, the Company's revenues and cost of revenue were materially misstated during the Class Period; (iii) the foregoing, once revealed, was reasonably likely to have a material negative impact on the Company's financial condition; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

39.     On February 28, 2023, Marathon issued a press release "announc[ing] . . . that it has cancelled its webcast and conference call for the fourth quarter and fiscal year 2022, initially scheduled for today, February 28, 2023, at 4:30 p.m. Eastern time, and will postpone the publication of its corresponding financial results."

40.     That same day, in a Form 8-K filed with the SEC, Marathon disclosed receipt of a letter from the SEC relating to accounting errors in the Company's previously issued financial statements.  Specifically, the Company advised in relevant part:

On February 27, 2023, the Company's Audit Committee of the Board of Directors, after consultation with Marcum LLP, the Company's independent auditor, concluded that due to certain accounting errors, as described below, the previously issued audited consolidated financial statements contained in the Company's

**CLASS ACTION COMPLAINT**
13

Annual Report on Form 10-K for the fiscal year ended December 31, 2021 and the previously issued unaudited condensed consolidated financial statements for the interim periods in 2022 and 2021 as contained in the Company's Quarterly Reports on Form 10-Q for the fiscal periods ended March 31, 2021 and 2022, June 30, 2021 and 2022 and September 30, 2021 and 2022 (the "Impacted Financial Statements") should no longer be relied upon. Similarly, related earnings releases and other financial communications for these periods should no longer be relied upon. The Company intends to correct the errors and will be restating the Impacted Financial Statements.

41.     Also on February 28, market analyst *Seeking Alpha* commented on Marathon's announcement, stating, in relevant part:

Marathon [. . .] said Tuesday it will restate its full year 2021 and quarterly earnings for that year and for the first three quarters of 2022 due to accounting errors.

Specifically, the bitcoin miner determined that it had incorrectly calculated impairment on a daily basis of its digital assets and it had incorrectly accounted for revenue from a bitcoin mining pool that it had participated in and operated in late 2021 and early 2022.

Now that Marathon [] needs to restate its previously reported financial statements for 2021 and 2022, the company will not be able to file its 2022 annual 10-K statement by the filing deadline of March 1, it said in a filing. It cancelled its conference call for Q4 earnings and will postpone the publication of its financial results.

The company said its method for calculating the impairment of digital assets, chiefly bitcoin [], on a daily basis using a standard cutoff time wasn't in compliance with a requirement that calls for the intraday low price to be used.

Regarding the bitcoin mining pool's revenue recognition, Marathon [] had determined that the company acted as an agent in the pool, which included a small number of unrelated third-party participants. As a result, it recorded revenue on a net basis, subtracting any revenue allocated to the third-party pool participants from its revenue as the operator of the pool.

It later found out that its assessment was incorrect and should have concluded that it acted as principal. That means the company should have recorded gross revenue rather than net revenue.

Marathon [] now estimates that both its revenue and cost of revenue for the year ended Dec. 31, 2021 were understated. Revenue and cost of revenue, energy, hosting and other, are expected to increase in the restated 2021 numbers.

The restatement of the impacted financial statement isn't expected to have any effect on total margin, operating income or net income in 2021 or any of the interim periods in 2021 or 2022, it said.

Marathon [] also said it no longer operates a pool that includes third parties.

The company was expected to post a Q4 loss per share of $0.17 and revenue of $33.98M, according to consensus estimates.

42.     On this news, Marathon's stock price fell $0.59 per share, or 8.31%, to close at $6.51 per share on March 1, 2023.

43.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

44.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the Company's securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Marathon securities were actively traded on the Nasdaq.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Marathon or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Marathon;

- whether the Individual Defendants caused Marathon to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Marathon securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

50.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Marathon securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the Nasdaq and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Marathon securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

51.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

52.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

1

2

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

3

4      53.      Plaintiff repeats and re-alleges each and every allegation contained above as if fully

5 set forth herein.

6      54.      This Count is asserted against Defendants and is based upon Section 10(b) of the

7 Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

8      55.      During the Class Period, Defendants engaged in a plan, scheme, conspiracy and

9

10 course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions,

11 practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other

12 members of the Class; made various untrue statements of material facts and omitted to state

13 material facts necessary in order to make the statements made, in light of the circumstances under

14 which they were made, not misleading; and employed devices, schemes and artifices to defraud in

15 connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout

16 the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members,

17 as alleged herein; (ii) artificially inflate and maintain the market price of Marathon securities; and

18 (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Marathon

19

20 securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan

21 and course of conduct, Defendants, and each of them, took the actions set forth herein.

22      56.      Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the

23 Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly

24 and annual reports, SEC filings, press releases and other statements and documents described

25 above, including statements made to securities analysts and the media that were designed to

26 influence the market for Marathon securities.  Such reports, filings, releases and statements were

27

28

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Marathon's finances and business prospects.

57.     By virtue of their positions at Marathon, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

58.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Marathon, the Individual Defendants had knowledge of the details of Marathon's internal affairs.

59.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Marathon.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Marathon's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Marathon securities was artificially inflated throughout the Class Period.  In

ignorance of the adverse facts concerning Marathon's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Marathon securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

60.     During the Class Period, Marathon securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Marathon securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Marathon securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Marathon securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

61.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure

that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

63.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64.     During the Class Period, the Individual Defendants participated in the operation and management of Marathon, and conducted and participated, directly and indirectly, in the conduct of Marathon's business affairs.  Because of their senior positions, they knew the adverse non-public information about Marathon's misstatement of income and expenses and false financial statements.

65.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Marathon's financial condition and results of operations, and to correct promptly any public statements issued by Marathon which had become materially false or misleading.

66.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Marathon disseminated in the marketplace during the Class Period concerning Marathon's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Marathon to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Marathon within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Marathon securities.

67.     Each of the Individual Defendants, therefore, acted as a controlling person of Marathon.  By reason of their senior management positions and/or being directors of Marathon, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Marathon to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Marathon and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

68.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Marathon.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 30, 2023                              Respectfully submitted,

**MUEHLBAUER LAW OFFICE, LTD.**

*/s/ Andrew R. Muehlbauer*

Andrew R. Muehlbauer
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: (702) 330-4505
Facsimile: (702) 825-0141
Email: andrew@mlolegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email:  jalieberman@pomlaw.com
         ahood@pomlaw.com

*Attorneys for Plaintiff*