**THE O'MARA LAW FIRM, P.C.**
David C. O'Mara
311 East Liberty St.
Reno, Nevada 89501
Tel: 775-323-1321
Fax: 775-323-4082
Email: david@omaralaw.net

**LEVI & KORSINSKY, LLP**
Adam M. Apton
55 Broadway, 4th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Movant James R. Lax*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JAIME R. MORENO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MARATHON DIGITAL HOLDINGS, INC., MERRICK OKAMOTO, FREDERICK G. THIEL, SIMEON SALZMAN, and HUGH J. GALLAGHER, <br><br> Defendants. | Case No. 2:23-cv-00470-RFB-DJA <br><br> **JAMES R. LAX'S OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL** |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   ARGUMENT .......................................................................................................... 3

    A.  The PSLRA Requires Courts to Appoint a Lead Plaintiff at the Outset of the Action. .... 3

    B.  Mr. Lax is the Presumptive Lead Plaintiff. ....................................................... 3

        1.  Mr. Lax Possesses the Largest Financial Interest........................................... 3

        2.  Mr. Lax Has Made the Requisite Prima Facie Showing of His Typicality and Adequacy Under Rule 23 ......................................................................... 10

        3.  There is No Evidence to Rebut the Presumption in Mr. Lax's Favor. ...................... 12

    C.  Assuming *Arguendo* the Court Aggregates the Marathon Investor Group's Losses, the Group Still Fails to Demonstrate Its Adequacy and Cannot Trigger the Presumption of "Most Adequate Plaintiff". ............................................................................. 13

    D.  Approval of Movant's Choice of Counsel Is Appropriate. ..................................... 15

III.  CONCLUSION ...................................................................................................... 15

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Ali v. Intel Corp.,*

No. 18-cv-00507-YGR, 2018 U.S. Dist. LEXIS 89401 (N.D. Cal. May 29, 2018).............. 10

*Arciaga v. Barrett Bus. Servs., Inc.,*

No. C14-5884 BHS, 2015 U.S. Dist. LEXIS 22879 (W.D. Wash. Feb. 25, 2015)............... 13

*In re Bally Total Fitness Sec. Litig.,*

No. 04 C 3530, 2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005)............................... 10

*Bodri v. GoPro, Inc.,*

No. 16-cv-00232-JST, 2016 U.S. Dist. LEXIS 57559 (N.D. Cal. Apr. 28, 2016)............ 5, 14

*In re Cavanaugh,*

306 F.3d 726 (9th Cir. 2002) ....................................................................................... *passim*

*In re Comverse Tech., Inc. Sec. Litig.,*

No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2,

2007)..................................................................................................................................... 8

*Crihfield v. CytRx Corp.,*

Case Nos.: CV 16-05519 SJO (SKx); CV 16-05666 SJO (SKx), 2016 U.S. Dist.

LEXIS 181615 (C.D. Cal. Oct. 26, 2016) ........................................................................... 3

*Deora v. NantHealth, Inc.,*

No. CV 17-01825 BRO (MRWx), 2017 U.S. Dist. LEXIS 117499 (C.D. Cal. May

31, 2017)............................................................................................................................. 11

*In re Donnkenny Inc. Sec. Litig.,*

171 F.R.D. 156 (S.D.N.Y. 1997)........................................................................................... 5

*Dura Pharmaceuticals, Inc. v. Broudo,*

544 U.S. 336 (2005) ................................................................................................... 7, 8, 9

*Eichenholtz v. Verifone Holdings, Inc.,*

No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008).......... 5, 13

*Ferrari v. Gisch*,

225 F.R.D. 599 (C.D. Cal. 2004)........................................................................................ 10

*Foster v. Maxwell Techs., Inc.*,

No. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538 (S.D. Cal. Oct. 24,

2013)...................................................................................................................................... 8

*Frias v. Dendreon Corp.*,

835 F. Supp. 2d 1067 (W.D. Wash. 2011) ..................................................................... 7, 13

*In re Gemstar-TV Guide Int'l Sec. Litig.*,

209 F.R.D. 447 (C.D. Cal. 2002)......................................................................................... 4

*Gordon v. Sonar Capital Mgmt. LLC*,

92 F. Supp. 3d 193 (S.D.N.Y. 2015) ................................................................................... 9

*Hall v. Medicis Pharm. Corp.*,

2009 U.S. Dist. LEXIS 24093 (D. Ariz. Mar. 10, 2009)................................................... 10

*Hanon v. Dataproducts Corp.*,

976 F.2d 497 (9th Cir. 1992)............................................................................................. 10

*Hessefort v. Super Micro Comput., Inc.*,

317 F. Supp. 3d 1056 (N.D. Cal. 2018)............................................................................... 9

*Hufnagle v. Rino Int'l Corp.*,

No. CV 10-8695-VBF(VBKx), 2011 U.S. Dist. LEXIS 19771 (C.D. Cal. Feb. 14,

2011).................................................................................................................................. 12

*Isaacs v. Musk,*

No. 18-cv-04865-EMC, 2018 U.S. Dist. LEXIS 200717 (N.D. Cal. Nov. 27, 2018)..... 11, 14

*In re Jones Soda Co. Secs. Litig.*,

No. C07-1366RSL, 2008 U.S. Dist. LEXIS 14884 (W.D. Wash. Feb. 12, 2008) .................. 4

*In re K-V Pharm. Co. Sec. Litig.*,

No. 11CV01816 AGF, 2012 U.S. Dist. LEXIS 62161 (E.D. Mo. May 3, 2012)................... 9

*In re LightInTheBox Holding Co., Sec. Litig.*,

13 Civ. 6016 (PKC), 2013 U.S. Dist. LEXIS 165842 (S.D.N.Y. Nov. 21, 2013) ................. 9

*Mannkind Sec. Actions,*

No. CV 11-00929 GAF (SSx), 2011 U.S. Dist. LEXIS 164320 (C.D. Cal. Apr. 27, 2011) ............................................................................................................................ 4, 7

*Marjanian v. Allied Nev. Gold Corp.,*

No. 3:14-cv-0175-LRH-WGC, 2014 U.S. Dist. LEXIS 203290 (D. Nev. Nov. 7, 2014) .................................................................................................................................. 8

*Mersho v. United States Dist. Court,*

6 F.4th 891 (9th Cir. 2021) .................................................................................................. 2

*In re Netflix, Inc., Sec. Litig.,*

Case Nos. 12-0225 SC; 12-1030 LHK, 2012 U.S. Dist. LEXIS 59465  (N.D. Cal. Apr. 27, 2012) ..................................................................................................................... 14

*In re Network Assocs., Inc., Securities Litigation,*

76 F. Supp. 2d 1017 (N.D. Cal. 1999) ................................................................................ 5

*Paddock v. Dreamworks Animation SKG, Inc.,*

CV 14-6053 SJO (Ex); CV 14-06201 SJO (Ex), 2014 U.S. Dist. LEXIS 194327 (C.D. Cal. Oct. 22, 2014) ................................................................................................... 4

*In re Razorfish, Inc. Sec. Litig.,*

143 F. Supp. 2d 304 (S.D.N.Y. 2001) ................................................................................. 7

*In re Refco Inc. Sec. Litig.,*

No. 08 CIV. 3065 JSR, 2013 U.S. Dist. LEXIS 116700 (S.D.N.Y. Aug. 2, 2013) ................ 9

*Ruland v. InfoSonics Corp.,*

2006 U.S. Dist. LEXIS 79144 (S.D. Cal. Oct. 23, 2006) ......................................... 4, 7, 8, 13

*Sallustro v. Cannavest Corp.,*

93 F. Supp. 3d 265 (S.D.N.Y. 2015) ................................................................................... 8

*Schueneman v. Arena Pharm., Inc.,*

No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373 (S.D. Cal. Aug. 8, 2011) ....... 8, 9

*Schwartz v. Opus Bank,*

No. CV 16-07991-AB (JPRx), 2017 U.S. Dist. LEXIS 217637 (C.D. Cal. Feb. 23,

2017)..................................................................................................................... 11

*In re Spectrum Pharm., Inc.,*

No. 2:13-CV-00433-LDG, 2014 U.S. Dist. LEXIS 38322 (D. Nev. Mar. 20, 2014) ........... 14

*Staton v. Boeing Co.,*

327 F.3d 938 (9th Cir. 2003) ................................................................................. 11

*In re Stitch Fix, Inc. Sec. Litig.,*

18-cv-06208-JD, 2019 U.S. Dist. LEXIS 134592 (N.D. Cal. Aug. 9, 2019)....................... 14

*In re Surebeam,*

2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Dec 31, 2003) ......................................... 7

*In re Tesla, Inc. Sec. Litig.,*

No. 18-cv-04865-EMC, 2018 U.S. Dist. LEXIS 212238 (N.D. Cal. Dec. 17, 2018............. 11

*Tsirekidze v. Syntax-Brillian Corp.*,

No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562 (D. Ariz. Apr. 4, 2008).... 5, 15

*Veal v. LendingClub Corp.,*

No. 18-cv-02599-BLF, 2018 U.S. Dist. LEXIS 190912 (N.D. Cal. Nov. 7, 2018) .............. 11

*Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*,

No. 20-cv-0966-AJB-DEB, 2021 U.S. Dist. LEXIS 27438 (S.D. Cal. Feb. 12, 2021)......... 10

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.,* 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y.

Jan. 24, 2006) ....................................................................................................... 10

*Welgus v. TriNet Grp., Inc.*,

No. 15-cv-03625-BLF, 2015 U.S. Dist. LEXIS 1625478 (N.D. Cal. Dec. 3, 2015)............. 11

*Wenderhold v. Cylink Corp.,*

188 F.R.D. 577 (N.D. Cal. 1999) ............................................................................ 4

*Ziolkowski v. Netflix, Inc.*,

No. 17-cv-01070-HSG, 2017 U.S. Dist. LEXIS 91848 (N.D. Cal. June 14, 2017)........ 11, 12

JAMES R. LAX'S OPPOSITION TO MOTIONS FOR LEAD PLAINTIFF
NO. 2:23-cv-00470-RFB-DJA

**Statutes**

15 U.S.C. § 78u-4 .......................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................... *passim*

JAMES R. LAX'S OPPOSITION TO MOTIONS FOR LEAD PLAINTIFF
NO. 2:23-cv-00470-RFB-DJA

## I. PRELIMINARY STATEMENT

The Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4) (the "PSLRA"), sets forth a clear directive in terms of appointing lead plaintiffs to serve in securities class actions. It instructs courts to appoint as "lead plaintiff" the plaintiff "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). That person or entity is the plaintiff or movant with the "largest financial interest in the relief sought by the class" who also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). Movant James R. Lax has the largest financial interest in the outcome of the Action and also satisfies Rule 23's typicality and adequacy requirements. Therefore, the Court should grant his motion and approve him and his chosen counsel as lead plaintiff and lead counsel, respectively.

Courts in the Ninth Circuit and throughout the country agree that a movant's recoverable loss is the most important factor in determining financial interest. *See In re Cavanaugh,* 306 F.3d 726, 729-30 (9th Cir. 2002). The following table illustrates Mr. Lax's financial interest relative to the other competing lead plaintiff movants and shows that he possesses the "largest financial interest" in the outcome of the litigation:

| Movant | Recoverable Loss |
| --- | --- |
| **James R. Lax** | **$176,433.63** |
| Marathon Investor Group | |
| Mary Barida | $172,166.82 |
| Jack's Way, LLC | $125,798.90 |
| Todd Langer | -$24,204.60 (gain) |
| Kevin Clark | -$28,715.58 (gain) |

In addition to having the "largest financial interest" in the Action, Mr. Lax made the requisite *prima facie* showing of adequacy and typicality under Rule 23 for the purposes of triggering the PSLRA's lead plaintiff presumption. Like the rest of the Class, Mr. Lax purchased

shares of Marathon during the Class Period and sustained losses in the same manner as all other class members. Mr. Lax is also a sophisticated individual investor with over 20 years of investing experience and has experience overseeing counsel as he regularly works with attorneys on routine business matters for his personal real estate and brokerage company.

The other movants cannot credibly dispute Mr. Lax's presumptive status as "lead plaintiff" given the fatal flaws associated with their own motions. In particular, the Marathon Investor Group consists of three unrelated investors with no preexisting relationship or evidence of their ability to collectively oversee the litigation. They have not provided any legitimate basis to aggregate their individual losses, nor have they demonstrated their ability to function as a cohesive group, as required. *See Mersho v. United States Dist. Court*, 6 F.4th 891, 901-02 (9th Cir. 2021). At bare minimum investor groups such as the Marathon Investor Group speak with one another prior to moving for lead plaintiff to consider the advantages and disadvantages of working together and plan for how they will successfully prosecute the litigation and control counsel. The declaration they submitted here shows that the group and its counsel failed to conduct even this initial, threshold step. Further, one of the group members—Todd Langer—in fact has no recoverable loss at all and, consequently, no vested interest in seeing this lawsuit through.[1] Thus, while the group claims in its declaration to be capable of "engag[ing] in joint decision-making" on a "consensus" basis, their inclusion of someone who has no financial interest in the outcome of the case shows that they are uninformed and/or incapable of serving as the lead plaintiff in this lawsuit. The remaining members of the group have smaller financial interests in the litigation relative to Mr. Lax and present other flaws, such as whether they know and/or agree on their selected counsel and what role(s) they will play in the litigation as it progresses.

As explained further *infra*, Mr. Lax should be appointed as lead plaintiff and his choice of Levi & Korsinsky as lead counsel should be approved.

---

[1] Movant Clark similarly has an overall gain from his transactions in Marathon securities. *See* Section II.B.1. at 9 n.2, *infra*.

JAMES R. LAX'S OPPOSITION TO MOTIONS FOR LEAD PLAINTIFF
NO. 2:23-cv-00470-RFB-DJA

## II.  ARGUMENT

### A.  The PSLRA Requires Courts to Appoint a Lead Plaintiff at the Outset of the Action.

The PSLRA sets forth the procedure for the selection of a Lead Plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). Following the required notice announcing the class action, class members interested in serving as Lead Plaintiff are required to file a motion seeking appointment within 60 days thereafter. 15 U.S.C. § 78u- 4(a)(3)(A)(i). From the movants that file timely motions, the presumptive "most adequate plaintiff" is the "person" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The movant with the largest financial interest need only make a *prima facie* showing that it satisfies Rule 23's typicality and adequacy requirements. *See Cavanaugh*, 306 F.3d at 729-31. Once triggered, this presumption can only be rebutted upon "actual proof" that the "most adequate plaintiff" will not fairly represent the interests of the class or is subject to a unique defense. *Id*. at 730; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### B.  Mr. Lax is the Presumptive Lead Plaintiff.

#### 1.  *Mr. Lax Possesses the Largest Financial Interest.*

Courts in the Ninth Circuit and throughout the country agree that a movant's recoverable loss is the most important factor in determining financial interest. *See Cavanaugh,* 306 F.3d at 729-30 ("the district court must consider the losses allegedly suffered by the various plaintiffs"); *Crihfield v. CytRx Corp*., Case Nos.: CV 16-05519 SJO (SKx); CV 16-05666 SJO (SKx), 2016 U.S. Dist. LEXIS 181615, at *9 (C.D. Cal. Oct. 26, 2016) (comparing claimed losses of each movant). Although courts also consider the so-called *Lax/Olsten* factors when determining financial interest, "the 'approximate loss' factor is considered the most important." *Paddock v. Dreamworks Animation SKG, Inc.,* CV 14-6053 SJO (Ex); CV 14-06201 SJO (Ex), 2014 U.S.

Dist. LEXIS 194327, at *6-7 (C.D. Cal. Oct. 22, 2014) (movant with highest loss has the largest financial interest) (citations omitted).

As demonstrated below, Mr. Lax has a greater recoverable loss than each of the other movants and thus has the largest financial interest in the outcome of the litigation:

| Movant | Recoverable Loss |
|---|---|
| **James R. Lax** | **$176,433.63** |
| Marathon Investor Group | |
| Mary Barida | $172,166.82 |
| Jack's Way, LLC | $125,798.90 |
| Todd Langer | -$24,204.60 (gain) |
| Kevin Clark | -$28,715.58 (gain) |

Although the Marathon Investor Group would have this Court aggregate the losses of its individual group members, courts are clear that attorneys cannot simply combine the losses of investors in order to be able to claim the largest financial interest. *In re Gemstar-TV Guide Int'l Sec. Litig.,* 209 F.R.D. 447, 451 (C.D. Cal. 2002) ("'[t]o allow lawyers to designate unrelated plaintiffs as a "group" and aggregate their financial stakes would allow and encourage lawyers to direct the litigation.'"); *see also Mannkind Sec. Actions,* No. CV 11-00929 GAF (SSx), 2011 U.S. Dist. LEXIS 164320, at *11-13 (C.D. Cal. Apr. 27, 2011) (same); *In re Jones Soda Co. Secs. Litig.,* No. C07-1366RSL, 2008 U.S. Dist. LEXIS 14884, at *7 (W.D. Wash. Feb. 12, 2008) ("A loose group of investors whose relationship was forged only in an effort to win appointment as lead plaintiff has no real cohesiveness, is less likely to be in control of the litigation, and is subject to all of the obstacles that normally make group action difficult."); *Ruland v. InfoSonics Corp.,* 2006 U.S. Dist. LEXIS 79144, at *8-9 (S.D. Cal. Oct. 23, 2006) (construing the PSLRA term "'group' . . . narrowly to mean a group of persons with meaningful preexisting relationships and the cohesiveness to actively oversee the litigation"); *Wenderhold v. Cylink Corp.,* 188 F.R.D. 577, 586 (N.D. Cal. 1999) ("Aggregation solely for the purpose of creating a group that would have

the 'largest financial interest in the relief sought by the class would seem to contravene the PSLRA's purpose of shifting control of the litigation from the lawyers to the investors").

Reflecting the PSLRA's specific intent behind allowing the appointment of a "group" as lead plaintiff, the court in *In re Network Assocs., Inc., Securities Litigation*, 76 F. Supp. 2d 1017 (N.D. Cal. 1999), soundly rejected the aggregation of investors into groups where there existed no pre-litigation relationship. The court explained the types of "groups" contemplated by Congress to qualify under the PSLRA as follows: "a group of mutual funds managed by a single organization might qualify. It would have an internal coherency and would be capable of acting as a unified decision maker. A mass of unrelated investors could not do so." *Id*. at 1024. The Marathon Investor Group is certainly no such group. A "'group of persons' within the meaning of the [PSLRA] should, like an institution or single large investor, be able to actively oversee the conduct of the litigation and monitor the effectiveness of counsel." *Id.* at 1026. "Courts have held either that this construction fails to meet the adequacy prong of Rule 23 or that it makes the group unfit to be appointed lead plaintiff because it is contrary to legislative intent. In either event, the analysis and the result are the same because acting contrary to the purposes of the PSLRA, which was designed to benefit class members, would also threaten the interests of the purported class." *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *22 (N.D. Cal. Aug. 22, 2008). "[W]hen unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation." *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562, at *14 (D. Ariz. Apr. 4, 2008). Here, "[t]o allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff." *Bodri v. GoPro, Inc.*, No. 16-cv-00232-JST, 2016 U.S. Dist. LEXIS 57559, at *14 (N.D. Cal. Apr. 28, 2016) (quoting *In re Donnkenny Inc. Sec. Litig*., 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997)).

The Marathon Investor Group's motion exemplifies the precise sort of "lawyer-driven" litigation the above-cited cases stand against. The group is comprised of: (1) Todd Langer, who lives in Boulder, Colorado and, as explained below, has zero recoverable losses; (2) Mary Barida, who lives in Toronto, Canada, and is acting as an "assignee" on behalf of her husband, Peter J.

Wuebbolt, and a corporation named 2490768 Ontario Inc. for which no further information is provided; and (3) John Degenhardt on behalf of Jacks Way LLC who lives in Fort Myers, Florida. These people and entities have no pre-litigation relationship and, significantly, appear not to have spoken with one another prior to filing their motion. *See* ECF No. 16-6 at ¶10. At most, the group members held individual conference calls with some configuration of counsel from Pomerantz LLP and/or the Schall Law Firm. *See id.* at ¶5 ("We have discussed this case with Pomerantz and Schall. . . . We have one another's contact information, attended a conference call with attorneys from Pomerantz and Schall, and approved the filing of a motion on our behalf . . . ."). Had the group members spoken with each other, their joint declaration presumably would have indicated that they spoke with one another during a conference call and collectively determined to seek joint appointment instead of "***independently*** determin[ing] to seek joint appointment." *Id*. at ¶8.

The Marathon Investor Group also lays out a flawed plan for controlling the litigation, which further evidences its lawyer-driven nature. According to the joint declaration, the group will aim to "reach consensus" on all issues but, if not possible, will hold a "simple majority vote" in which each group member "possesses one vote." *Id*. at ¶11. The declaration states further that any "ultimate decision will necessarily be informed by consulting one another and our counsel." *Id*. This dispute resolution process is flawed for at least two reasons. *First*, as explained below, one group member—Todd Langer—has no financial interest in the outcome of the litigation and therefore is being given authority over matters to which he should have no say. Similarly, a second group member, Mary Barida, claims to have purchased Marathon stock yet required an assignment from a Canadian corporation in order to file the instant motion. No information about this Ontario corporation is provided and, thus, it is unclear whether the corporation, its shareholders, Ms. Barida's husband, or herself will be the one controlling the litigation.

*Second*, while the group claims it will rely on the advice of its counsel when making decisions, it is unclear to which counsel they are referring and which counsel will ultimately be serving as lead counsel for the Class. The joint declaration suggests at its outset that the group selected Pomerantz LLP and the Schall Law Firm to serve as "Co-Lead Counsel" but then later states to have selected only "Pomerantz to serve as Lead Counsel" based on its "experience."

*Compare id*. at ¶1 (". . . our selection of Pomerantz LLP . . . and the Schall Law Firm . . . as Co-Lead Counsel) & ¶5 ("We approved Pomerantz and Schall as our designated Co-Lead Counsel") *with* ¶13 (". . . we selected Pomerantz to serve as Lead Counsel.") & ¶14 ("Pomerantz has been directed to prosecute this action . . . ."). The group appears unsure of who will be representing the Class, let alone with which counsel they will be consulting as the litigation progresses.

Given the foregoing, the Marathon Investor Group should not be allowed to aggregate its losses when it has failed to demonstrate any legitimate basis for doing so and/or operating as a cohesive group capable of overseeing its various counsel. If the Court is inclined to consider the Marathon Investor Group's motion at all (which it should not), the losses of each group member should be considered individually. *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1074 (W.D. Wash. 2011) ("[T]he Court concludes that the losses of the members of the Frankel Investor Group should be considered individually and not aggregated."); *Mannkind Sec. Actions*, 2011 U.S. Dist. LEXIS 164320, at *14-15 ("In fact, courts in this circuit [and other circuits] routinely break apart a proposed group in search of the most adequate plaintiff.") (quoting *In re Surebeam,* 2003 U.S. Dist. LEXIS 25022, at *23 (S.D. Cal. Dec 31, 2003)); *Ruland,* 2006 U.S. Dist. LEXIS 79144, at *16-18 (after declining to aggregate a group, the court nevertheless appointed one of the individual members of that group to be lead plaintiff because he had the largest financial interest in the litigation.); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 311 (S.D.N.Y. 2001) (same). As explained below, Mr. Lax has the largest individual recoverable loss relative to the other movants.

Todd Langer, who is a member of the Marathon Investor Group, is the only movant who claims to have a greater loss than Mr. Lax. However, upon closer review, Mr. Langer in fact has a *gain*. This is because Mr. Langer's alleged loss improperly includes losses on shares he sold during the Class Period *prior* to any corrective disclosures and *unrelated* to the alleged fraud. In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627 (2005)*,* the Supreme Court held that investors cannot recover under the federal securities laws for economic loss unless the loss was directly caused by or related to the disclosure of the fraud. *Id.* at 344-46 (holding that plaintiffs "must prove proximate causation and economic loss"). Accordingly, where an investor

7

purchases stock at a price inflated by a fraudulent misrepresentation or omission and sells the stock before any disclosure of the fraud (*i.e.*, an "in-and-out" trade), the investor has suffered no loss caused by the fraud even though they may have lost money on their investment. *Dura*, 544 U.S. at 342-343 (when a "purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

Courts apply *Dura* when evaluating lead plaintiff movants' financial interests in litigation. *Marjanian v. Allied Nev. Gold Corp.*, No. 3:14-cv-0175-LRH-WGC, 2014 U.S. Dist. LEXIS 203290, at *17 (D. Nev. Nov. 7, 2014) ("This figure includes sales of the stock that occurred . . . before Allied Nevada revealed their misrepresentations . . . . Including these sales in the calculation of total losses risks what *Dura* sought to prevent: loss figures that take into account not just losses caused by the fraud, but also 'changed economic circumstances, changed investor expectations, new industry-specific or firm specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price.'") (citations omitted); *see also Sallustro v. Cannavest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) ("when evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures"). "[T]he logical outgrowth of [the *Dura*] holding is that any such losses must not be considered in the recoverable losses calculation that courts engage in when selecting a lead plaintiff." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. Mar. 2, 2007). In line with the holding in *Dura*, courts have focused on **recoverable** loss when determining the "largest financial interest." *Foster v. Maxwell Techs., Inc.*, No. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538, at *9 (S.D. Cal. Oct. 24, 2013) ("This Court focuses on the amount of potential recovery in the relief sought by the class."); *Schueneman v. Arena Pharm., Inc.*, No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373, at *1 (S.D. Cal. Aug. 8, 2011) ("it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed."); *Ruland,* 2006 U.S. Dist. LEXIS 79144, at *16-17 (finding for lead plaintiff purposes the individual with the "largest potential recovery" as the presumptive lead plaintiff); *see also In re LightInTheBox Holding Co., Sec. Litig.*, 13 Civ.

6016 (PKC), 2013 U.S. Dist. LEXIS 165842, at *10 (S.D.N.Y. Nov. 21, 2013) ("While the *Dura* court addressed a motion to dismiss, the Court's reasoning applies with equal force to a motion to appoint lead counsel."). This methodology connects the share price decline to corrective information and results in loss figures that are recoverable under *Dura*. *See In re K-V Pharm. Co. Sec. Litig.*, No. 11CV01816 AGF, 2012 U.S. Dist. LEXIS 62161, at *11 (E.D. Mo. May 3, 2012) ("[F]or purposes of evaluating financial interest, it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed.") (quoting *Schueneman*, 2011 U.S. Dist. LEXIS 87373, at *14).

In light of the above, when applying *Dura* and disregarding any losses attributable to "in-and-out" trades (*i.e.*, trades resulting in losses that were not caused by the alleged fraud), Mr. Langer's **recoverable** loss in the Action is **$0**. *See* Supplemental Declaration of David O'Mara, Exhibit A. In fact, after disregarding losses not attributable to the fraud, and taking into account the gains Mr. Langer enjoyed from selling some of his shares for a profit at artificially inflated prices, he overall **benefited** from the fraud, making over a $24,000 profit. *Id.*[2]

The remaining members of the Marathon Investor Group lost less than Mr. Lax. Ms. Barida claims a loss of $172,166.82, which is less than Mr. Lax's loss of $176,433.63. The difference between the two numbers is determinative, even if only by a few thousand dollars. *See Hessefort v. Super Micro Comput., Inc.,* 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018) (finding no persuasive authority "suggesting that the Court should not determine that a plaintiff has the largest financial share when its lead is small"); *Hall v. Medicis Pharm. Corp.,* 2009 U.S. Dist.

---

[2] Although Mr. Clark claims a smaller financial interest than Mr. Lax, it is important to note that he too suffers from the same fatal issue as Mr. Langer, as his recoverable losses are **$0.** *See* Supplemental Declaration of David O'Mara, Exhibit B. During the Class Period, Mr. Clark sold shares prior to any corrective disclosure, meaning that the losses he incurred from these sales are **unrecoverable** pursuant to *Dura*. Even though Mr. Clark retained shares at the end of the Class Period, the losses he sustained from these retained shares are entirely offset by the profit he made from selling shares at artificially inflated prices during the Class Period. Overall, Mr. Clark benefitted from the fraud with a gain of $28,715.58. *Cf. Gordon v. Sonar Capital Mgmt. LLC,* 92 F. Supp. 3d 193, 205 (S.D.N.Y. 2015) (offsetting plaintiff's losses by transactions during class period that resulted in gains); *In re Refco Inc. Sec. Litig.*, No. 08 CIV. 3065 JSR, 2013 U.S. Dist. LEXIS 116700, at *37-38 (S.D.N.Y. Aug. 2, 2013) ("As a general rule, plaintiffs cannot claim damages where the same fraud alleged to be the cause of a loss also permitted a countervailing gain.").

LEXIS 24093, at *19 (D. Ariz. Mar. 10, 2009) (difference of few hundred dollars in losses still determinative); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.,* 2006 U.S. Dist. LEXIS 3028, at *14 (S.D.N.Y. Jan. 24, 2006); *In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2005 U.S. Dist. LEXIS 6243, at *14 (N.D. Ill. Mar. 15, 2005) ("the best yardstick by which to judge "largest financial interest" is the amount of loss, period."); *Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D. Cal. 2004) ("de minimus" difference in losses does not mean "courts are free to ignore the statutory presumption given to the plaintiff with the 'largest financial interest in the relief sought by the class'") (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). Jack's Way LLC lost $125,798.90.

### 2. Mr. Lax Has Made the Requisite Prima Facie Showing of His Typicality and Adequacy Under Rule 23

Once the movant with the largest financial interest has been established – here Mr. Lax – the Court must next assess whether that movant, and that movant alone, has made a *prima facie* showing of Rule 23. *Cavanaugh*, 306 F.3d at 732; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Of the four prerequisites, only two - typicality and adequacy - are relevant inquiries on a motion for lead plaintiff, as they address the personal characteristic of the class representative. *See Ali v. Intel Corp.,* No. 18-cv-00507-YGR, 2018 U.S. Dist. LEXIS 89401, at *5 n.7 (N.D. Cal. May 29, 2018). Here, Mr. Lax easily satisfies the typicality and adequacy requirements of Rule 23, triggering the statutory presumption of lead plaintiff in his favor.

A lead plaintiff's claims are typical with the claims of the class when the plaintiff purchased shares of the defendant company at prices that were artificially inflated due to the same market-wide false statements relied on by other members of the class, and suffered losses in the same manner as those class members as a result. *Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*, No. 20-cv-0966-AJB-DEB, 2021 U.S. Dist. LEXIS 27438, at *18 (S.D. Cal. Feb. 12, 2021) ("The typicality requirement asks whether the presumptive lead plaintiff has suffered the same or similar injuries as absent class members as a result of the same conduct by the defendants and are founded on the same legal theory.") (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Mr. Lax's claims are typical of those of other Class members because, like other Class

10

members, he purchased Marathon securities during the Class Period at prices artificially inflated by Defendants' misrepresentations and/or omissions that form the basis of the Action. Mr. Lax suffered substantial losses as a result of the alleged fraud in the Action, and his claims are based on the same legal theory that arise from the same events and course of conduct as the Class's claims. *See Veal v. LendingClub Corp.,* No. 18-cv-02599-BLF, 2018 U.S. Dist. LEXIS 190912, at *11 (N.D. Cal. Nov. 7, 2018) (typicality satisfied where losses incurred by suffering damages when misrepresentations or omissions came to light); *Deora v. NantHealth, Inc.,* No. CV 17-01825 BRO (MRWx), 2017 U.S. Dist. LEXIS 117499, at *9 (C.D. Cal. May 31, 2017) (same).

The adequacy requirement of Rule 23 is satisfied when a class representative establishes that it will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The test for adequacy asks whether the lead plaintiff and his counsel 'have any conflicts of interest with other class members' and whether the lead plaintiff and his counsel will 'prosecute the action vigorously on behalf of the class.'" *Welgus v. TriNet Grp., Inc.*, No. 15-cv-03625-BLF, 2015 U.S. Dist. LEXIS 162547, at *8 (N.D. Cal. Dec. 3, 2015) (quoting *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003)). The adequacy requirement is met if no conflicts exist between the representative's interests and those of the class, and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation. *Schwartz v. Opus Bank,* No. CV 16-07991-AB (JPRx), 2017 U.S. Dist. LEXIS 217637, at *6-7 (C.D. Cal. Feb. 23, 2017).

Mr. Lax has demonstrated his adequacy to serve as Lead Plaintiff in this Action. *First*, Mr. Lax has selected Levi & Korsinsky to serve as Lead Counsel for the Class. Levi & Korsinsky is a qualified counsel with substantial experience litigating securities class actions. *See* ECF No. 11-7; *see also, e.g., Isaacs v. Musk,* No. 18-cv-04865-EMC, 2018 U.S. Dist. LEXIS 200717, at *8 (N.D. Cal. Nov. 27, 2018) (noting Levi & Korsinsky "is experienced in securities fraud litigation") *recons. denied In re Tesla, Inc. Sec. Litig.,* No. 18-cv-04865-EMC, 2018 U.S. Dist. LEXIS 212238 (N.D. Cal. Dec. 17, 2018).

*Second*, Mr. Lax possesses the largest financial interest in this Action. This will ensure his vigorous and adequate prosecution of the Class's claims. *Ziolkowski v. Netflix, Inc.*, No. 17-cv-01070-HSG, 2017 U.S. Dist. LEXIS 91848, at *10 (N.D. Cal. June 14, 2017) (movant's

11

"substantial financial stake in the outcome of this litigation, his timely filing of its motions, and the quality of his briefing all demonstrate that he is both motivated to, and capable of, vigorously pursuing this litigation.").

*Third*, Mr. Lax has no conflicts with other Class Members. Indeed, his interests are aligned with the Class's interests of maximizing a recovery for the Class due to the alleged fraud in this Action. *Ziolkowski,* 2017 U.S. Dist. LEXIS 91848, at *9 (adequacy satisfied where no evidence of conflict between lead plaintiff and class); *see also* ECF No. 11-6.

*Finally*, Mr. Lax has further demonstrated his adequacy by submitting a declaration in support of his Motion, attesting to, *inter alia*, that he is a sophisticated investor by providing his education, employment, and years of investing experience. ECF No. 15-6. Mr. Lax, a resident of Longwood, Florida, possesses a liberal arts degree in communications from Rollins College. *Id.* at ¶ 2. Further, Mr. Lax is self-employed as the president and owner of his own licensed real estate, mortgage brokerage, and real estate development company. *Id*. He considers himself to be a sophisticated investor, having been investing in the stock market for over 20 years. *Id*. Mr. Lax is knowledgeable about the litigation, has experience hiring and overseeing attorneys for routine business matters, and is committed and understands the obligations of a lead plaintiff under the PSLRA and plans to prosecute this Action efficiently. *Id.* at ¶¶2, 4.

### 3.   *There is No Evidence to Rebut the Presumption in Mr. Lax's Favor.*

Mr. Lax's evidentiary showing on the motion triggers the PSLRA's "presumption" of "most adequate plaintiff." *Cavanaugh*, 306 F.3d at 729-31. This presumption may be rebutted only upon proof by a class member that he "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C § 78u-4(a)(3)(B)(iii)(II). The other movants have not and cannot do this. *See Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695-VBF(VBKx), 2011 U.S. Dist. LEXIS 19771, at *10 (C.D. Cal. Feb. 14, 2011) (unique defense not present where movant failed to submit proof).

**C. Assuming *Arguendo* the Court Aggregates the Marathon Investor Group's Losses, the Group Still Fails to Demonstrate Its Adequacy and Cannot Trigger the Presumption of "Most Adequate Plaintiff".**

The *only* way in which Mr. Lax does *not* possess the largest financial interest in the litigation is if the Court allows the Marathon Investor Group to aggregate its losses. Although this would be contrary to the case law on this issue, for the sake of argument the Marathon Investor Group would still *not* be entitled to any presumption because the group fails to demonstrate its "adequacy" under Rule 23. As explained above, the presumption of "most adequate plaintiff" can only be triggered if the movant with the largest financial interest in the litigation *also* satisfies the adequacy and typicality requirements under Rule 23. *Cavanaugh*, 306 F.3d at 732 ("Once [the court] determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, ***unless it finds that he does not satisfy the typicality or adequacy requirements***.") (emphasis added).

The weight of Ninth Circuit authority has found that a group of investors seeking appointment as lead plaintiff must provide evidence of cohesiveness and a pre-existing relationship to satisfy Rule 23's typicality and adequacy requirements – neither of which are present here. *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at \*29 (noting that the declaration "does [not] clarify how the group will tackle the massive coordination and strategic issues that are certain to arise in this litigation. Simply stated, this conclusory declaration has little or no substance."); *Frias,* 835 F. Supp. 2d at 1074-1075 (such "evidence" must be more than lawyer-prepared, boiler plate declarations. "[C]onclusory statements and generalizations, . . . do not further the position of this otherwise unrelated group of individuals as an adequate class representative."); *Arciaga v. Barrett Bus. Servs., Inc.,* No. C14-5884 BHS, 2015 U.S. Dist. LEXIS 22879, at \*10 (W.D. Wash. Feb. 25, 2015) ("The group's cohesiveness was formed specifically for 'the opportunity to participate in this action as Lead Plaintiff.'"); *Ruland*, 2006 U.S. Dist. LEXIS 79144, at \*8-9 (construing the PSLRA term "'group' . . . narrowly to mean a group of persons with meaningful preexisting relationships and the cohesiveness to actively oversee the litigation."). The PSLRA's purpose of preventing lawyer-driven litigation is "undermined" when

13

a group cannot establish that its formation "was driven by some mechanism other than the same law firm that the group intends to nominate as lead counsel." *In re Spectrum Pharm., Inc.,* No. 2:13-CV-00433-LDG, 2014 U.S. Dist. LEXIS 38322, at *10 (D. Nev. Mar. 20, 2014).[3]

As previously discussed, the members of the Marathon Investor Group do not have a pre-existing relationship, nor has it made the requisite showing that the group is not the product of lawyer-driven litigation. Aside from having no pre-litigation relationship, the Joint Declaration fails to explain *why* the Group decided to move together beyond "pooling [their] respective resources" and that "joint decision-making will materially benefit the class". ECF No. 16-6 at ¶10. Nor does the Joint Declaration provide any real plan on how the group will collectively co-litigate going forward. It fails to explain how the members plan to coordinate the litigation, including most importantly, their oversight of counsel, and their plans to communicate amongst each other and stay abreast of developments in the Action. There is no coordinated plan in place for routine calls to discuss the litigation. It is clear the "evidence" provided in the Joint Declaration is conclusory, boilerplate, and vague. Collectively, these facts bear the hallmarks of attorney-driven litigation. Thus, the facts support that the main purpose of the Marathon Investor Group coming together was to amass the largest financial interest in contradiction to one goal of the PSLRA. The Marathon Investor Group, therefore, should not be merely approved by the Court based on their purported "larger financial interest" and filing a conclusory joint declaration. *See In re Stitch Fix, Inc. Sec. Litig.,* 18-cv-06208-JD, 2019 U.S. Dist. LEXIS 134592, at *5-6 (N.D. Cal. Aug. 9, 2019) (disqualifying group and all its members from consideration as the lead plaintiff when group members contacted the law firm independently, lawyers made them "aware of each other," and the finding that despite detailed declarations that "[n]othing in the two joint declarations submitted by the group demonstrates that it is the group members, and not the

---

[3] *See also Isaacs v. Musk,* 2018 U.S. Dist. LEXIS 200717, at *13 (N.D. Cal. Nov. 27, 2018) ("courts have also been skeptical of 'artificial' groups"); *Bodri,* 2016 U.S. Dist. LEXIS 57559, at *14 ("Northern District of California courts have generally found that 'appointing a group of unrelated investors undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven litigation.'"); *In re Netflix, Inc., Sec. Litig.,* Case Nos. 12-0225 SC; 12-1030 LHK, 2012 U.S. Dist. LEXIS 59465, at *14-15 (N.D. Cal. Apr. 27, 2012) ("the courts of this circuit uniformly refuse to aggregate the losses of individual investors with no apparent connection to each other aside from their counsel");

JAMES R. LAX'S OPPOSITION TO MOTIONS FOR LEAD PLAINTIFF
NO. 2:23-cv-00470-RFB-DJA

lawyers, who are driving their lead plaintiff application."). Accordingly, the Marathon Investor Group should be disqualified from serving as the Lead Plaintiff. *See Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at *15 (disqualifying entire group based on failure to demonstrate adequacy).

### D. Approval of Movant's Choice of Counsel Is Appropriate.

This Court should approve Mr. Lax's selection of Levi & Korsinsky as Lead Counsel. The PSLRA vests authority in the lead plaintiff to select and retain lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v). Numerous courts throughout the country have appointed Levi & Korsinsky as lead counsel in securities class action lawsuits. See ECF No. 15-7. With approximately 30 attorneys across five different offices, Levi & Korsinsky stands ready, willing and able to prosecute this case. *Id*.

### III. CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court: (1) appoint Movant as Lead Plaintiff for the Class in the Action; (2) approve Levi & Korsinsky as Lead Counsel and O'Mara Law as Liaison Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

Dated: June 13, 2023

Respectfully submitted,

**THE O'MARA LAW FIRM, P.C.**

*/s/ David C. O'Mara*
David C. O'Mara
311 East Liberty St.
Reno, Nevada 89501
Tel: 775-323-1321
Fax: 775-323-4082
Email: david@omaralaw.net

*Liaison Counsel for James R. Lax and [Proposed] Liaison Counsel for the Class*

**LEVI & KORSINSKY, LLP**
Adam M. Apton
55 Broadway, 4th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171

Email: aapton@zlk.com

*Lead Counsel for James R. Lax and [Proposed]*
*Lead Counsel for the Class*

JAMES R. LAX'S OPPOSITION TO MOTIONS FOR LEAD PLAINTIFF
NO. 2:23-cv-00470-RFB-DJA

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2023, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the email addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

*/s/ David C. O'Mara*

David C. O'Mara

JAMES R. LAX'S OPPOSITION TO MOTIONS FOR LEAD PLAINTIFF
NO. 2:23-cv-00470-RFB-DJA

INDEX OF EXHIBITS

| Exh No. | Description | Pages |
|---------|-------------|-------|
|  | Declaration of David C. O'Mara in Support of James R. Jax's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel | 5 |
| A | Summary of Financial Interest (Todd Langer) | 5 |
| B | Summary of Financial Interest (Kevin Clark) | 2 |

JAMES R. LAX'S OPPOSITION TO MOTIONS FOR LEAD PLAINTIFF
NO. 2:23-cv-00470-RFB-DJA