ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
**MUEHLBAUER LAW OFFICE, LTD.**
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: 702.330.4505
Facsimile: 702.825.0141
Email: andrew@mlolegal.com

*Counsel for the Marathon Investor*
*Group and Proposed Liaison*
*Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JAIME R. MORENO, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>MARATHON DIGITAL HOLDINGS, INC., MERRICK OKAMOTO, FREDERICK G. THIEL, SIMEON SALZMAN, and HUGH J. GALLAGHER,<br><br>                    Defendants. | No.: 2:23-cv-00470-RFB-DJA<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF THE MARATHON INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL** |

MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ................................................................................................................. 4

     A.     THE MARATHON INVESTOR GROUP HAS THE LARGEST FINANCIAL INTEREST ..................................................................... 4

          1.     The Court Should Consider the Marathon Investor Group's Aggregate Financial Interest ............................................................................... 4

          2.     Lax's Proffered Loss Calculation Methodology Is Improper ........................ 8

     B.     THE MARATHON INVESTOR GROUP IS ADEQUATE UNDER RULE 23 .................................................................................................11

CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blitz v. AgFeed Indus.*,
2012 U.S. Dist. LEXIS 49849 (M.D. Tenn. Apr. 10, 2012)......................................................10

*Cook v. Allergan PLC*,
18 Civ. 12089 (CM) *et al.*, 2019 WL 1510894  (S.D.N.Y. Mar. 21, 2019) .........................3, 9

*Daniels Family 2001 Revocable Trust v. Las Vegas Sands Corp.*,
No. 2:20-cv-01958-GMN-EJY, 2021 WL 41301 (D. Nev. Jan. 5, 2021) ................................5

*Doherty v. Pivotal Software, Inc.*,
Case No. 3:19-cv-03589-CRB, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019).....................4, 6

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)........................................................................................ *passim*

*Ferreira v. Funko, Inc.*,
2:20-cv-02319-VAP-PJWx, 2020 WL 3246328 (C.D. Cal. June 11, 2020) ............................2

*Hodges v. Akeena Solar, Inc.*,
263 F.R.D. 528 (N.D. Cal. 2009).............................................................................................12

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ...................................................................................................11

*In re Mersho*,
6 F. 4th 891 (9th Cir. 2021) ...........................................................................................3, 5, 6

*In re Surebeam Corp. Sec. Litig.*,
No. 03 CV 1721JM(POR), 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004).........................5, 7, 9

*In re Versata, Inc. Sec. Litig.*,
Nos. C 01–1439 SI *et al.*, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001).........................6, 7

*In re Watchguard Sec. Litig.*,
2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005) ............................................10, 11

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) .....................................................................................3

*Luo v. Spectrum Pharms., Inc.*,
2022 WL 2985939 (D. Nev. July 28, 2022) ..........................................................................3, 9

*Marjanian v. Allied Nevada*,
    No. 2:14-CV-0650-JCM-VCF, 2015 WL 128691 (D. Nev. Jan. 9, 2015) ..........................4, 12

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
    256 F.R.D. 620 (E.D. Wis. 2009) ....................................................................................10

*Stocke v. Shuffle Master, Inc.*,
    No. 2:07-CV-00715-KJD-RJJ, 2007 WL 426723 (D. Nev. Nov. 30, 2007) ..........................13

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii) .........................................................................................1

PSLRA .......................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ...............................................................................................1, 2, 13, 14

Lead Plaintiff Movant the Marathon Investor Group[1] respectfully submits this memorandum of law in further support of its motion for appointment as Lead Plaintiff and approval of its selection of Co-Lead Counsel (Dkt. No. 16); and in opposition to the competing motion of Lax (Dkt. No. 15).

## PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" and that satisfies the requirements of Rule 23.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption can only be rebutted by proof that the movant with the largest financial interest is atypical or inadequate. *Id.* § 78u-4(a)(3)(B)(iii)(II).

Here, as discussed at length in its opposition brief (Dkt. No. 41), the Marathon Investor Group satisfies all of the statutory criteria to be entitled to the "most adequate plaintiff" presumption.  First, the Marathon Investor Group has the largest financial interest in this litigation by a significant margin.  The group incurred an aggregate loss of $592,719, more than three times the size of the loss claimed by Lax ($176,434), the only competing movant.  The Marathon Investor Group also retained 9,089 shares of Marathon stock at the end of the Class Period, 6,089 more shares than Lax retained (3,000).  Second, the Marathon Investor Group has robustly demonstrated its typicality and adequacy under Rule 23, including through a detailed declaration attesting to its members' pre-motion communications, their decision to seek appointment jointly as Co-Lead Plaintiffs, their reasons for choosing the Pomerantz and Schall firms as Co-Lead Counsel, their understanding of the responsibilities of Lead Plaintiffs appointed pursuant to the PSLRA, and their readiness to shoulder those responsibilities on behalf of the Class.  *See generally* Dkt. No. 16-6.

Lax, the only competing movant, contests the Marathon Investor Group's appointment as

---

[1] All capitalized terms herein are defined in the Marathon Investor Group's moving or opposition briefs, unless otherwise indicated.  *See* Dkt. Nos. 16, 30.

Lead Plaintiff.  Lax asserts that he, not the Marathon Investor Group, has the largest financial interest in this litigation, urging the Court to disaggregate the group's loss.  *See* Dkt. No. 29 at 4-6.  Yet, even when the Marathon Investor Group's losses are disaggregated, individual group member Langer, with losses of $294,871, clearly has a larger financial interest than the $176,434 loss claimed by Lax.  Faced with that uncomfortable reality, Lax bizarrely claims that Langer incurred no loss whatsoever and in fact ***gained*** more than $24,000 from his Class Period investment in Marathon securities, based on a specious loss calculation methodology supposedly derived from *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).  Dkt. No. 29 at 7-9.  Lax further argues that the Marathon Investor Group is inadequate under Rule 23 because its members lack a pre-litigation relationship and have purportedly failed to demonstrate their cohesiveness.  *See id.* at 13-15.

Lax's arguments are meritless.  Under Ninth Circuit precedent, the Marathon Investor Group is precisely the type of group—small, cohesive, and comprised of members with significant financial interests in the litigation—whose losses the Court should consider in the aggregate.  "Indeed, the Supreme Court has noted that claims aggregation is more the rule than exception under the PSLRA, stating '[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups'".  *Ferreira v. Funko, Inc.*, 2:20-cv-02319-VAP-PJWx, 2020 WL 3246328, at *6 (C.D. Cal. June 11, 2020) (citing *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n. 3 (2018).  Aggregated, the group's losses are $592,719—significantly larger than Lax's loss of only $176,335.  *See also In re Mersho*, 6 F. 4th 891, 899 (9th Cir. 2021) ("The [PSLRA] expressly allows 'a group of persons' to move for appointment.").

Nor does Lax's supposedly *Dura*-derived methodology hold water.  Courts generally decline to apply *Dura* principles for the purpose of calculating financial interest at the lead plaintiff stage of PSLRA actions.  *Luo v. Spectrum Pharms., Inc.*, 2022 WL 2985939, at * 3 (D. Nev. July 28, 2022) (rejecting application of *Dura*; and explaining that "authority from the Ninth Circuit" does not support the contention that "in-out-losses" are not credited at the lad plaintiff stage); *Cook v. Allergan PLC*, 18 Civ. 12089 (CM) *et al.*, 2019 WL 1510894, at *3 (S.D.N.Y.

MEMORANDUM OF POINTS AND AUTHORITIES

Mar. 21, 2019) (finding it "unwise to embrace [*Dura*] methodology at the expense of . . . straightforward [LIFO] calculations" at the lead plaintiff stage. The Marathon Investor Group has already identified additional partial corrective disclosures of the alleged fraud that the group would include in an Amended Complaint if appointed Lead Plaintiff, which only underscores why Lax's focus on only the single corrective disclosure alleged in the initial Complaint is misplaced. Moreover, even if the Court were to apply *Dura* at this stage, the specific methodology that Lax urges makes no sense because it irrationally and inconsistently includes only **profits** from Langer's Class Period trading activity but ignores his Class Period trading **losses**. "The PSLRA does not specify how to assess which movant has the 'largest financial interest in the relief sought by the class,' and the Ninth Circuit has left it to the district courts to 'select accounting methods that are both **rational and consistently applied**' in making this determination." *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) (quoting *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002) (emphasis added)). The Marathon Investor Group respectfully submits that Lax's proposed methodology is neither rational nor consistent.

Assuming *arguendo* that the Court were to apply *Dura* principles, the appropriate analysis would focus on the number of shares that the movants retained at the end of the Class Period— *i.e.*, when Defendants' alleged fraud was revealed—and the extent to which those shares were damaged when Marathon's share price fell. *See Marjanian v. Allied Nevada*, No. 2:14-CV-0650-JCM-VCF, 2015 WL 128691, at *3 (D. Nev. Jan. 9, 2015) (citing *Dura* and considering only shares retained at end of Class Period in calculating loss). Here, at the end of the Class Period on February 28, 2023, the Marathon Investor Group's members held a total of 9,089 shares of Company stock, while Lax held only 3,000 shares. Two Marathon Investor Group members also held more shares individually than Lax: Barida (3,589) and Jacks Way (5,000). Marathon's stock price fell $0.59 per share on March 1, 2023, the day after the end of the Class Period. Accordingly, applying *Dura* principles, the Marathon Investor Group's members incurred total investment losses of $5,363 (that is, 9,089 shares each declining in value by $0.59), Barida alone

incurred losses of $2,118, Jacks Way alone incurred losses of $2,950, and Lax incurred losses of only $1,770.

Finally, Lax's argument that the Marathon Investor Group's losses cannot be aggregated, his argument that the group is inadequate is at odds with both the facts and the law. The standard for evaluating an investor group is whether "the proposed group is capable of actively overseeing the litigation and monitoring its counsel." *Doherty v. Pivotal Software, Inc.*, Case No. 3:19-cv-03589-CRB, 2019 WL 5864581, at *6 (N.D. Cal. Nov. 8, 2019) (collecting cases). Here, the Marathon Investor Group is unquestionably capable.

Accordingly, for the reasons set forth herein and in its moving and opposition briefs (Dkt. Nos. 16, 30), the Marathon Investor Group respectfully requests that the Court grant its motion in its entirety and deny Lax's competing motion.

**ARGUMENT**

**A.    THE MARATHON INVESTOR GROUP HAS THE LARGEST FINANCIAL INTEREST**

**1.    The Court Should Consider the Marathon Investor Group's Aggregate Financial Interest**

Lax urges the Court not to consider the Marathon Investor Group members' financial interest in the aggregate for purposes of assessing the "largest financial interest" in this litigation, on the supposed basis that the group is improperly constituted and has failed to demonstrate its cohesiveness. Lax is wrong. The group is in fact precisely the type of investor group that courts in the Ninth Circuit and elsewhere routinely appoint to serve as Lead Plaintiff in PSLRA actions. It is a small and cohesive group consisting of only three members, each of whom individually possesses a significant financial interest in this litigation, and one of whom (Langer) individually possesses the largest financial interest of any single movant ($294,871, or $118,536 more than Lax). *See Mersho*, 6 F. 4th at 901 n. 3 (finding district court's denial of motion by investor group that included the individual movant with the largest loss to be "troubling" and "incongruous with the PSLRA's presumption that the investors with the largest stake have the greatest incentive to

supervise the litigation closely."); *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2004 WL 5159061, at *5 (S.D. Cal. Jan. 5, 2004) (appointing as lead plaintiff movant group that included the individual movant claiming the largest loss). The group's members have submitted a detailed declaration attesting to their backgrounds, their reasons for seeking appointment as Lead Plaintiff, their pre-litigation communications with one another, their understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and their shared readiness to work together to shoulder those responsibilities.  Courts routinely find that such declarations demonstrate the fitness of movant groups to serve as lead plaintiffs in PSLRA action.  *See*, *e.g.*, *Daniels Family 2001 Revocable Trust v. Las Vegas Sands Corp.*, No. 2:20-cv-01958-GMN-EJY, 2021 WL 41301, at *3 (D. Nev. Jan. 5, 2021) (movant group demonstrated its adequacy by submitting a "Joint Declaration attesting to, *inter alia*, their education history, occupation, and investment experience, as well as to their understanding of their strength of this case, the responsibilities and duties of serving as lead plaintiffs, their shared desire to obtain the best result for the Class, and the steps that they will take to supervise this litigation"); *Pivotal Software*, 2019 WL 5864581, at *6 ("the information provided in [movant group's] Joint Declaration demonstrates that it would be capable of overseeing the litigation and counsel").

Although Lax claims that investor groups must possess a pre-litigation relationship, there is no such requirement.  In fact, "courts in the Ninth Circuit have allowed small groups that lack a pre-litigation relationship to serve as lead plaintiff, so long as the court determines that the proposed group is capable of actively overseeing the litigation and monitoring its counsel." *Pivotal Software*, 2019 WL 5864581, at *6.  *See also Mersho*, 6 F. 4th at 902 (noting that "a pre-litigation relationship" is only one factor that district courts consider, "along with other factors such as the size of the group, how the members found their counsel, and the prosecution procedures set out in their filings"); *In re Versata, Inc. Sec. Litig.*, Nos. C 01–1439 SI *et al.*, 2001 WL 34012374, at *5 (N.D. Cal. Aug. 20, 2001) ("Requiring a pre-litigation relationship . . . is too rigid; it is not the only way, or necessarily the best way, to ensure that the lead plaintiffs will actively represent the interests of the purported class.") (internal quotations omitted).  Here, as discussed above, the

Marathon Investor Group has robustly demonstrated that it is capable of actively overseeing the litigation and monitoring its counsel.  The group's three members discussed this case and their motion with one another and with their counsel on a conference call prior to filing their motion and submitted a Joint Declaration attesting in detail to their understanding of their responsibilities, including *specifically* that:

> If appointed Lead Plaintiffs, we will satisfy our fiduciary obligations to the Class by, among other steps, conferring with each other and with our counsel regarding litigation strategy and other matters, attending court proceedings, depositions, any settlement mediations, and hearings as needed, and reviewing and authorizing the filing of important litigation documents.  Through these and other measures, we will ensure that the Marathon securities litigation will be vigorously prosecuted consistent with the obligations of Lead Plaintiffs under the PSLRA and in the best interests of the Class, and will seek to obtain the greatest possible recovery for the Class.

Dkt. No. 16-6 ¶ 8.

Lax's insistence that the group lacks cohesiveness is simply at odds with the facts in the record.  Puzzlingly, Lax characterizes the group's decision to seek appointment jointly due to a desire to pool their resources and give the Class the benefit of joint decision-making as somehow problematic but does not explain why these motivations are supposedly improper.  *See* Dkt. No. 29 at 14.  Lax also claims that the group was assembled purely to manufacture a larger financial interest (*id.*), but this disregards the fact that one group member alone (Langer) possesses the single largest loss in this litigation—that is, Langer did not need to join other investors to satisfy the PSLRA's "largest financial interest" criterion.  *See*, *e.g.*, *Surebeam*, 2004 WL 5159061, at *5 (S.D. Cal. Jan. 5, 2004) (appointing as lead plaintiff movant group that included the individual movant claiming the largest loss, noting that because the movant "alone qualifies as the presumptive lead plaintiff", "[i]t makes no practical difference if [it] chooses to associate with other shareholders").  Lax's argument essentially urges the Court to wholly disregard a litany of sworn statements, attested to under penalty of perjury, from all three members of the Marathon Investor Group regarding their conduct to date and intentions with respect to this litigation.  The Marathon Investor

Group respectfully submits that the Court should credit its attestations.

Lax also subjects the statements in the Marathon Investor Group's submissions to extremely strained interpretations. Although the Joint Declaration unequivocally states that all three members "attended a conference call with attorneys from Pomerantz and Schall," (Dkt. No. 16-6 ¶ 5), Lax chooses to interpret this clear statement as actually meaning that "the group members held individual conference calls with some configuration of counsel" and never spoke with one another prior to the filing of their motion. Not so. ***All three group members concurrently participated in the same conference call***, which also included attorneys from ***both*** the Pomerantz and Schall firms. Lax should not be rewarded for levelling baseless and unsubstantiated allegations at Movants. Lax also questions the fact that the group's members stated that they "independently determined to seek joint appointment" rather than describing their decision as "collective." Yet each investor necessarily made an independent decision—that is, a decision considered and arrived at individually—to ***join*** the group, and the independence of that decision is not at odds with their attested-to commitments to working collectively with the other group members. In the same vein, Lax says that "it is unclear which counsel" the Joint Declaration refers to when the Marathon Investor Group attests to relying on the advice of counsel and speculates that the group is "unsure of who will be representing the Class, let alone with which counsel they will be consulting as the litigation progresses." Dkt. No. 29 at 7. Given that the Marathon Investor Group seeks the approval of the Pomerantz and Schall firms as Co-Lead Counsel, those two firms are quite obviously the "counsel" to which the Joint Declaration refers, and contrary to Lax's baseless speculation, the group's members are well aware of the identities of their attorneys. Indeed, their Joint Declaration expressly references both firms by name repeatedly. *See* Dkt. No. 16-6 ¶¶ 1, 5.

Similarly, citing the fact that group member Barida received an assignment from 2490768 Ontario Inc. (the "Assignor"), executed by Barida's husband Peter J. Wuebbolt on behalf of the Assignor, Lax questions whether the Assignor, "its shareholders, Ms. Barida's husband, or herself will be the one controlling the litigation." Dkt. No. 29 at 6. Yet the Assignor is simply a

management company for Barida's family real estate holdings. Barida has duly received an assignment of the Assignor's claims in this litigation and has agreed to act as "the Assignor's true and lawful attorney-in-fact for the purpose of" this litigation (Dkt. No. 16-2 ¶ 2). **Barida**—not the Assignor, and not her husband—executed a PSLRA Certification in connection with this lawsuit (*see* Dkt. No. 16-5 at \*9-\*10) and **Barida** submitted a Joint Declaration attesting in detail to **her** involvement and intentions with respect to this litigation (*see generally* Dkt. No. 16-6). There is no basis whatsoever for Lax's suggestion that non-existent shareholders of the Assignor or Barida's husband will actually be exercising control over this litigation.

In sum, the Marathon Investor Group's sworn statements mean precisely what they say, and the Court should disregard Lax's efforts to create ambiguity where none exists.

### 2. Lax's Proffered Loss Calculation Methodology Is Improper

Remarkably, Lax also claims that Langer, the Marathon Investor Group member with the largest individual loss, actually incurred no loss whatsoever as a result of the alleged fraud, and in fact **profited** from the fraud by selling Marathon shares at artificially inflated prices during the Class Period. *See generally* Dkt. No. 29 at 7-9. Lax asserts that "Langer's loss improperly includes losses on shares he sold during the Class Period prior to any corrective disclosures and unrelated to the alleged fraud." *Id.* at 7. Applying a loss calculation methodology purportedly derived from principles articulated in *Dura* and its progeny, Lax incorrectly claims that Langer did not lose $294,871, but rather profited by $24,204.60.

The Court should reject Lax's self-serving methodology. As a threshold matter, courts generally decline to apply *Dura* principles in assessing financial interest for the purposes of appointing lead plaintiffs in PSLRA actions. *See*, *e.g.*, *Spectrum Pharms*, 2022 WL 2985939, at \* 3 (rejecting application of *Dura*; and explaining that "authority from the Ninth Circuit" does not support the contention that "in-out-losses" are not credited at the lad plaintiff stage); *Allergan*, 2019 WL 1510894, at \*3 (S.D.N.Y. Mar. 21, 2019) (finding it "unwise to embrace [*Dura*] methodology at the expense of . . . straightforward [LIFO] calculations" at lead plaintiff appointment stage); *Blitz v. AgFeed Indus.*, 2012 U.S. Dist. LEXIS 49849, at \*12 (M.D. Tenn.

Apr. 10, 2012) (*Dura* "was not a case involving the appointment of a Lead Plaintiff under the PSLRA, and *Dura* does not discuss FIFO or LIFO losses"); *In re Watchguard Sec. Litig.*, 2005 U.S. Dist. LEXIS 40923, at *14-15 (W.D. Wash. July 13, 2005); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620 (E.D. Wis. 2009).

Lax's myopic exclusion of any investment losses incurred prior to the end of the Class Period is misplaced. Again, the initial Complaint in this litigation does ***not*** allege that Class members were harmed ***only*** by the corrective disclosure at the end of the Class Period. It more broadly alleges that investors were harmed by Defendants' false and misleading statements with respect to the efficacy of the Company's disclosure controls and procedures and internal control over financial reporting, which led it to materially misstate its revenues and cost of revenue. Dkt. No. 1 ¶ 3. The initial Complaint in this litigation will be superseded in short order by an Amended Complaint following the appointment of a Lead Plaintiff. Having preliminarily reviewed various partial corrective disclosures that preceded the end of the Class Period, the Marathon Investor Group has already identified other partial corrective disclosures of Defendants' fraud, and Langer held Marathon shares through at least two such disclosures:

| Date | Potential Corrective Disclosure | Stock Drop |
|------|---------------------------------|------------|
| 6/13/2022 | Marathon stock price falls after cryptocurrency's market capitalization drops below $1T | $0.89 (11.8%) |
| 11/8/2022 | Marathon stock price falls after it reported lower bitcoin production and third quarter earnings and revenue that were short of consensus estimates after Marathon's exit from its facility in Hardin, Montana | $0.35 (3.51%) |

As his Certification reflects, Langer held Marathon stock through both of the above disclosures (*see* Dkt. No. 16-5 at *4-*8), meaning that he plainly would have recoverable losses under *Dura*-derived loss-causation principles with respect to those disclosures. This illustrates why it is premature, at this stage of the litigation, to disregard inter-Class Period trading activity for purposes of financial interest calculation, because it amounts to simply "guess[ing] about the effect of . . . as-yet-unknown factors in selecting a lead plaintiff", *Watchguard*, 2005 U.S. Dist.

LEXIS 40923, at *15 n.6—which, again, is *not* the holding of *Dura*. There is simply no reason to adjudicate the propriety of Langer's appointment to a leadership role based solely on allegations in a Complaint that will almost immediately be superseded by an Amended Complaint.

Moreover, even if the Court were to apply *Dura* principles at this juncture, Lax's concocted methodology does in any event not follow Ninth Circuit Precedent. While the PSLRA does not set forth any specific method for loss calculation, the Court must adopt a methodology that is "both rational and consistently applied". *In re Cavanaugh*, 306 F.3d at 730 n.4. Lax's methodology does not meet either of these standards. Lax's argument, in essence, is that under *Dura* principles, the economic impact of Class Period trading of Marathon shares should be disregarded for loss-calculation purposes. Yet, Lax disregards *only* Langer's trading *losses*, while crediting him with trading *gains*. In other words, Lax's methodology selectively takes into account the economic impact of Langer's trading to the extent that doing so reduces his losses, but disregards the economic impact of his trading to the extent that doing so increases his losses. Lax's self-serving methodology is thus both irrational and inconsistent in its application of the *Dura* principles that he claims the Court must consider.

By contrast, when applying *Dura* principles rationally and consistently, the appropriate inquiry would focus on the number of Marathon shares that the competing movants retained at the end of the Class Period—*i.e.*, February 28, 2023, the date on which Defendants' fraud was revealed to the market when Marathon canceled its quarterly earnings webcast and conference call and disclosed receipt of a letter from the SEC relating to accounting errors in the Company's previously issued financial statements. *See* Dkt. No. 1 ¶ 4. Following that disclosure, Marathon's stock price fell $0.59 per share on the following day, March 1, 2023. *See id.* ¶ 5. Accordingly, under *Dura* principles, each movant's losses traceable to the alleged fraud would be calculated by multiplying the amount that each of their shares declined in value ($0.59) by the number of shares that each movant held on the date that Marathon's stock price fell (March 1, 2023). *See Allied Nevada*, 2015 WL 128691, at *3 (citing *Dura* and considering only shares retained at end of Class Period in calculating loss); *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 532 (N.D. Cal. 2009) (assessing

financial interest with reference to shares retained at the end of the class period). The movant with the most retained shares would thus have the largest recoverable losses under *Dura* and thus the largest financial interest in the litigation.

The following table sets forth the competing movants' retained shares and *Dura* losses:

| Movant | Retained Shares at End of Class Period | Decline in Value (Per-Share) | *Dura* Losses |
|---|---|---|---|
| Marathon Investor Group | 9,089 | | $5,363 |
| *Todd Langer* | *500* | $0.59 | *$295* |
| *Mary Barida* | *3,589* | | *$2,118* |
| *Jacks Way LLC* | *5,000* | | *$2,950* |
| James R. Lax | 3,000 | | $1,770 |

As the above table reflects, the Marathon Investor Group held 9,089 shares of Marathon stock when Defendants' fraud was revealed, more than three times the 3,000 shares held by Lax. Two members of the group also individually held more shares than Lax: Barida (3,589) and Jacks Way (5,000). When each of those shares fell by $0.59 in value, the Marathon Investor Group incurred an aggregate investment loss of $5,363 (9,089 × $0.59), with Barida individually incurring a loss of $2,118 (3,589 × $0.59) and Jacks Way individually incurring a loss of $2,950 (5,000 x $0.59), whereas Lax incurred a loss of only $1,770 (3,000 × $0.59).

Accordingly, under a genuinely *Dura*-derived loss-calculation methodology, the Marathon Investor Group in the aggregate, as well as two group members individually, have significantly larger financial interests in this litigation than Lax. Only by employing a self-serving, inconsistent methodology engineered to conjure non-existent investment profits into existence can Lax claim to have the largest financial interest in this litigation.

### B.    THE MARATHON INVESTOR GROUP IS ADEQUATE UNDER RULE 23

Finally, reiterating his baseless attacks on the Marathon Investor Group, Lax argues that the Marathon Investor Group's supposed deficiencies (*i.e.*, the same deficiencies that purportedly preclude the Court from aggregating the group members' losses) likewise render the group

inadequate under Rule 23.  *See generally* Dkt. No. 29 at 13-15.

Again, Lax's position is without merit.  "The determination of adequate representation focuses around two questions: (1) whether the interests of the class representative coincide with those of the class, and (2) whether the class representative has the ability to prosecute the action vigorously."  *Stocke v. Shuffle Master, Inc.*, No. 2:07-CV-00715-KJD-RJJ, 2007 WL 426723, at *3 (D. Nev. Nov. 30, 2007).  Here, the Marathon Investor Group is adequate for the same reasons that its members' financial interest in this litigation should be considered in the aggregate.  As discussed at length *supra* at pp. 7-11, the Marathon Investor Group has demonstrated its cohesiveness, its understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and its readiness to undertake those responsibilities jointly for the benefit of the Class.  There is no conflict between the group's interests and those of the Class, nor has Lax argued otherwise.  The group has attested to its readiness to vigorously and competently prosecute the Class's fraud claims in this Action, and its conduct in the litigation to date demonstrates its ability to do so.  In sum, the Marathon Investor Group has robustly demonstrated its adequacy under Rule 23.

## CONCLUSION

For the foregoing reasons, the Marathon Investor Group respectfully requests that the Court issue an Order granting its motion in full and denying Lax's competing motion.

Dated:  June 20, 2023

**MUEHLBAUER LAW OFFICE, LTD.**

*/s/ Andrew R. Muehlbauer*
Andrew R. Muehlbauer
7915 West Sahara Ave., Suite 104
Las Vegas, Nevada 89117
Telephone: 702-330-4505
Facsimile: 702-825-0141
andrew@mlolegal.com

*Counsel for the Marathon Investor Group and Proposed Liaison Counsel for the Class*

MEMORANDUM OF POINTS AND AUTHORITIES

**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
J. Alexander Hood II (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  917-463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

**THE SCHALL FIRM**
Brian Schall (*pro hac vice* application forthcoming)
Ivy T. Ngo (*pro hac vice* application forthcoming)
Rina Restaino (*pro hac vice* application forthcoming)
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
brian@schallfirm.com
ivy@schallfirm.com
rina@schallfirm.com

*Counsel for the Marathon Investor Group and*
*Proposed Co-Lead Counsel for the Class*

MEMORANDUM OF POINTS AND AUTHORITIES

13

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Andrew R. Muehlbauer
Andrew Muehlbauer