# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER TURPEL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CANOPY GROWTH CORPORATION, DAVID KLEIN, and JUDY HONG,<br><br>Defendants. | Case No.  1:23-cv-04302-PAE [rel. 1:23-cv-05891-PAE; 1:23-cv-06266-PAE]<br><br>MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF CHEN LI FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS |
| COLUMBUS ALLEN JR.,<br><br>Plaintiff,<br><br>v.<br><br>CANOPY GROWTH CORPORATION, DAVID KLEIN, and JUDY HONG,<br><br>Defendants. | Case No.  1:23-cv-05891-PAE [rel. 1:23-cv-04302-PAE] |
| CHRISTIANN KANTNER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CANOPY GROWTH CORPORATION, DAVID KLEIN, JUDY HONG, and MICHAEL LEE,<br><br>Defendants. | Case No.  1:23-cv-06266-PAE [rel. 1:23-cv-04302-PAE] |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ...................................................................................................................... 5

      I.      LI SHOULD BE APPOINTED LEAD PLAINTIFF ............................................. 5

            A.     Li Has the "Largest Financial Interest" in the Related Actions ................. 5

            B.     Li Otherwise Satisfies the Requirements of Rule 23 ............................... 10

      II.     LI'S SELECTION OF COUNSEL SHOULD BE APPROVED ......................... 11

      III.    THE COMPETING MOTIONS SHOULD BE DENIED ................................... 11

CONCLUSION ................................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*,
No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ........................4, 5, 10

*Colwell v. Exicure Inc.*,
No. 21-cv-06637, 2023 WL 2572454 (N.D. Ill. Mar. 20, 2023) ...................................7

*Cortina v. Anavex Life Sciences Corp.*,
15-CV-10162 (JMF) 2016 WL 1337305 (S.D.N.Y., 2016).........................................6

*Dookeran v. Xunlei Ltd., No. 18-CV-467 (RJS)*,
2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018)....................................................4, 10

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)...............................................................................6, 7

*Eichenholtz v. Verifone Holdings, Inc.*,
No. C07-06140MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008).......................8

*FindWhat Inv. Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011) ..................................................................7

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ................................................................10

*Foster v. Maxwell Techs., Inc.*,
No. 13-CV-00580-BEN-RBB, 2013 WL 5780424 (S.D. Cal. Oct. 24, 2013) .........8

*In re Doral Fin. Corp. Sec. Litig.*,
414 F. Supp. 2d 398 (S.D.N.Y. 2006)........................................................2, 5

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) ...................................................................11

*In re Network Assocs., Inc., Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ........................................................3, 8

*In re Orion Sec. Litig.*,
No. 08 CIV. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) .................10

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ................................................................5, 10

*Lax v. First Merchants Acceptance Corp.*,
  Nos. 97 C 2715 *et al.*, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) .................................. *passim*

*McCormack v. Dingdong (Cayman) Ltd.*,
  No. 22-CV-7273 (VSB), 2022 WL 17336586 (S.D.N.Y. Nov. 30, 2022) ...............................8

*Micholle v. Ophthotech Corp.*,
  No. 17-CV-1758 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)...................................8

*Pelletier v. Endo Int'l PLC*,
  316 F. Supp. 3d. 846 (E.D. Pa. June 19, 2018).........................................................................7

*Pio v. Gen. Motors Co.*,
  No. CIV. 14-11191, 2014 WL 5421230 (E.D. Mich. Oct. 24, 2014)..................................2, 6

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
  No. 06 CIV. 5797 PAC, 2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007) ........................1, 2, 5, 6

*Ruland v. InfoSonics Corp.*,
  No. 06CV1231 BTMWMC, 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) .................... *passim*

*Saye v. NIO Inc.*,
  No. 22-CV-7252 (VSB), 2022 WL 17666398 (S.D.N.Y. Dec. 14, 2022).................................8

*Schueneman v. Arena Pharms., Inc.*,
  No. 10CV1959 BTM BLM, 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ..................... *passim*

*Westchester Putnam Ctys. Heavy & Highway Laborers Loc. 60 Benefit Funds v.*
  *Brixmor Prop. Grp. Inc.*,
  No. 16-CV-02400 (AT)(SN), 2016 WL 11648466 (S.D.N.Y. Nov. 29, 2016)............... *passim*

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................................1, 5, 11

Private Securities Litigation Reform Act of 1995 ................................................................ *passim*

**Rules**

Fed. R. Civ. P. 23...............................................................................................................1, 4, 5, 10

Movant Li[1] respectfully submits this Memorandum of Law in further support of his motion for consolidation, appointment as Lead Plaintiff, and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 33); and in opposition to the competing motions of: (i) Erik Austin ("Austin") (Dkt. No 12); (ii) James W. Skinner ("Skinner") (Dkt. No. 16); (iii) Thinh Nguyen ("Nguyen") (Dkt. No. 27); and (iv) Jimmy Padgett ("Padgett") (Dkt. No. 29).[2]

## PRELIMINARY STATEMENT

The Related Actions are putative class action securities lawsuits on behalf of investors in Canopy Growth securities.[3]  As with all federal class action securities lawsuits, a lead plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the Related Actions; and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, that movant is Li, who clearly possesses the largest financial interest as assessed under the so-called *Lax* factors, first articulated in the seminal decision in *Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715 *et al.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997), and widely adopted by courts nationwide as guidance for the PSLRA lead plaintiff process, including in this District specifically.  *See, e.g.*, *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,

---

[1] All capitalized terms herein are defined in Li's moving brief, unless otherwise indicated.  *See* Dkt. No. 35.

[2] Initially, two other competing motions were filed by movants  Donald Russell ("Russell") (Dkt. No. 22) and Mahmoud Ghahremanzadeh, Brett Massie, Antonio Cremonini, Sebastiano Cremonini, and Francesca Cremonini (collectively, the "Canopy Investor Group") (Dkt. No. 15). On August 1, 2023, the Canopy Investor Group filed a notice withdrawing its motion.  *See* Dkt. No. 39.  On August 7, 2023, Russell filed a notice withdrawing his motion.  *See* Dkt. No. 40.

[3] All of the competing movants before the Court agree that the Related Actions should be consolidated.  *See* Dkt. Nos. 12, 16, 27, 29, 33.

1

No. 06 CIV. 5797 PAC, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006). The four *Lax* factors guiding the lead plaintiff selection process are: (1) the number of shares purchased; (2) the number of net shares purchased (also referred to as "retained shares," *i.e.*, the total number of purchased shares minus the number of those shares sold before the alleged corrective disclosure or event); (3) the total net funds expended; and (4) the approximate losses suffered. *Lax*, 1997 WL 461036, at *5. Courts in the Second Circuit, including this District, routinely assess a lead plaintiff movant's financial interest holistically with reference to all four *Lax* factors. *See, e.g.*, *SafeNet*, 2007 WL 7952453, at *2 (assessing financial interest with reference to all four *Lax* factors); *Doral*, 414 F. Supp. 2d at 403 (same).

In examining all four *Lax* factors holistically, courts recognize that the first three *Lax* factors—shares purchased, retained shares (*i.e.*, net shares purchased), and funds expended— provide a more objective assessment of a lead plaintiff movant's financial interest within the meaning of the PSLRA, as opposed to monetary loss, which is subject to change based on the methodology applied to calculate losses and changes in future share prices. *See, e.g.*, *Pio v. Gen. Motors Co.*, No. CIV. 14-11191, 2014 WL 5421230, at *4 (E.D. Mich. Oct. 24, 2014) (finding "the first three [*Lax*] factors [*i.e.*, shares purchased, shares retained, and funds expended] provide the most objective measurement of a movant's stake in the litigation because the fourth factor [*i.e.*, monetary loss] is heavily dependent on the method applied and numbers chosen to calculate losses"); *Westchester Putnam Ctys. Heavy & Highway Laborers Loc. 60 Benefit Funds v. Brixmor Prop. Grp. Inc.*, No. 16-CV-02400 (AT)(SN), 2016 WL 11648466, at *2 (S.D.N.Y. Nov. 29, 2016) (finding "[t]he[ first three *Lax*] factors provide a more objective assessment of a movant's financial interest . . . whereas losses suffered may be subject to future changes in the price per share").

Of the three more objective *Lax* factors, courts place substantial weight on the number of shares retained at the time of corrective disclosures (*i.e.*, net shares purchased) because retained shares are the **only** shares for which a plaintiff has recoverable losses.  *See, e.g.*, *Ruland v. InfoSonics Corp.*, No. 06CV1231 BTMWMC, 2006 WL 3746716, at *6 (S.D. Cal. Oct. 23, 2006) (appointing movant that "has the greatest number of net shares purchased" as lead plaintiff because that movant "has the largest potential recovery"); *Schueneman v. Arena Pharms., Inc.*, No. 10CV1959 BTM BLM, 2011 WL 3475380, at *4 (S.D. Cal. Aug. 8, 2011) (same); *see also In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) ("At least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery.").

The following table compares the financial interests of the competing movants:

| Movant | Shares Purchased | Net Shares Purchased (Retained Shares) | Funds Expended | Loss |
|---|---|---|---|---|
| Li | 310,000 | 310,000 | $975,603 | $761,305 |
| Nguyen | 91,240 | 91,240 | $1,100,634 | $1,037,561 |
| Skinner | 213,717 | 75,717 | $1,381,873 | $756,340 |
| Austin | 52,647 | 52,647 | $520,510 | $484,428 |
| Padgett | 27,003 | 27,003 | $199,095 | $180,429 |

As the above table reflects, Li has the largest financial interest among the competing movants under an appropriately holistic analysis that takes into account all four *Lax* factors.  Here, of the three *Lax* factors that "provide a more objective assessment of a movant's financial interest than the losses suffered," *Brixmor*, 2016 WL 11648466, at *2—*i.e.*, shares purchased, funds expended, and, most importantly, shares retained—Li individually leads by a significant margin with respect to two of those three factors, shares purchased and shares retained.  Critically, Li retained 310,000 shares, ***over 20% more*** than the 246,607 shares retained by ***all of the competing movants combined***, tipping the balance greatly in Li's favor of having the largest financial interest

3

in this litigation.  *See Ruland*, 2006 WL 3746716, at \*6; *Schueneman*, 2011 WL 3475380, at \*4.

Moreover, Li purchased 310,000 shares during the Class Period, significantly more than any other

lead plaintiff movant, and over ***30% more*** than Skinner, who claims the second-largest number of

shares purchased.  Accordingly, because Li leads in two of the three more objective *Lax* factors

(number of shares purchased and shares retained), whereas each of the competing movants can

only claim to lead in, at most, a single *Lax* factor, Li clearly possesses the largest financial interest

in this litigation within the meaning of the PSLRA.

In addition to his significant financial interest, Li also satisfies the adequacy and typicality

requirements of Rule 23.  Li is aware of no conflict between his interests and those of the Class,

his losses incurred give him a sufficient stake in the outcome of this litigation to ensure vigorous

advocacy, and, in Pomerantz, Li has retained qualified and experienced counsel.  *See Dookeran v.*

*Xunlei Ltd., No. 18-CV-467 (RJS)*, 2018 WL 1779348, at \*2-3 (S.D.N.Y. Apr. 12, 2018).  Li, like

other Class members, purchased Canopy Growth securities during the Class Period at prices

alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was

damaged upon disclosure of those misrepresentations or omissions that drove Canopy Growth's

share price downward.  *See Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872,

at \*3 (S.D.N.Y. Apr. 4, 2018).  Further demonstrating his adequacy, Li has submitted a detailed

Declaration providing the Court with biographical information about himself and attesting to, *inter*

*alia*, his understanding of the significance of his motion, his understanding of the responsibilities

of a Lead Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these

responsibilities on behalf of the Class.  *See generally* Dkt. No. 36-4.

For the foregoing reasons, as set forth more fully herein, Li respectfully requests that the

Court grant his motion in its entirety and deny the competing motions.

4

**ARGUMENT**

## I.  LI SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA creates a strong presumption that the lead plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest must make a *prima facie* showing of typicality and adequacy under Rule 23.  *See Aude*, 2018 WL 1634872, at *3; *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).  Once this presumption is triggered, it may be rebutted only upon "proof" that the presumptive lead plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).  Here, the most adequate plaintiff is Li.

### A.  Li Has the "Largest Financial Interest" in the Related Actions

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  *Id.* § 78u-4(a)(3)(B)(iii).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in the Second Circuit, including this District, generally assess financial interest with reference to the four *Lax* factors: (1) the number of shares purchased; (2) the number of net shares purchased (*i.e.*, retained shares); (3) the total net funds expended; and (4) the approximate losses suffered.  *See, e.g.*, *SafeNet*, 2007 WL 7952453, at *2 (assessing financial interest with reference to all four *Lax* factors); *Doral*, 414 F. Supp. 2d at 403 (same).

Although some courts tend to equate a movant's financial interest with monetary loss, courts around the country, including in the Second Circuit and this District specifically, have routinely assessed a lead plaintiff movant's financial interest holistically with reference to ***all four Lax*** factors.  *See, e.g.*, *Brixmor* 2016 WL 11648466, at *2 (weighing all four *Lax* factors and

5

appointing movant with lower loss); *SafeNet*, 2007 WL 7952453, at *2 (same); *Cortina v. Anavex Life Scis. Corp.*, No. 15-CV-10162 (JMF), 2016 WL 1337305, at *2 (S.D.N.Y. Apr. 5, 2016) (declining to resolve disputes over a movant's claimed losses "because . . . the [other] *Lax* factors ultimately weigh in [another movant]'s favor"). This is, in part, because courts recognize that the first three *Lax* factors—shares purchased, funds expended, and shares retained—provide a more objective assessment of a lead plaintiff movant's financial interest within the meaning of the PSLRA, as opposed to monetary loss, which is subject to change based on the methodology applied to calculate losses and changes in future share prices. *See, e.g.*, *Pio*, 2014 WL 5421230, at *4 ("The Court declines the invitation to ignore all but the fourth *Lax* factor in deciding which movant has the largest financial interest in this litigation" because "the first three factors provide the most objective measurement of a movant's stake in the litigation because the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses."); *Brixmor* 2016 WL 11648466, at *2 ("The[ first three *Lax*] factors provide a more objective assessment of a movant's financial interest than the losses suffered, given that shares purchased, net shares purchased, and funds expended are static markers set in stone during the class period, whereas losses suffered may be subject to future changes in the price per share.").

In examining all four *Lax* factors holistically, courts often place substantial weight on the number of shares retained (*i.e.*, net shares purchased) because an investor's shares retained at the time an alleged fraud is revealed are the ***only*** shares damaged by the corrective disclosures—*i.e.*, revelations of defendants' wrongdoing—that are responsible for the share price declines that caused the class's losses, and thus the only shares for which a plaintiff has recoverable losses. *See, e.g.*, *Ruland*, 2006 WL 3746716, at *6 (appointing movant that "has the greatest number of net shares purchased" as lead plaintiff because that movant "has the largest potential recovery");

6

*Schueneman*, 2011 WL 3475380, at \*4 (same).  Particularly, as the Supreme Court held in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), in an action under the federal securities laws, the only relief that can be sought by a plaintiff or a class is the loss proximately caused by the defendant's wrongdoing.  544 U.S. at 338.  Thus, under *Dura*, any recoverable losses must stem from a cognizable cause—*i.e.*, here, the revelation of Defendants' alleged fraud through corrective disclosures.  *See id*. at 342 ("[If] the purchaser sells the shares . . . before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").  *See also FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1311 (11th Cir. 2011) (The lead plaintiff is required to prove "that the fraud-induced inflation that was baked into the plaintiff's purchase price was subsequently removed from the stock's price, thereby causing losses to the plaintiff.").[4]

Here, the only loss allegations in the Related Actions stem from corrective disclosures that caused Canopy Growth's share price to decline: (i) on February 9, 2023, after the Company issued disappointing financial results that missed consensus estimates, disclosed new cost-reduction initiatives, and revealed that aged inventory and overspending in its BioSteel business had been significantly hampering the Company's profitability (*see* Kantner Complaint ¶¶ 5-6, 63-64); and (ii) on May 11, 2023, after the Company announced that certain of its previously issued financial statements were unreliable and would need to be restated because it had identified material misstatements in connection with the review of "certain trends in the booking of sales by the [BioSteel] business unit", the correction of which was "expected to reduce certain revenues

---

[4] *See also Colwell v. Exicure Inc.*, No. 21-cv-06637, 2023 WL 2572454, at \*4 (N.D. Ill. Mar. 20, 2023) (applying same method for calculating *Dura* losses at lead plaintiff stage); *Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d. 846, 849 (E.D. Pa. June 19, 2018) (using *Dura* recoverable losses to calculate financial interest because "[i]ncluding losses that were incurred before any disclosure could not have been caused by any disclosures and are not recoverable. Thus, those shares are not included in the 'largest financial interest' calculus.").

7

previously recognized" (*Id.* ¶¶ 7-8, 71-72; Turpel Complaint ¶¶ 3-4, 28-29; Allen Complaint ¶¶ 3-4, 28-29).  By the terms of the complaints on file then, an investor would not have any recoverable losses for shares they sold prior to that information damaging Canopy Growth's share price.  There is no other theory of damages alleged in the Related Actions and, as such, only shares attributable to the share price decline on those corrective disclosure dates—*i.e.*, **shares retained** as of those corrective disclosure dates (of which Li, as discussed in detail below, has significantly more of than all of the competing movants **combined**)—were damaged by Defendants' wrongdoing.  *See, e.g.*, *Saye v. NIO Inc.*, No. 22-CV-7252 (VSB), 2022 WL 17666398, at *4 (S.D.N.Y. Dec. 14, 2022) ("[S]ecurities actions only provide recoveries for 'economic losses that misrepresentations actually cause.'" (quoting *Dura*, 544 U.S. at 345)); *McCormack v. Dingdong (Cayman) Ltd.*, No. 22-CV-7273 (VSB), 2022 WL 17336586, at *3 (S.D.N.Y. Nov. 30, 2022) (same); *Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2018 WL 1307285, at *5 (S.D.N.Y. Mar. 13, 2018) (same); *Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140MHP, 2008 WL 3925289, at *3 (N.D. Cal. Aug. 22, 2008) ("[L]oss causation can only be demonstrated **with respect to shares retained as of the date of the corrective disclosure**." (Emphasis added.)); *Foster v. Maxwell Techs., Inc.*, No. 13-CV-00580-BEN-RBB, 2013 WL 5780424, at *3 (S.D. Cal. Oct. 24, 2013) ("The misrepresentation does not lead to a loss **if the purchaser sells the shares before the truth is revealed**." (Emphasis added.)); *Ruland*, 2006 WL 3746716, at *6 (appointing movant that "has the greatest number of net shares purchased" as lead plaintiff because that movant "has the largest potential recovery"); *Schueneman*, 2011 WL 3475380, at *4 (same); *see also Network Assocs.*, 76 F. Supp. 2d at 1027 ("At least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery.").

8

As the chart at p. 3 illustrates, Li clearly possesses the largest financial interest in this litigation under a holistic *Lax*-factor analysis involving all four factors.  Here, of the three *Lax* factors that "provide a more objective assessment of a movant's financial interest than the losses suffered," *Brixmor*, 2016 WL 11648466, at *2—*i.e.*, shares purchased, funds expended, and shares retained—Li individually leads all competing movants by significant margins with respect to two of those three factors, shares purchased and, most critically, shares retained.  Indeed, with respect to arguably the most important *Lax* factor, shares retained, which correlates with a movant's potential recovery in the litigation, Li retained 310,000 shares, ***over 20% more*** than the 246,607 shares retained by ***all of the competing movants combined***, as well as held more shares through each of the corrective disclosures alleged in the complaints in the Related Actions than any other competing movant—specifically, 300,000 shares held through the Company's share price decline on February 9, 2023 and 310,000 shares held through the Company's share price decline on May 11, 2023—tipping the balance greatly in favor of Li having the largest financial interest in this litigation.  *See Ruland*, 2006 WL 3746716, at *6; *Schueneman*, 2011 WL 3475380, at *4.  In addition, Li purchased 310,000 shares, which is ***31%***, ***70%***, ***83%***, and ***91%*** more than the shares purchased by Skinner (213,717), Nguyen (91,240), Austin (52,647), and Padget (27,003), respectively.  By contrast, none of the competing movants can claim to lead with respect to more than ***one*** of the four *Lax* factors.  As the chart at p. 3 illustrates, Skinner only leads with respect to one of the four *Lax* factors, the total net funds expended, which is the last remaining of the three most objective *Lax* factors, and Nguyen only leads with respect to the final and least objective *Lax* factor, monetary loss.

Accordingly, because Li leads with respect to two of the *Lax* factors—total shares purchased and, most importantly, net shares purchased (*i.e.*, retained shares)—whereas each of the

competing movants can only claim to lead with respect to, at most, a single *Lax* factor, Li plainly possesses the largest financial interest in this litigation under a holistic *Lax*-factor analysis involving all four factors.

### B. Li Otherwise Satisfies the Requirements of Rule 23

Li has also made the requisite *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23. *See Aude*, 2018 WL 1634872, at *3; *Kaplan*, 240 F.R.D. at 94. First, Li's claims satisfy the typicality requirement of Rule 23(a)(3) because his claims against Canopy Growth and the other Defendants are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See, e.g.*, *In re Orion Sec. Litig.*, No. 08 CIV. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008). Second, Li satisfies the adequacy requirement of Rule 23(a)(4) because "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran*, 2018 WL 1779348, at *2-3. Further demonstrating his adequacy, Li has submitted a detailed Declaration providing the Court with biographical information about himself and attesting to, *inter alia*, his understanding of the significance of his motion, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these responsibilities on behalf of the Class. *See generally* Dkt. No. 36-4.

* * * * *

Because Li has the largest financial interest of any competing Lead Plaintiff movant in the relief sought by the Class and otherwise satisfies the requirements of Rule 23, he is the presumptive "most adequate plaintiff" of the Class within the meaning of the PSLRA.

10

To overcome the strong presumption entitling Li to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that the presumptive Lead Plaintiff is inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).  No such proof exists in this case and any speculative arguments to the contrary should be flatly rejected.

## II.     LI'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court.  *See id.* § 78u-4(a)(3)(B)(v).  The Court should interfere with the Lead Plaintiff's selection only when necessary to "protect the interests of the class."  *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Li has selected Pomerantz as Lead Counsel for the Class.  As its resume reflects, Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors.  *See* Dkt. No. 36-5.  Thus, the Court may be assured that by approving Li's selection of counsel, the members of the Class will receive the best legal representation available.

## III.    THE COMPETING MOTIONS SHOULD BE DENIED

As discussed further in Section I.A., *supra*, no competing movant has alleged a larger financial interest than Li.  The only competing movants for appointment as Lead Plaintiff are Austin, Skinner, Nguyen, and Padgett, whose respective number of shares purchased and number of net shares purchased (*i.e.*, retained shares) are dwarfed by Li's number of shares purchased (310,000) and number of net shares purchased (310,000), as illustrated by the chart at p. 3.  Li

11

therefore dominates two of the three most objective *Lax* factors, while each of the competing movants can only claim to lead in, at most, a single *Lax* factor. Accordingly, Li has the largest financial interest in this litigation. This fact alone mandates denial of the competing motions.

## CONCLUSION

For the foregoing reasons, Li respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Li as Lead Plaintiff for the Class; and (3) approving Li's selection of Pomerantz as Lead Counsel for the Class.

Dated:  August 15, 2023

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Chen Li and Proposed Lead Counsel for the Class*

HAO LAW FIRM
Junbo Hao
Room 3-401 No. 2 Building,
No. 1 Shuangliubei Street
100024  Beijing
People's Republic of China
Telephone: +86 137-1805-2888
jhao@haolaw.cn

*Additional Counsel for Chen Li*

12