**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| JAIME R. MORENO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARATHON DIGITAL HOLDINGS, INC., et al.<br><br>Defendants. | Case No. 2:23-cv-00470-RFB-DJA<br><br>**ORDER** |

**I.     INTRODUCTION**

Before the Court are three motions for appointment as lead plaintiff and lead counsel. (ECF Nos. 14, 15, 16). For the following reasons, the Court grants Marathon Investor Group's motion for appointment of counsel and for appointment of lead plaintiff (ECF No. 16). The remaining two motions are denied.

**II.    BACKGROUND**

This is a securities class action brought on behalf of "persons and entities other than Defendants that purchased or otherwise acquired Marathon securities between May 10, 2021, and February 28, 2023, both dates inclusive." On March 30, 2023, Plaintiff Jaime R. Moreno filed a class action Complaint with Jury Demand, alleging (1) violations of Section 10(b) of the Securities Exchange Act of 1934 and Securities Exchange Commission Rule 10b-5 and (2) violations of Section 20(a) of the Exchange Act. ECF No. 1. The motions for appointment of lead plaintiff and lead counsel were filed on May 30, 2023 and fully briefed on June 20, 2023.

### III. LEGAL STANDARD

Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). Determining the lead plaintiff in a securities class action is a three-step process. In re Mersho, 6 F.4th 891, 899 (9th Cir. 2021). In step one, notice of the action must be posted so purported class members can move for lead plaintiff appointment." Id. (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)–(II). The statute expressly allows a "group of persons" to move for appointment. Mersho, 6 F.4th at 899 (citing § 78u-4(a)(3)(B)(iii)(I)).

"In step two, the district court must determine which movant is the 'most adequate plaintiff,' which is defined as the plaintiff 'most capable of adequately representing the interests of class members.'" Id. (citing § 78u-4(a)(3)(B)(i)). At this stage, "the district court must 'adopt a presumption that the most adequate plaintiff' is the movant with the largest financial interest who 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" Id. (citing § 78u-4(a)(3)(B)(iii)(I)). "If the movant with the largest losses does not satisfy the Rule 23 requirements, the district court must then look to the movant with the next largest losses and repeat the inquiry." Id. (citing In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002)). "At this step, the process is not adversarial, so the Rule 23 determination should be based on only the movant's pleadings and declarations." Id. (citing Cavanaugh, 306 F.3d at 730).

At step three, "the process 'turns adversarial.'" Id. The burden shifts to the competing movant to show inadequacy. "The presumption may be rebutted 'only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or [ ] is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" Id. (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb)). "For the presumption to have meaning at step three, competing movants must point to evidence of inadequacy." Id. at 901. "If the presumption is not rebutted, the presumptively most adequate plaintiff must be selected as lead plaintiff." Id. at 899 (citing 15

U.S.C. § 78u-4(a)(3)(B)(i)).

IV.   **DISCUSSION**

Todd Langer, Mary Barida, and Jacks Way, LLC (collectively, the "Marathon Investor Group" or "MIG"), James R. Lax, and Kevin Clark have filed competing motions for appointment of lead plaintiff and lead counsel. Movant Kevin Clark filed a Non-Opposition to the competing motions, acknowledging that he "does not appear to have the largest financial interest in this litigation within the meaning of the PSLRA." ECF No. 28. Although Clark did not formally withdraw his motion, in light of his concession, the Court denies his motion. Therefore, the Court only considers the competing motions of the Marathon Investor Group and James Lax.

a.   **Notice and Timeliness**

The PSLRA provides that the plaintiff in the first-filed action must publish notice alerting members of the putative class of the pendency of the action, the claims asserted, and the purported class period within twenty days of the filing of the complaint. 15 U.S.C. § 78u-4(a)(3)(A)(i). Thereafter, any member of the putative class may file a motion to serve as lead plaintiff within sixty days of the notice's publication. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). The Complaint was filed on March 30, 2023, and the required notice was published that same day. The potential lead plaintiffs all filed their motions on May 30, 2023, which is within the sixty-day period prescribed by the PSLRA. Accordingly, each movant meets the first requirement under the PSLRA.

b.   **Financial Interest**

The district court must determine which movant has the most to gain from the lawsuit by calculating each potential lead plaintiff's financial interest in the litigation. In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002). Neither the Ninth Circuit nor the PSLRA has endorsed any one method of calculating the largest financial interest. However, the court must "select accounting methods that are both rational and consistently applied." Id.

"In calculating a movant's financial interest, courts typically consider four factors, often referred to as the Lax-Olsten factors: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended

- 3 -

during the class period; and (4) the approximate losses suffered during the class period." Peters v. Twist Bioscience Corp., No. 5:22-CV-08168-EJD, 2023 WL 4849431, at *3 (N.D. Cal. July 28, 2023).

The first factor, total shares purchased during the Class Period, favors MIG. The Marathon Investor Group members purchased 53,388 shares of Marathon stock. On the other hand, Lax purchased 3,000 shares. The second factor, net shares purchased, also favors MIG, which purchased a net of 9,089 shares. Lax purchased 3,000 net shares. MIG's net expenditures during the class period also exceeded Lax's and therefore the third factor favors MIG as well.

"The final Lax-Olsten factor considers the approximate losses suffered during the Class Period and is widely regarded as the factor commanding the most weight." Peters, 2023 WL 4849431, at *4 (collecting cases). Many courts in the Ninth Circuit use the "last in, first out" ("LIFO") accounting method to calculate estimated losses. Id. (citing Scheller v. Nutanix, Inc., 2021 WL 2410832, at *4 (N.D. Cal. June 10, 2021) (collecting cases)). District courts will also consider Dura Pharmaceuticals v. Broudo, which holds that a shareholder's losses must be proximately caused by the defendants' misrepresentations, as opposed to natural market fluctuations unrelated to fraud. Under this approach, courts exclude losses that occurred from pre-disclosure stock sales. Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346 (2005).

MIG proposes an analysis that includes pre-disclosure losses on sales made during the Class Period. Under this method, MIG collectively claims an estimated loss of $592,719 which includes Langer ($294,871), Barida ($172,049), and Jacks Way ($125,799). Comparatively, Lax suffered a loss of $176,433.63. Accordingly, when considering pre-disclosure losses, MIG suffered the greatest loss of $592,719.

Lax proposes calculating financial loss using the LIFO accounting method and excluding pre-disclosure losses per Dura. Lax argues that disaggregating the potential recovery would show that he has the largest potential recovery than any of the three Marathon members under this method. He states that Langer's losses become a gain of $24,204.60 because Langer sold all but 500 of his shares during the Class Period. Barida ($172,049), Jacks Way ($125,799) and Lax's

- 4 -

($176,433.63) losses would remain unchanged according to Lax's proposed methodology because none sold any shares during the Class Period.

However, the PSLRA instructs the Court to determine "the largest financial interest in the relief sought" for any "person or *group* of persons." See 15 U.S.C. § 78u-4(a)(3)(B)(iii) (emphasis added). Thus, the court must calculate the financial interest for each movant, even if the movant is a plaintiff group rather than an individual. Id. Under either MIG's or Lax's proposed methodology, MIG still has the largest aggregated estimated loss. For example, even if the Court were to exclude Langer, both Barida and Jacks Way recoverable losses collectively exceed Lax's loss by more than $120,000. Therefore the fourth Lax-Olsten factor cuts in favor of MIG as well. Because all four Lax-Olsten factors favor MIG, the Court finds that MIG has the largest financial interest in the litigation.

### c. Typicality and Adequacy under Rule 23

"Once it determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements." Cavanaugh, 306 F.3d at 732.

#### i. Typicality

The typicality inquiry asks "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal citations omitted).

The Court finds that MIG's claims are typical of the class. MIG's members, like the other members of the putative class, acquired Marathon securities during the class period and suffered losses on their investment as a result of the violations of the federal securities laws alleged in the Complaint.

#### ii. Adequacy

Class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine adequacy, the Court assesses whether "the movant and its counsel

have any conflicts of interest with other class members" and whether the movant and its counsel "will prosecute the action vigorously on behalf of the class." Mersho, 6 F.4th at 899-900.

The Court is satisfied that MIG will be able to competently represent the class. There is no evidence of any conflicts of interest between MIG, or MIG's proposed counsel, and any other potential class members. Further, MIG's estimated recoverable loss, both as a group, and with respect to its individual members, demonstrates that it has a strong interest in the outcome of the litigation. See Mersho, 6 F.4th at 899–900. MIG is a small group of three investors who attest to their "shared desire to achieve the best possible result for the class." They declare that they are "prepared to supervise counsel and undertake all actions necessary to ensure that the Class's claims will be zealously and efficiently litigated." This includes conferring regarding litigation strategy, attending court proceedings as needed, and reviewing and authorizing litigation documents.

Because MIG demonstrates their claims are typical of the class and they will adequately represent the class, the Court finds Marathon Investor Group is the presumptive lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(i); see also Cavanaugh, 306 F.3d at 729 ("The 'most capable' plaintiff—and hence the lead plaintiff—is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23.").

### d. Rebuttable Presumption

At step three, the burden shifts to the competing movant to "rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." See Cavanaugh, 306 F.3d at 730 (citing § 78u-4(a)(3)(B)(iii)(II)). The Court finds that Lax fails to satisfy his burden at this stage because he does not point to sufficient evidence or proof of inadequacy or atypicality.[1] He centrally argues that MIG has failed to provide evidence of cohesiveness and its ability to properly supervise counsel. But such arguments "effectively [leave]

---

[1] As evidence of inadequacy, Lax notes that the MIG members signed their PSLRA certifications on the same day. Lax also points to a possible discrepancy in the member's Joint Declaration as it relates to appointment of counsel. Separately, Lax filed a Notice of Post-Motion Facts in which he states that MIG's proposed co-lead counsel, Pomerantz, filed a brief in an unrelated case in which it allegedly took an inconsistent legal position to the one it asserts here. The Court finds that this evidence is insufficient in establishing that MIG will not fairly and adequately protect the interests of the class under Rule 23.

- 6 -

the burden on [MIG] to prove adequacy at step three even though the burden should [] shift[] to the competing movants to show inadequacy." See In re Mersho, 6 F.4th 891, 901 (9th Cir. 2021) ("Competing movants must convince the district court that the presumptive lead plaintiff would not be adequate, not merely that the district court was wrong in determining that the prima facie elements of adequacy were met."). Because the Court has found that MIG satisfies the typicality and adequacy requirements at step two and Lax has failed to rebut the presumption at step three, the Court therefore appoints MIG as lead plaintiff. See Cavanaugh, 306 F.3d at 732; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ("The 'most capable' plaintiff – and hence the lead plaintiff – is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23.").

    e. **Choice of Counsel**

The most adequate plaintiff is entitled to its choice of counsel, with approval from the Court. 15 U.S.C. § 78u–4(a)(3)(B)(v). The Court must be deferential in its review of the proposed counsel, and should approve the choice unless it is unreasonable. In re Cohen, 586 F.3d 703, 711-12 (9th Cir. 2009) ("Consistent with congressional intent in enacting the PSLRA to vest authority for selecting class counsel in the lead plaintiff and our reasoning in Cavanaugh, the district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently. . . . Rather, . . . we hold that if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice."). The Court has considered the materials attached regarding the qualifications of proposed counsel and finds that Plaintiff's selection of Pomerantz, LLP and the Schall Law Firm as Co-Lead Counsel, and Muehlbauer Law as Liaison Counsel, is reasonable. The Court is satisfied that counsel has sufficient experience in securities class action litigation. Therefore, Pomerantz, LLP and the Schall Law Firm are appointed Lead Counsel and Muehlbauer Law Office, Ltd. is appointed Liaison Counsel.

///

///

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that Movant Marathon Investor Group's motion for appointment of lead plaintiff and appointment of counsel and (ECF No. 16) is **GRANTED**. The competing motions (ECF No. 14 and ECF No. 15) are **DENIED.**

DATED: March 29, 2024

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**