**FLANGAS LAW GROUP**
KIMBERLY P. STEIN
Nevada Bar No. 8675
Email: kps@fdlawlv.com
3275 South Jones Boulevard, Suite 105
Las Vegas, NV 89146
Telephone: (702) 307-9500

**WEIL, GOTSHAL & MANGES LLP**
JONATHAN D. POLKES (*Admitted Pro Hac Vice*)
New York Bar No. 2015527
Email: jonathan.polkes@weil.com
CAROLINE HICKEY ZALKA (*Admitted Pro Hac Vice*)
New York Bar No. 4263448
Email: caroline.zalka@weil.com
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8770

*Attorneys for Defendants Marathon*
*Digital Holdings Inc.,*
*Merrick Okamoto, Frederick G. Thiel,*
*Simeon Salzman, and Hugh J. Gallagher*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TODD LANGER, MARY BARIDA, AND JACKS WAY LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARATHON DIGITAL HOLDINGS, INC., MERRICK OKAMOTO, FREDERICK G. THIEL, SIMEON SALZMAN, and HUGH J. GALLAGHER,<br><br>Defendants. | Lead Case No: 2:23-cv-00470-RFB-DJA<br><br><br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Plaintiffs' Opposition (ECF 54 ("Pl. Mem.")) fails to substantively engage with, let alone refute, the many arguments supporting dismissal of the Complaint set forth in the Opening Brief.

*First*, in the Opening Brief (ECF 43 ("Mot.")) Marathon (now MARA Holdings, Inc.) demonstrated that the Complaint fails to adduce any plausible allegations of scienter. The Opposition repeatedly asserts that Defendants "falsely and misleadingly represented how Marathon . . . was valuing its bitcoin portfolio" (Pl. Mem. at 1; *see also* 14–15), ignoring that Marathon in fact disclosed to investors *exactly* the accounting methodologies it used, including the daily time cutoff for impairment calculation. Further, to state a cognizable securities claim, Plaintiffs must allege that Defendants contemporaneously knew that Marathon's accounting treatment was wrong and Defendants failed to disclose it. Plaintiffs do not address this argument.

Indeed, perhaps recognizing the weakness in the Complaint's allegations, Plaintiffs pivot to a new theory of scienter—the core operations doctrine—based on new facts attached to the Opposition that postdate the present motion. But even this improper amendment-by-brief is bereft of any factual allegations supporting a strong, cogent, and compelling inference that Defendants knew that Marathon's accounting treatment was incorrect. That is particularly true considering that other digital currency companies took the same approach and that Marathon's auditor repeatedly validated Marathon's accounting methodologies. *See infra*, Section I.A.

*Second*, Plaintiffs fail to rebut any of the arguments set forth in the Opening Brief regarding falsity or materiality. Plaintiffs fail to explain how a complaint that does not include a single fact about Marathon's internal and disclosure controls can allege, with particularity, that disclosures around those controls were false when made. Additionally, Plaintiffs ignore that the restated costs of revenues had ***zero impact*** on Marathon's financials, and continue to point to immaterial line items even though Marathon's restated Bitcoin impairment numbers had no material impact on its overall financial position. *See infra*, Section I.B.

*Third*, Plaintiffs argue that Marathon's stock drop of just 8.31% (the day *after* the alleged

corrective disclosure) is sufficiently significant to allege loss causation, but fail to confront the host of authority discussed in the Opening Brief dismissing securities fraud claims where, as here, the stock drop was delayed, transient, and/or in line with normal stock fluctuations. Plaintiffs' other loss causation arguments are equally unavailing. *See infra*, Section I.C.

*Finally*, Plaintiffs consent to the Court judicially noticing a majority of the exhibits supporting the present motion. On the motion and those exhibits alone, the Complaint should be dismissed. In any event, the challenged exhibits are not subject to reasonable dispute and are regularly considered by courts in the Ninth Circuit in the § 10(b) context. *See infra*, Section III.

For the reasons set forth below, the Complaint should be dismissed with prejudice.

## **LEGAL ARGUMENT**

**I.       PLAINTIFFS FAIL TO STATE A SECTION 10(b) CLAIM**

**A.       PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER**

Plaintiffs' claims fail in their entirety for failure to allege facts giving rise to the requisite *strong inference* of scienter. Despite their best efforts, Plaintiffs' allegations still amount to nothing more than the fact of a financial restatement in response to SEC feedback. Binding precedent repeatedly confirms that, under the PSLRA, the "mere publication of a restatement is not enough to create a strong inference of scienter" in a § 10(b) case. Mot. at 12 (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009), *as amended* (Feb. 10, 2009)). As discussed below, Plaintiffs' scattershot scienter allegations, both individually and when taken together, fail to allege the required strong inference of scienter.

**1.       Plaintiffs Fail to Respond to the Argument that Defendants Accurately Disclosed Marathon's Accounting Methodologies**

As a threshold matter, Plaintiffs repeatedly assert that Defendants "falsely described" to investors "what they were doing" (Pl. Mem. at 16; *see also* 14), but this is simply wrong. Marathon accurately recited that the accounting standard for impairment requires an assessment of the value of Bitcoin "at any time," and clarified *in the same filing* precisely how it was applying that standard: "In performing the quantitative impairment test of the mined BTC balances as well as recordation of daily revenues, . . . the Company utilizes the pricing of BTC

on a nightly basis from Coindesk.com . . . *taken at approximately 4pm New York time.*" Ex. A at 36 (ECF 45-1) (emphasis added); Mot. at 6, 18. That clarification was not only accurate, but also necessary, because it is "clear the words 'at any time' may admit of more than one reasonable interpretation." *In re New Valley Corp.*, 89 F.3d 143, 151 (3d Cir. 1996). Investors thus knew exactly how Marathon was calculating impairment. Mot. at 18. Further, as to MaraPool, Marathon accurately disclosed that it "did not have control over any third party contributing hashrate to its pool" and advised that in an "exercise [of] its business judgment," it was treating itself as an "agent" rather than a "principal," meaning that revenues were accounted for on a "net" basis. *Id.* at 6–7. The Opposition ignores these actual-disclosure arguments and thus concedes them. *See, e.g.*, *Donor Network W. v. Nev. Donor Network, Inc.*, 2024 WL 4119267, at *5 (D. Nev. Sept. 9, 2024).

Regardless, the merits question is not whether any of the Defendants knew how to recite the disclosed accounting methodology or even how Marathon executed that methodology. In the "efficient market" Plaintiffs allege (AC ¶ 150), *everyone* (including investors) was aware of those facts. The question is whether there is an allegation of fact from which the Court can infer that Defendants knew that Marathon's accounting approach was *wrong*. On that point, Plaintiffs continue to rely entirely on the hindsight argument that the Complaint "alleges that both of those statements were materially false and misleading, as confirmed by the SEC letters and the Restatement." Pl. Mem. at 15. But Marathon's transparent and repeated disclosure of its understanding of the accounting rules weighs decisively *against* any inference of scienter. *See In re WatchGuard Sec. Litig.*, 2006 WL 8473541, at *5 (W.D. Wash. Apr. 21, 2006) ("Consistent disclosure of the erroneous premise that led to the repeated [accounting error] is consistent with [Defendant]'s ignorance of the error, not with any Defendant's intent to deceive or deliberate recklessness"). So does the undisputed reality that accounting approaches varied and other digital currency companies followed the same accounting approach as Marathon. *See* Mot. at 6–7; Exs. H, I, J, Q (ECFs 45, 46); *In re Medicis Pharm. Corp. Sec. Litig.*, 2010 WL 3154863, at *5 (D. Ariz. Aug. 9, 2010) ("Where a provision at issue is subject to competing

interpretations that are reasonable . . . the inference of scienter is generally weak").

### 2. Plaintiffs' New Core Operations Theory Fails

Effectively conceding their failure to adequately allege scienter, Plaintiffs offer new facts and propound a new theory of scienter not included in the Complaint: the core operations doctrine. Pl. Mem. at 13–14. This backdoor effort to amend the pleading through briefing is improper. *See Bartley v. Wells Fargo Bank*, 2014 WL 664660, at *3 (D. Nev. Feb. 18, 2014) ("Plaintiffs cannot amend their claims through the motion to dismiss briefing").

Even taking these new facts and arguments into account, however, Plaintiffs still fall well short of pleading scienter. "The core operations theory of scienter relies on the principle that corporate officers have knowledge of the critical core operation of their companies." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014). "Proof under [the core operations] theory is not easy." *Id.*; *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014) ("[A]bsent some additional allegation of specific information conveyed to management and related to the fraud or other allegations supporting scienter, the core operations inference will generally fall short of a strong inference of scienter"). Relevant here, where there are no particularized allegations of knowledge, there must be "rare circumstances" in which "the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1111–12 (9th Cir. 2021) (dismissing core operations scienter allegations where "all the SAC allege[d] is that, because of their positions in the company . . . , [defendants] 'would have' been involved in" specific operations).

Here, Plaintiffs fundamentally misapply the core operations doctrine. They argue that because "Marathon had an extraordinarily small number of personnel" and because Bitcoin mining was a "core operation" of Marathon, the Court should infer that Defendants knew "how the Company assessed its Bitcoin holdings for impairment and accounted for MaraPool revenues and costs." Pl. Mem. at 13–14. That is the wrong premise: as set forth above, *everyone* knew "how" Marathon accounted for revenues and Bitcoin impairment. The question is whether

Page 4

Defendants knew that Marathon's accounting approach was *wrong*. *See Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) ("[T]he complaint must contain allegations of specific 'contemporaneous statements or conditions' that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made"). Alleged negligence by Defendants—"even gross negligence"—in light of the information available to them "does not rise to the level of the nefarious mental state necessary to constitute securities fraud under the PSLRA." *DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002).

As such, Plaintiffs' core operations arguments fail. Plaintiffs cite no authority for the proposition that a leanly-staffed company is a strong indicator of scienter, and courts have repeatedly rejected that theory. *See, e.g.*, *In re Watchguard Sec. Litig.*, 2006 WL 2038656, at *4 (W.D. Wash. Apr. 21, 2006) ("Absent allegations that link a particular Defendant with particular knowledge, the court will not infer knowledge simply because WatchGuard is a 'small company'"); *see also Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, 2018 WL 3126393, at *9 (N.D. Cal. June 26, 2018) (holding that "claims regarding the size of a company do not remedy [a] defect" to plead the specific involvement by defendants required for a strong scienter inference).

Moreover, it is not even remotely "absurd" to infer that Marathon's executives did not understand the nuances of proper accounting treatment in a novel industry with little authoritative guidance. *See Webb v. Solarcity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018) (rejecting core operations theory even where corporate executives had "hands-on style and general accounting acumen" but were not alleged to be directly "involved in [the minutiae of] accounting decisions"); *Zucco Partners*, 552 F.3d at 1000 (rejecting core operations theory despite "allegations that senior management . . . closely reviewed the accounting numbers generated . . . each quarter"). Indeed, "[a]ccounting treatment . . . ***does not generally amount to the type of information found to be a core operation***." *Korzen v. Tetra Tech Inc.*, 2014 WL 12603209, at *5 (C.D. Cal. Jan. 17, 2014) (rejecting core operations theory) (emphasis added).

Plaintiffs' invocation of post-motion testimony from another case is unavailing. *See* Pl. Mem. at 13. Mr. Thiel's testimony indicates only that he had a hand in Marathon's vital business

Page 5

operations. It is not an admission "of detailed involvement in the minutia of a company's operations, such as data monitoring . . . . Missing are the allegations linking specific reports and their contents to the executives." *Police Ret. Sys. of St. Louis*, 759 F.3d at 1062–63; *see also Hessefort v. Super Micro Computer, Inc.*, 2020 WL 1551140, at *9 (N.D. Cal. 2020) (rejecting core operations); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 817 (N.D. Cal. 2019) (same).

The most Plaintiffs' core operations theory could (but does not) establish is that certain Defendants may have known how Marathon calculated impairment and that Marathon categorized itself as an "agent" of MaraPool. But Marathon disclosed those facts throughout the Class Period, and Plaintiffs still offer no factual allegations supporting an inference that Defendants knew, at the time, that Bitcoin impairment *should* be calculated differently or that Marathon *should* be deemed a "principal" of MaraPool. Again, all Plaintiffs have is a restatement, and that is not enough.[1]

### 3.    Plaintiffs Remaining Scienter Allegations Fail

Plaintiffs' other efforts to plead scienter—arising out of a smattering of different allegations and theories—fare no better. Indeed, Plaintiffs fail to identify a single case denying a motion to dismiss in analogous circumstances.

*First*, Plaintiffs point to the fact that two other Bitcoin companies (Tesla and MicroStrategy) approached Bitcoin impairment differently from Marathon. Pl. Mem. at 15. But Plaintiffs ignore Defendants' argument that other public cryptocurrency companies followed Marathon's accounting approach, and that to clear up the "unnecessarily complex and costly . . . . accounting [for] crypto assets," *after the Class Period*, FASB updated its Bitcoin accounting guidance. Mot. at 6–7, 14; Ex. Q at 320 (ECF 46-9). Indeed, by pointing to different firms

---

[1] Also futile are Plaintiffs' attempts to distinguish *Watchguard* and *Ezzes* (*see* Mot. at 12–13) on the ground that the complaints in those cases were missing "precisely the detailed allegations that Plaintiffs have set forth in the Amended Complaint here." Pl. Mem. at 16. Not so. The *Ezzes* complaint included detailed allegations from four former employees to "demonstrate that 'senior management' and Defendants were aware of Vintage Wine's inventory management and accounting problems." *Ezzes v. Vintage Wine Estates, Inc.*, 2024 WL 895018, at *4 (D. Nev. Mar. 1, 2024). The *Watchguard* plaintiffs also supported their scienter allegations with confidential witness statements. *See* 2006 WL 8473541, at *7. Here, the Complaint's lack of direct, contemporaneous evidence negates any inference of scienter.

accounting for Bitcoin in different ways, Plaintiffs merely demonstrate industry disagreement that dispels, rather than supports, any inference of scienter. *See supra*, Section 1.A.2.

*Second*, Plaintiffs' conclusion about statements from Marathon's auditor (Marcum) describing the general accounting principles applicable here goes nowhere. Pl. Mem. 15. Marcum validated both of Marathon's relevant accounting approaches during the Class Period, which is strong evidence against scienter. Mot. at 8; *see also Karpov v. Insight Enters., Inc.*, 2010 WL 2105448, at *4 (D. Ariz. Apr. 30, 2010) (it is especially difficult to find an auditor complicit in fraud because there is a "lack of a rational economic incentive").

*Third*, Plaintiffs reprise the allegation that Marathon "depart[ed] from its normal practice" of filing comment letters and that Marathon described the letters insufficiently. Pl. Mem. at 15–16. But Plaintiffs do not dispute that Marathon was not required to disclose the comment letters upon receipt and that Marathon timely disclosed the substance of the letters.[2] *See* Ex. U at 354 (ECF 46-13). And Plaintiffs cite no authority to support the position that a supposed departure from past SEC-comment-letter-filing practices is evidence of scienter.[3]

*Fourth*, Plaintiffs argue that Mr. Gallagher's retirement "was uncharacteristic when compared to [Marathon's] typical hiring and termination patterns" and was "accompanied by suspicious circumstances." Pl. Mem. at 16–17. But the Complaint does not include any facts about Marathon's typical hiring and termination patterns. And there were no "suspicious circumstances" here: the mere fact that an executive departed around the time of a corrective disclosure does not raise the requisite strong inference of scienter. *See* Mot. at 16. Even if Mr. Gallagher's departure were related to the Restatement, it would not indicate fraud. It is no

---

[2] Plaintiffs' assertion that Defendants described the comment letters "obliquely" (AC ¶ 137), is equally unavailing. The Complaint acknowledges Marathon disclosed that "among the restatement issues were impairment of [B]itcoin in compliance with the ASC 350-30-35-19 and accounting for MaraPool revenues under ASC Topic 606."*Id*.

[3] Plaintiffs cite out-of-circuit authority for the general principle that Defendants taking "steps to obscure" facts is indicative of scienter. *In re VEON Ltd. Sec. Litig.*, 2017 WL 4162342, at *10 (S.D.N.Y. Sept. 19, 2017). *VEON* involved defendants who admitted to covering up a bribery scheme. It had nothing to do with disclosure of an SEC comment letter or comparable regulatory guidance. Further, there are no such steps to obscure facts alleged in the Complaint.

surprise that a CFO would resign after an accounting error (even an innocent one) requiring a restatement. *See Zucco Partners*, 552 F.3d at 1002 ("[T]he resignation of KPMG as Digimarc's independent accounting firm a month after the restatement was issued is not surprising—it had just been partially responsible for the corporation's failure to adequately control its accounting procedures. This is not enough to support a strong inference of scienter"); *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1074 (N.D. Cal. 2002) (holding same).

*Finally*, Plaintiffs argue that Mr. Okamoto's "sale of $3 million in Company stock and receipt from the Company of $24 million related to RSUs during the Class Period shows a strong motive to defraud." Pl. Mem. at 17.[4] But in the Ninth Circuit, this type of "'motive and opportunity' evidence is not enough to create a strong inference of scienter." *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1166 (9th Cir. 2009). Instead, "insider trading is suspicious only when it is 'dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information.'" *Zucco Partners*, 552 F.3d at 1005. Plaintiffs fail to explain how a single stock sale for tax purposes halfway through a nearly two-year class period (well before any personal benefit would be maximized) is indicative of fraud.

\* \* \*

Plaintiffs' theory of scienter is premised on the conjecture that a leanly-staffed company in an emerging industry lacking clear guidance on complex accounting issues intentionally applied the wrong accounting standard, *disclosed* that treatment to investors, persuaded its independent auditor to be complicit in the scheme in exchange for no apparent benefit, and made a single routine stock sale in order to profit from the scheme. That chain of speculation is not even plausible and comes nowhere close to the high standard for pleading scienter.

### B.    PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION

*First*, Plaintiffs fail to engage with, and thus concede, Defendants' arguments regarding

---

[4] The nebulous phrase "related to RSUs" obscures that the payment to Mr. Okamoto was from a settlement related to Marathon's *pre-Class Period* 2018 Equity Incentive Plan. Plaintiffs do not, because they cannot, explain how this settlement agreement relates to the alleged fraud.

Marathon's disclosures about the robustness of its internal controls. Mot. at 15, 20–21. Plaintiffs baldly assert that "Marathon's accounting was materially wrong when it was reported to investors during the Class Period[, but n]evertheless, Defendants represented that the Company had no internal control issues related to this improper accounting." Pl. Mem. at 18. But the mere fact that Marathon's internal controls did not prevent a later Restatement does not amount to the required particularized and contemporaneous knowledge of falsity required for a § 10(b) claim. *See In re Loudeye Corp. Sec. Litig.*, 2007 WL 2404626, at *7 (W.D. Wash. Aug. 17, 2007) ("[T]hat the controls were inadequate is . . . no basis for a securities fraud claim").

*Second*, Plaintiffs have failed to allege materiality. As to Bitcoin impairment, Plaintiffs argue that the Restatement "revealed changes much greater than 2.57%." Pl. Mem. at 20. As a threshold issue, the Restatement is *not* the corrective disclosure alleged in the Complaint, rendering those financial metrics inapposite. In any event, Plaintiffs merely cherry pick individual line items, but fail to "show with particularity how the [alleged misstatements] . . . were material in light of the company's overall financial position" (*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 609 (9th Cir. 2014)), or demonstrate that "a reasonable investor would have viewed the nondisclosed information as having significantly altered the total mix of information made available" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). The Restatement affected only 2.57% of the $95,225,000 in digital assets Marathon held at the time (*i.e.*, the company's overall financial position), which is of the same magnitude as misstatements found immaterial by other courts. *See Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 547 (8th Cir. 1997) (2% of total assets "immaterial as a matter of law"); *Masters v. GlaxoSmithKline*, 271 F. App'x 46, 50 (2d Cir. 2008) (less than 3% of revenue immaterial).

As for the MaraPool portion of the Restatement, Plaintiffs offer no meaningful response to the fact that the restatement had **zero** impact on Marathon's financial results. Mot. at 22. Plaintiffs assert that the existence of multiple financial misstatements does not render a restatement immaterial (*see* Pl. Mem. at 20), but that misses the point entirely: Marathon's accounting treatment of MaraPool affected no financial metric of any relevance to any investor.

Page 9

### C.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

The Ninth Circuit requires a "complaint [to] allege that the defendant's 'share price fell *significantly* after the truth became known.'" *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008) (emphasis added) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). Marathon's stock price did not materially decline upon disclosure of the need to restate. Ex. O (ECF 46-7). Plaintiffs assert that there is no bright-line rule requiring an immediate market reaction to an alleged corrective disclosure, citing *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008). *See* Pl. Mem. at 22–23. But in *Gilead*, the corrective disclosure became public *after market close*, causing a 12% stock drop the *next* trading day. 536 F.3d at 1054. In contrast, here, there is no causation where the alleged corrective disclosure occurred during the trading day without any contemporaneous market reaction. Mot. at 23–24.

Even if the next trading day following the disclosure were accounted for, Marathon's stock dropped just 8.31% on that day, well below the typical "double digit declines" alleged in securities cases. *Daniels Fam. 2001 Revocable Tr. v. Las Vegas Sands Corp.*, 709 F. Supp. 3d 1217, 1237 (D. Nev. 2024). Plaintiffs contend that there is "no legal or economic basis" for deeming an 8% stock drop insignificant, because "[t]here is no hard cutoff for what percentage drop constitutes a 'significant drop for a stock price.'" Pl. Mem. at 21 (quoting *Daniels Fam. 2001 Revocable Tr.*, 709 F. Supp. 3d at 1237). But they omit the rest of the sentence from their cited case, which says that the stock drop was insignificant and that "***such determinations will vary depending on the average trading range for the particular stock.***" *Daniels Fam. 2001 Revocable Tr.*, 709 F. Supp. 3d at 1237 (emphasis added).

Plaintiffs do not dispute or address that an 8.31% drop was well within the norm for Marathon's stock at that time. *See* Mot. at 23. Indeed, Marathon's stock trading range was volatile at the time, with drops of up to 12.63% and increases of up to 25.7% in the days leading up to March 1, 2023. *Id*. The drop was well within Marathon's typical stock price movement and, as this Court and others in and out of the Ninth Circuit have found, is thus insufficient to allege loss causation. *Daniels Fam. 2001 Revocable Tr.*, 709 F. Supp. 3d at 1237; *Greenberg v.*

*Crossroads Sys., Inc.*, 364 F.3d 657, 665 n.9 (5th Cir. 2004) (noting that "a drop of 10% for a volatile stock may not be statistically significant").

Plaintiffs argue that the stock fluctuations here are uninformative because Marathon's stock price declined when the industry index rose. Pl. Mem. at 21–22 & n.3. But the index Plaintiffs cite tracks an extraordinary breadth of highly diversified companies (*e.g.*, Accenture PLC, American Express Inc., and Goldman Sachs) that do not primarily operate in the crypto space and that did not experience the volatility Marathon and its direct competitors did.

Plaintiffs' loss causation allegations are further undermined by the fact that Marathon's stock price rebounded just nine days after its modest decline on March 1. *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021) (price recovery after modest decline "refutes the inference that the alleged concealment of this particular fact caused any material drop"); *Daniels Fam. 2001 Revocable Tr.*, 709 F. Supp. 3d at 1238 (additional allegations of loss causation needed where "each stock drop was modest, and then quickly rebounded"). Plaintiffs argue that the stock recovery here was not quick enough (Pl. Mem. at 22) ignoring that the recovery here coincided with Marathon's Restatement (s*ee* Ex. O (ECF 46-7)). Thus, once the market actually had the *full* information about the Restatement, there was no adverse impact. *See* 4 Thomas Lee Hazen, Law of Securities Regulation § 12.93 (2024 update) ("If the price movement of the stock in question is not in sync with the plaintiff's theory of recovery, loss causation will be extremely difficult, if not impossible, to prove").

## II.     PLAINTIFFS FAIL TO STATE A SECTION 20(A) CLAIM

As discussed in the Opening Brief, Plaintiffs' failure to plead a primary violation of Section 10(b) is fatal to their Section 20(a), secondary violation claim. Mot. at 24.

## III.     DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IS PROPER

Plaintiffs do not dispute that the Court may properly consider Exhibits A, B, C, E, F, G, K, L, M, N, O, Q, R, T, U, W, X, and Y. ECFs 45, 46. *See In re Silver Lake Grp., LLC Sec. Litig.*, 108 F.4th 1178, 1185 n.3 (9th Cir. 2024) (taking judicial notice because "[Plaintiff] does not oppose our consideration of these exhibits"). Plaintiffs' allegations—particularly when coupled with these exhibits—provide ample grounds for dismissal. The Court need not resolve

any objections about judicial notice in order to dismiss Plaintiffs' claims.

Still, Plaintiffs' challenge to the propriety of Defendants' Exhibits D, H, I, J, P, S, and V is without merit.[5] Those exhibits are all SEC filings of the kind routinely considered by courts in § 10(b) cases. Further, Exhibits D, H, I, J, P, and S are incorporated by reference into the Complaint, as they relate directly to documents referenced in, or that form the basis for, the Complaint. *See Gershfeld v. TeamViewer US, Inc.*, 2023 WL 334015, at *1 (9th Cir. Jan. 20, 2023) ("A document can be incorporated by reference if the complaint refers to it extensively or if the document forms the basis of the plaintiff's claims"). Indeed, Plaintiffs rely on SEC filings of two of Marathon's competitors to allege that Defendants knew of but "disregarded clear accounting rules" (Pl. Mem. at 15), and should not be permitted to exclude from consideration SEC filings of *other* competitors establishing the opposite or otherwise establishing facts about which the market was aware at the time. *See Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1109 (N.D. Cal. 2003) ("[D]ocuments crucial to the plaintiff's claims but not explicitly incorporated in a complaint can be noticed . . . to prevent a plaintiff from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based"). All of the SEC filings at issue here, moreover, are not subject to reasonable dispute and are regularly considered by courts in the Ninth Circuit in the § 10(b) context.[6]

## CONCLUSION

Plaintiffs assert that they "can make additional factual allegations . . . based on sworn testimony by the Individual Defendants." Pl. Mem. at 23. As discussed above, the extremely limited additional factual allegations from the sworn testimony attached as Exhibit A to the Opposition do nothing to cure the Complaint's deficiencies. For this and the foregoing reasons, Plaintiffs' Complaint should be dismissed with prejudice and leave to amend denied.

[5] Defendants do not, as Plaintiffs assert, "seek to use these documents for their purported truth." Pl. Mem. at 12. Defendants use the exhibits to demonstrate the information available to the public during the Class Period, including the varying accounting approaches.

[6] *See, e.g., Ferris v. Wynn Resorts Ltd.*, 462 F. Supp. 3d 1101, 1116–17 (D. Nev. 2020) (taking judicial notice of Forms 4); *Hadian v. Fate Therapeutics, Inc.*, 2024 WL 4246083, at *11 (S.D. Cal. Sept. 19, 2024) (taking judicial notice of 8-Ks and 10-Ks as "matters of public record"); *see generally Metzler*, 540 F.3d at 1064 n.7 (SEC filings are proper subjects for judicial notice).

Dated this 6th day of December 2024.

**FLANGAS LAW GROUP**

*/s/ Kimberly p. Stein*
KIMBERLY P. STEIN
Nevada Bar No. 8675
E-mail: kps@fdlawlv.com

**WEIL GOTSHAL & MANGES, LLP**
JONATHAN D. POLKES (*Admitted Pro Hac Vice*)
New York Bar No. 2015527
Email: jonathan.polkes@weil.com
CAROLINE HICKEY ZALKA (*Admitted Pro Hac Vice*)
New York Bar No. 4263448
Email: caroline.zalka@weil.com

*Attorneys for Defendants Marathon Digital Holdings Inc., Merrick Okamoto, Frederick G. Thiel, Simeon Salzman, and Hugh J. Gallagher*

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on December 6, 2024, that I electronically filed the above and foregoing document entitled **REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** using the CM/ECF system which will send a notice of electronic filing to all CM/ECF registrants.

/s/*Ronnielyn Abrera*
An employee of Flangas Law Group