1

—2:23-cv-00470-RFB-DJA—

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TODD LANGER, MARY BARIDA, and JACKS WAY, LLC, Individually and on Behalf of All Others Similarly Situated, | ) ) Case No. 2:23-cv-00470-RFB-DJA ) ) ) Las Vegas, Nevada ) Monday, March 3, 2025 ) 9:22 a.m. |
| Plaintiffs, | ) ) |
| v. | ) MOTION HEARING ) |
| MARATHON DIGITAL HOLDINGS, INC.; MERRICK OKAMOTO; FREDERICK G. THIEL; SIMEON SALZMAN; and HUGH J. GALLAGHER, | ) *C E R T I F I E D   C O P Y* ) ) ) |
| Defendants. | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

THE HONORABLE RICHARD F. BOULWARE, II,
UNITED STATES DISTRICT JUDGE

APPEARANCES:        See next page

COURT REPORTER:    Patricia L. Ganci, RMR, CRR
                   United States District Court
                   333 Las Vegas Boulevard South, Room 1334
                   Las Vegas, Nevada  89101

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

2:23-cv-00470-RFB-DJA

APPEARANCES:

For the Plaintiffs:

**ANDREW R. MUEHLBAUER, ESQ.**
MUEHLBAUER LAW OFFICE, LTD.
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
(702) 330-4505

**JONATHAN D. PARK, ESQ.**
POMERANTZ, LLP
600 Third Avenue, 20th Floor
New York, New York 10016
(212) 661-1100

For the Defendants:

**KIMBERLY P. STEIN, ESQ.**
FLANGAS LAW GROUP
3275 South Jones Boulevard, Suite 105
Las Vegas, Nevada 89146
(702) 307-9500

**ANDREW J. EHRLICH, ESQ.**
**KEVIN MADDEN, ESQ.**
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
1285 Avenue of the Americas
New York, New York 10019-6064
212-373-3000

LAS VEGAS, NEVADA; MONDAY, MARCH 3, 2025; 9:22 A.M.

--oOo--

P R O C E E D I N G S

COURTROOM ADMINISTRATOR:  Good morning.  The matter now before the Court is Jaime Moreno versus Marathon Digital Holdings, Inc., Case Number 2:23-cv-470-RFB-DJA.  Counsel, please make your appearances, beginning with the plaintiffs.

MR. MUEHLBAUER:  Good morning, Your Honor.  Andrew Muehlbauer for the plaintiffs.

MR. PARK:  Good morning.  Jonathan Park also for the plaintiffs.

THE COURT:  Good morning.

MS. STEIN:  Good morning, Your Honor.  Kimberly Stein on behalf of the defendants.

MR. EHRLICH:  Good morning, Your Honor.  Andrew Ehrlich and Kevin Madden also on behalf of the defendants.

THE COURT:  Good morning.

To quote a famous Yankees manager, this is déjà vu all over for me, except none of you all were there -- wait.  Was anyone there?  Ms. Stein was there previously.

So I've been down this path a little bit before.  Obviously, there were different types of claims, but the facts were similar.  So who's going to be arguing this for -- I guess we have new counsel for the defendants.  Who's going to be arguing this for the defendants?

2:23-cv-00470-RFB-DJA

MR. EHRLICH:  Your Honor, for the record, Andrew Ehrlich.  I'll be arguing for defendants.

THE COURT:  Mr. Ehrlich, why don't you come up to the podium.

So, Mr. Ehrlich, have you seen the transcript from the last -- from the other hearing?

MR. EHRLICH:  I have not only seen it, I have read it carefully.

THE COURT:  Why should I not do the same thing here, grant the motion to dismiss without prejudice and let them amend?

MR. EHRLICH:  So, Your Honor, we certainly agree that the Court should grant the motion.  I should say at the outset, thank you for granting the pro hac so quickly.  Mr. Polkes, who was here two weeks ago, left his firm and went to a firm that presented some conflict for Marathon.  So we had to parachute in, which explains the change in counsel.  I just wanted to explain that to the Court.

THE COURT:  I appreciate that.

MR. EHRLICH:  So we certainly agree that the Court should dismiss the complaint.  There are a number of flaws, the most obvious failure to plead scienter, specific particularized facts consistent with Rule 9(b) and the PSLRA.

As to with or without prejudice, what's a little different from this case, Your Honor, than what -- the case you

2:23-cv-00470-RFB-DJA

heard a couple of weeks ago is what plaintiffs do in response to the motion is come up with a whole new theory.  They come up with this core operations theory that is nowhere pleaded in their complaint.  They cite some transcript from some unrelated case that's nowhere in their complaint.  And they essentially say in their opposition brief, you know, "Here's what we would do if we were to amend."  And that core operations theory which the Ninth Circuit has said is, you know, incredibly rare, incredibly narrow, lots of different ways it's said that, doesn't work either.

So this is a little different from that case in the sense that the plaintiffs have previewed what their next move would be.  And, respectfully, we don't think it passes muster either, and I'll be happy to go into, kind of, the details of why.

THE COURT:  Well, before you do that, let me hear from plaintiff's counsel.  Because I didn't necessarily take from their briefing that that was their sole way that they were going to replead.  If that is the case, we can have a conversation about that, but I also thought that they were repleading somewhat more consistently with what I had laid out in my prior ruling about the specifics of scienter.  If you're going to say that they were aware that this was an improper accounting method, you need to say they knew it and they intentionally mislead investors rather than saying they filed this and it was

PATRICIA L. GANCI, RMR, CRR    (702) 385-0670

2:23-cv-00470-RFB-DJA

sort of a half truth, but not explaining exactly the individual responsibility --

(Court reporter interruption and clarification.)

THE COURT:  The responsibility, excuse me, or knowledge or scienter of the individual defendants as relates to the misstatements.  And so let me hear from them about how they would replead this before I bring you back up.

MR. EHRLICH:  Thank you, Your Honor.

THE COURT:  Thank you.

MR. PARK:  Good morning, Your Honor.  Jonathan Park again for the plaintiffs.

Your Honor is correct.  And thank you again for having this hearing this morning, but Your Honor is correct that that would -- the testimony from one of the defendants, Frederick Thiel, that we identified in our opposition to defendants' motion to dismiss would not be the only way in which we would amend the complaint.  And, frankly, this morning, Your Honor, I'm not sure I could identify all of the things that we might do if we, sort of, went back to the drawing board and figured out how to allege this again if Your Honor asked us to.

THE COURT:  Well, again, as I said in the previous case, I think there have been sufficient allegations that I would give you an opportunity to be able to do that, but I also think similar to that case there are insufficient allegations with respect to the individual defendants and what they actually

2:23-cv-00470-RFB-DJA

knew and how they participated in the promulgation of these alleged misstatements, and when they might have known when there were these errors and how they, again, either covered them up, as you suggest, or participated in some other way of the production of the various misstatements or omissions.

And so I assume that what you would do based upon what you've said about various roles of the individual defendants, you would talk about how they would have been aware of some of this information through the -- their own internal independent auditor who had raised issues, their reference to a discrete material weakness which you seem to suggest implies that they had knowledge far beyond it being a discrete material weakness, but a significant method of improper accounting that was perpetuated until essentially the SEC caught them at it, allegedly.

That's, sort of, what I inferred from both the complaint in the two cases, but in the case -- the complaint in this case and your briefing.  Your amended complaint, I assume, would therefore encompass those various different deficiencies. Is that correct?

MR. PARK:  Yes, Your Honor, that is correct.  But -- and I do agree, though, that the complaint as it stands does sufficiently plead a strong inference of the defendants' scienter based on some of the allegations that Your Honor has referenced.

2:23-cv-00470-RFB-DJA

THE COURT:  Well, and, again, Mr. Park, I'm going to give Mr. Ehrlich an opportunity to come back up here.  I'm not saying that I'm convinced that even with amendment that the amended complaint would fully survive, but I do think you've alleged enough for me to give you another chance.

Why don't you let me have Mr. Ehrlich come back up, and if I have some additional questions, Mr. Park, I'll let you know.

MR. PARK:  Certainly, Your Honor.

THE COURT:  Thank you.

So, Mr. Ehrlich, if that's not their only theory of liability here -- and it doesn't seem to me that they are fully committed to that in the context of what I read and certainly given Mr. Park's representations here -- tell me again why I wouldn't then give them an opportunity to amend.

MR. EHRLICH:  Okay.  I guess I'd say one more thing, Judge, in response to your question.  As the Court knows, and I know you've read all of this and you're quite fluent in it, the crux of the issue is this is all about the valuation of digital assets, which at the time that -- of the class period it is not alleged in the complaint that there was any standard method.  FASB had not come out with a definitive guidance, and it didn't in fact come out until months after the close of the class period.

And, as you know, the crux of our motion is that the

plaintiffs haven't alleged specific facts that when Marathon made the judgments -- and these are subjective judgments, do I do it this way or do I do it that way -- that anybody knew or believed they were doing it an incorrect way with an intent to deceive the market.

But here's why I think alleging scienter ultimately is futile for plaintiffs.  That method, Judge, was disclosed.  It was disclosed quarter in and quarter out.  It was disclosed in the 10-K for year 2021, which comes out in March of 2022.  It's Exhibit A to Ms. Stein's declaration in bold letter -- bold language.  It's disclosed in the next public filing, the August '22 10-Q, the November '22 10-Q.  In each and every one of these public filings there is a section, it's Item 2, notes, you know, significant accounting methodologies.  And there's a section that says "digital assets."

THE COURT:  Right.

MR. EHRLICH:  And then they say, "We value it at 4 p.m. New York time," babababa.

So, you know, they could plead -- I don't know what they could plead, candidly, Your Honor, that would overcome the fact that the method was disclosed.  So I don't know how you would have an intent to deceive where the method is disclosed.

THE COURT:  If you knew you were using the wrong method the whole time, you need to disclose it.  That essentially is a half truth, Mr. Ehrlich.  If you're saying, "Yes, we disclosed

2:23-cv-00470-RFB-DJA

it, but we weren't telling you that we knew at the time we shouldn't have been doing it."  That would be a claim.

All I'm saying to you is I think that they've alleged enough to suggest that.  I don't know that they can do that in the amended complaint.  I don't disagree with you that the disclosure presents a, I think, hurdle for them to overcome because it seems to me their argument is more or less, again, a half truth is still a misstatement or an omission if you know that even the methodology you're using should not have been used.  That's what I take from what they are arguing.

Now, part of the issue here for the Court, too, is it's a motion to dismiss.  Some of the specific facts that you want to get into I cannot consider.  So I'm not taking judicial notice of all of these documents because we're at a motion to dismiss stage.

So for me really the question's about amendment.  It's not that I don't understand your arguments.

MR. EHRLICH:  Right.

THE COURT:  I understand them quite well.  That's why I'm granting the motion to dismiss.  It's really about the issue of futility and understanding what that would look like in this case.

And as I take your point -- I'll ask Mr. Park this question -- you're essentially saying disclosure, even clumsy disclosure, is not enough for the heightened requirements that

—————————2:23-cv-00470-RFB-DJA—————

are required here.  Is that fair?

MR. EHRLICH:  That is fair.  I wouldn't concede it was clunky, but that is fair.  And I would say just one thing, Your Honor, to the judicial notice point, these quarterly filings, each and every one of them are mentioned in the plaintiffs' complaint.  So this is not some farfetched --

THE COURT:  I'm not talking about the filings.

MR. EHRLICH:  Okay.

I just want to be clear.  These disclosures I think are squarely within the -- they cite these very documents, different parts of them.  So I think they're fairly incorporated by reference.

THE COURT:  I'm not talking about the disclosure statements, Mr. Earl -- Ehrlich.  Excuse me.

MR. EHRLICH:  Understood.

THE COURT:  I'm talking about there are other references to when people made statements or knew things or when standards were promulgated --

MR. EHRLICH:  Okay.

THE COURT:  -- what they knew from the letters, the internal auditor.  Hey make certain allegations about --

MR. EHRLICH:  Understood.

THE COURT:  -- or at least they seem to suggest that the individual defendants through these various -- at these various points had some understanding without being specific

about that.  And so that's what I'm talking about.  I'm not talking about the public filings because I can take judicial notice of those.

MR. EHRLICH:  Understood.  Thank you, Your Honor.

THE COURT:  All right.  So, no, it's mostly because I think that some of the information that you want me to be able to consider which would be, I think, helpful to your point is outside of the four corners of the -- of the complaint and even the filings.  And so that's why I'm saying that to you.

MR. EHRLICH:  I understand.

THE COURT:  All right.  Thank you, Mr. Ehrlich.

Mr. Park.

MR. PARK:  Yes, Your Honor.

THE COURT:  So, again, I just -- I do want you to give me a sense of the proffer of what it is that you would be doing in your amendment.  And I'm saying that to you, Mr. Park, because one of the things I do want to be clear about is what I wouldn't expect is an entirely new theory of liability that has not even been hinted at in the complaint.  And I say this from long history of people realizing that even their amended theory is not going to work and coming up with a new theory, right.

I just want to be very clear, the Court granting amendment doesn't mean that you get to come up with an entirely new theory that you've not referenced, right, that's not even potentially implied in what you have alleged.

2:23-cv-00470-RFB-DJA

So I just want to hear from you in terms of a proffer what would be the theory of liability here under the various claims.

MR. PARK:  Yes, Your Honor, and I certainly understand that question.

Yes, we would not be amending in a way that's not hinted at in the current pleading.  We would, I imagine, stick to the same misstatements or alleged misstatements, if we could identify any.  It would be a very similar case, Your Honor.  We would not be coming in here with a new case.  I think that our briefing does identify --

THE COURT:  I'm sorry?

MR. PARK:  Our briefing I think does identify some of the amendments we might make, including the testimony of Defendant Thiel.  And I think we will identify potentially other allegations we would make, but -- and I know Your Honor has hinted that you're going to dismiss with leave to amend, but if I -- if I may defend the current complaint, you know --

THE COURT:  You can, but I think it would be more productive for you to tell me how you would address the concerns that I have for this complaint as it relates to deficiencies regarding individual defendants.  I don't see where you're saying Gallagher -- Defendant Gallagher or Thiel, whoever, knew this at this time and this is how they knew this information and this is how they participated in the misstatements, right.

2:23-cv-00470-RFB-DJA

Individualized paragraphs for the individual defendants that lay out exactly what they knew and how they contributed to these misstatements is what I wanted to be able to hear from you now, please.

MR. PARK:  Yes, Your Honor.

Well, I think -- and this is an allegation that does apply to all of the defendants that signed the SEC filings at issue.  I appreciate that that might not be individualized per se, but it does apply to each of the individual defendants.  You know, they signed filings that said, "Oh, we conduct this impairment testing by looking at the lowest value of Bitcoin at any time during the period."  That is what they said.

They did not do that.

THE COURT:  But, again, you have to -- you have to show that they knew that when they were signing it that that was improper, that they were either concealing their knowledge of it or they were concealing problems with that that they were hiding.  Simply having them sign a document to the defendants' point isn't enough if they believed at the time that what they were doing is proper.

So that's why I'm saying to you simply pointing out that they signed the document that identifies an incorrect method at this point is nothing more than simply them admitting a method that later is determined to be a mistake, but at the time it was not known that it was an improper methodology.  That

2:23-cv-00470-RFB-DJA

would not be a sufficient basis for a claim, and you understand that, Mr. Park.

So what I'm asking you is what more are you going to be alleging.

MR. PARK: Oh. Well, Your Honor, we're going to allege more about the -- their auditor, Marcum LLP's, publication during the class period acknowledging that the accounting provision that applied at that time required them to do -- to apply the standard that the defendants themselves acknowledged, which again I think is a little different than -- the defendants argue that they disclosed what they were doing. And I think a close reading of the filings shows that they did not clearly disclose that and, in fact, they disclosed what they were not doing. What they said is that they were looking at the value of Bitcoin at any time during the period. They did not do that, and that is what they told people they did.

We can make that much more clearer in an amended pleading. We can also allege more about the FASB guidance, which also makes clear that the then-existing standard required, you know, looking at the lowest value during the period.

THE COURT: And how do you plan to do that for the individual defendants?

MR. PARK: Well, Your Honor, we have -- we have defendants that are well versed in accounting standards here, for instance, Simeon Salzman, who was CFO and then CAO, chief

2:23-cv-00470-RFB-DJA

accounting officer for the company.  We can -- I'm sure we can allege more about Defendant Salzman's background.

Frankly, Your Honor, I'm not sure.  We would look very closely at this in order to come up with a pleading that would -- that would respond to the concerns you're raising here today.

THE COURT:  Well, I'm saying that because I just want to make sure that you are aware, Mr. Park, that while I'm giving you this opportunity, I still would anticipate more than generalized allegations about the fact that, you know, whether or not someone's a CFO or they have a particular position on an audit committee or something like that, that's not enough, right, to overcome the pleading requirements.

And, again, I'm not necessarily going to require you to lay out every fact now, but I just wanted to emphasize that if you simply come back and say they should have known better without establishing how they could have or should have known, that's simply not going to be enough.  And you will get this one chance to amend.  I'm not going to give you another one.  This will be the last opportunity that you have.  Okay?

MR. PARK:  I understand, Your Honor.

THE COURT:  Do you have any questions about that?

MR. PARK:  I have no questions.

THE COURT:  How long do you think it will take?

MR. PARK:  Well, I saw that you gave the derivative

2:23-cv-00470-RFB-DJA

plaintiffs 30 days.  I think that's a reasonable period for us. I haven't spoken to defense counsel about that, but 30 days seems reasonable to us.

THE COURT:  Okay.  Well, thank you.  I appreciate that, Mr. Park.

MR. PARK:  Thank you, Your Honor.

THE COURT:  What I am going to do in this case, I am going to grant the motion to dismiss without prejudice.  I'm going to give the plaintiffs one final opportunity to amend. They will have 30 days to file their amendment.  And then of course I would anticipate a renewed motion to dismiss from the defendants.  And then we'll come back and see whether or not that amendment survives.

Is there anything else we need to do today?  Mr. Park?

MR. PARK:  I don't believe so, Your Honor.

THE COURT:  Excuse me.  Mr. Ehrlich?

MR. EHRLICH:  I don't believe so, Your Honor.  I would just -- this is perhaps unnecessary, but I just want to make clear for the record, we had made several other arguments in support of dismissal.  We didn't talk about them today because scienter I think was most prominent and dispositive, but we obviously reserve our rights to renew those arguments against any amended pleading.

THE COURT:  So, Mr. Ehrlich, you can literally file the identical motion to dismiss if you think --

—————2:23-cv-00470-RFB-DJA—————

MR. EHRLICH:  Okay.

THE COURT:  -- that's appropriate.  And so I'm not in any way excluding or foreclosing any arguments you've previously raised.  I focussed on scienter because I think that's the central issue here --

MR. EHRLICH:  Totally understood, Your Honor.

THE COURT:  -- and the greatest deficiency, but it doesn't mean that there aren't other issues with the amended complaint.  So I just want to make sure that I acknowledge that.

MR. EHRLICH:  Thank you, Your Honor.

THE COURT:  And I do also want to be clear, Mr. Park, that because I focussed on scienter, it doesn't mean that I wasn't considering the other arguments, but scienter seems to me to be the biggest issue here and problem here.  And so that's why I focussed on it in this particular case.  Okay?

MR. PARK:  Yes, Your Honor.  Thank you.

THE COURT:  All right.  Thank you all for your time. We'll be adjourned on this matter.  Thank you.  I'm going to stay on the bench for the next case.  Thank you.

MS. STEIN:  Thank you, Your Honor.

(Whereupon the proceedings concluded at 9:43 a.m.)

2:23-cv-00470-RFB-DJA

--oOo--

COURT REPORTER'S CERTIFICATE

I, PATRICIA L. GANCI, Official Court Reporter, United States District Court, District of Nevada, Las Vegas, Nevada, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Date:  March 10, 2025.

/s/ **Patricia L. Ganci**

Patricia L. Ganci, RMR, CRR

PATRICIA L. GANCI, RMR, CRR     (702) 385-0670