305

# EXHIBIT Z

305

# FASB ACCOUNTING STANDARDS UPDATE

No. 2023-08
December 2023

## Intangibles—Goodwill and Other—Crypto Assets (Subtopic 350-60)

Accounting for and Disclosure of Crypto Assets

An Amendment of the *FASB Accounting Standards Codification*®

**Financial Accounting Standards Board**

306

*The FASB Accounting Standards Codification® is the source of authoritative generally accepted accounting principles (GAAP) recognized by the FASB to be applied by nongovernmental entities. An Accounting Standards Update is not authoritative; rather, it is a document that communicates how the Accounting Standards Codification is being amended. It also provides other information to help a user of GAAP understand how and why GAAP is changing and when the changes will be effective.*

Copyright © 2023 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**307**



# Accounting Standards Update

No. 2023-08
December 2023

# Intangibles—Goodwill and Other—
# Crypto Assets (Subtopic 350-60)

Accounting for and Disclosure of Crypto Assets

An Amendment of the *FASB Accounting Standards Codification*®

## Financial Accounting Standards Board
801 Main Avenue · Norwalk, CT · 06851

**308**

# Accounting Standards Update 2023-08

# Intangibles—Goodwill and Other—Crypto Assets (Subtopic 350-60)

# Accounting for and Disclosure of Crypto Assets

# December 2023

# CONTENTS

Page Numbers

Summary ....................................................................... 1–4
Amendments to the *FASB Accounting Standards Codification*® ...... 5–21
Background Information and Basis for Conclusions ....................... 22–46
Amendments to the GAAP Taxonomy .................................................. 47

# Summary

## Why Is the FASB Issuing This Accounting Standards Update (Update)?

The Board is issuing the amendments in this Update to improve the accounting for and disclosure of crypto assets. Stakeholder feedback, including from respondents to the 2021 FASB Invitation to Comment (ITC), *Agenda Consultation*, indicated that improving the accounting for and disclosure of crypto assets should be a top priority for the Board. Stakeholders stated that the current accounting—except as provided in generally accepted accounting principles (GAAP) for certain specialized industries—for holdings of crypto assets as indefinite-lived intangible assets, which is a cost-less-impairment accounting model, does not provide investors, lenders, creditors, and other allocators of capital (collectively, "investors") with decision-useful information. Specifically, accounting for only the decreases, but not the increases, in the value of crypto assets in the financial statements until they are sold does not provide relevant information that reflects (1) the underlying economics of those assets and (2) an entity's financial position. Investors also requested additional disclosures about the types of crypto assets held by entities and the changes in those holdings.

In addition to better reflecting the economics of crypto assets, measuring those assets at fair value will likely reduce cost and complexity associated with applying the current cost-less-impairment accounting model for many entities.

## Who Is Affected by the Amendments in This Update?

The amendments in this Update apply to all entities holding assets that meet certain scope criteria.

## What Are the Main Provisions?

The amendments in this Update apply to assets that meet all of the following criteria:

1

**310**

1. Meet the definition of *intangible assets* as defined in the Codification
2. Do not provide the asset holder with enforceable rights to or claims on underlying goods, services, or other assets
3. Are created or reside on a distributed ledger based on blockchain or similar technology
4. Are secured through cryptography
5. Are fungible
6. Are not created or issued by the reporting entity or its related parties.

An entity is required to subsequently measure assets that meet those criteria at fair value with changes recognized in net income each reporting period.

The amendments in this Update also require that an entity present (1) crypto assets measured at fair value separately from other intangible assets in the balance sheet and (2) changes from the remeasurement of crypto assets separately from changes in the carrying amounts of other intangible assets in the income statement (or statement of activities for not-for-profit entities).

While the amendments in this Update do not otherwise change the presentation requirements for the statement of cash flows, the amendments require specific presentation of cash receipts arising from crypto assets that are received as noncash consideration in the ordinary course of business (or as a contribution, in the case of a not-for-profit entity) and are converted nearly immediately into cash.

For annual and interim reporting periods, the amendments in this Update require that an entity, including an entity that is subject to industry-specific guidance, disclose the following information:

1. The name, cost basis, fair value, and number of units for each significant crypto asset holding and the aggregate fair values and cost bases of the crypto asset holdings that are not individually significant
2. For crypto assets that are subject to contractual sale restrictions, the fair value of those crypto assets, the nature and remaining duration of the restriction(s), and the circumstances that could cause the restriction(s) to lapse.

2

For annual reporting periods, the amendments in this Update require that an entity disclose the following information:

1. A rollforward, in the aggregate, of activity in the reporting period for crypto asset holdings, including additions (with a description of the activities that resulted in the additions), dispositions, gains, and losses
2. For any dispositions of crypto assets in the reporting period, the difference between the disposal price and the cost basis and a description of the activities that resulted in the dispositions
3. If gains and losses are not presented separately, the income statement line item in which those gains and losses are recognized
4. The method for determining the cost basis of crypto assets.

## How Do the Main Provisions Differ from Current Generally Accepted Accounting Principles (GAAP) and Why Are They an Improvement?

Under current GAAP, unless otherwise provided in industry-specific GAAP, crypto assets that are within the scope of the amendments in this Update are accounted for as indefinite-lived intangible assets. Those assets are tested for impairment annually and more frequently if events or circumstances indicate that it is more likely than not that an asset is impaired. If the carrying amount of the asset exceeds its fair value, an entity is required to recognize an impairment loss and reduce the carrying amount of the asset to its fair value. Subsequent increases in the carrying amount of the asset and reversal of an impairment loss are prohibited.

The amendments in this Update require that an entity measure crypto assets at fair value in the statement of financial position each reporting period and recognize changes from remeasurement in net income. The amendments also require that an entity provide enhanced disclosures for both annual and interim reporting periods to provide investors with relevant information to analyze and assess the exposure and risk of significant individual crypto asset holdings.

In addition, fair value measurement aligns the accounting required for holders of crypto assets with the accounting for entities that are subject to certain industry-specific guidance (such as investment companies) and eliminates the

3

**312**

requirement to test those assets for impairment, thereby reducing the associated cost and complexity of applying the current guidance.

## When Will the Amendments Be Effective and What Are the Transition Requirements?

The amendments in this Update are effective for all entities for fiscal years beginning after December 15, 2024, including interim periods within those fiscal years. Early adoption is permitted for both interim and annual financial statements that have not yet been issued (or made available for issuance). If an entity adopts the amendments in an interim period, it must adopt them as of the beginning of the fiscal year that includes that interim period.

The amendments in this Update require a cumulative-effect adjustment to the opening balance of retained earnings (or other appropriate components of equity or net assets) as of the beginning of the annual reporting period in which an entity adopts the amendments.

4

# Background Information and Basis for Conclusions

## Introduction

BC1.    The following summarizes the Board's considerations in reaching the conclusions in this Update. It includes reasons for accepting certain approaches and rejecting others. Individual Board members gave greater weight to some factors than to others.

## Background Information

BC2.    Before adding this project to its agenda, the Board directed the staff to conduct research and monitor developments in the accounting for and reporting of crypto assets. That research focused on whether there was a pervasive need to improve financial reporting, whether feasible solutions existed, and whether a scope for the project could be established. The staff performed pre-agenda research with stakeholders and monitored the development of U.S. accounting practice and the application of both existing authoritative and nonauthoritative guidance and guidance in other jurisdictions. The Board also considered multiple agenda requests that highlighted concern that the current accounting for crypto assets as indefinite-lived intangible assets does not reflect the economic nature of those assets because of the historical-cost-less-impairment accounting model that applies to their subsequent measurement.

BC3.    Stakeholders' feedback, including respondents to the 2021 FASB Invitation to Comment (ITC), *Agenda Consultation,* indicated that improving the accounting for and disclosure of crypto assets should be a top priority for the Board. Nearly 500 respondents to the 2021 ITC requested that the Board add to its agenda a project related to crypto assets. Although some stakeholders made observations about other aspects of the accounting for crypto assets and related transactions, stakeholders indicated that the current accounting for crypto assets under a cost-less-impairment accounting model does not provide investors, lenders, creditors, and other allocators of capital (collectively, "investors") with decision-useful information. Specifically, those stakeholders noted that reflecting only the decreases but not the increases in the value of crypto assets in the financial statements until they are sold does not reflect (a)

22

**314**

the underlying economics of those assets and (b) an entity's financial position. Investors also requested additional disclosures about the types of crypto assets held by entities and changes in those holdings.

BC4.    Some stakeholders requested that the Board add a project on crypto assets to its agenda because measuring crypto assets at historical cost less impairment created a barrier to acceptance of crypto assets. The Board did not give any weight to this feedback as a rationale for adding this project to its agenda or in making decisions. Rather, the Board acknowledged the need to (a) improve the accounting for crypto assets in order to provide investors with more decision-useful financial information and (b) reduce complexity related to the application of the current accounting to crypto assets.

BC5.    Throughout this project, the Board and staff conducted substantial outreach with investors, preparers, practitioners, regulators, industry groups, and others to obtain their views about key considerations in this project. Those stakeholders provided input about how investors would use that information and the expected cost and operability of the Board's decisions. Those outreach activities included more than 180 interactions with stakeholders in groups or one-on-one meetings.

BC6.    Many stakeholders indicated that applying the current accounting to crypto assets is unnecessarily complex and costly. Some crypto assets are frequently traded, which is not typical for most intangible assets. For indefinite-lived intangible assets, entities are required to test for impairment annually and more frequently if events or circumstances indicate that it is more likely than not that the asset is impaired. For crypto assets, this process results in reporting entities considering price and other information throughout the reporting period. In addition, reporting entities often voluntarily provide their investors with fair value or price information as of the end of their reporting period.

BC7.    The Board issued proposed Accounting Standards Update, *Intangibles—Goodwill and Other—Crypto Assets (Subtopic 350-60): Accounting for and Disclosure of Crypto Assets,* for public comment on March 23, 2023, and received 83 comment letters in response to the amendments in that proposed Update. Overall, comment letter respondents supported the proposed amendments and the project's objectives. While nearly all respondents expressed broad support for the proposed scope, measurement, presentation, and disclosure requirements, some respondents suggested

23

**315**

clarifications and other potential improvements. The Board considered stakeholders' feedback received throughout the course of this project and respondents' comments in reaching its conclusions in this Update, as discussed further below.

## Benefits and Costs

BC8.    The objective of financial reporting is to provide information that is useful to present and potential investors, creditors, donors, and other capital market participants in making rational investment, credit, and similar resource allocation decisions. However, the benefits of providing information for that purpose should justify the related costs. Present and potential investors, creditors, donors, and other allocators of capital benefit from improvements in financial reporting, while the costs to implement new guidance are borne primarily by present investors. The Board's assessment of the costs and benefits of issuing new guidance is unavoidably more qualitative than quantitative because there is no method to objectively measure the costs to implement new guidance or to quantify the value of improved information in financial statements.

BC9.    On the basis of stakeholders' substantial input, the Board concluded that applying the amendments in this Update provides investors with more decision-useful information than current GAAP. In particular, the amendments improve the accounting for crypto assets by requiring that all changes in fair value be recognized in net income, which will provide investors with greater transparency about an entity's holdings of crypto assets. The Board observed that the current accounting, which reflects only decreases but not increases in the value of crypto assets in an entity's financial statements until those assets are sold, does not reflect the underlying economics of those assets and does not provide decision-useful information about future cash flows that may be generated by those assets.

BC10.    In addition, reporting crypto assets at fair value aligns the accounting required for all holders of crypto assets with the accounting required for entities that follow certain industry-specific guidance (such as investment companies within the scope of Topic 946, Financial Services—Investment Companies) and eliminates the requirement for those entities to test crypto assets for impairment, reducing the cost and complexity of applying the current guidance. The amendments in this Update also improve the information provided to

24

**316**