**FLANGAS LAW GROUP**
KIMBERLY P. STEIN
Nevada Bar No. 8675
Email: kps@fdlawlv.com
3275 South Jones Boulevard, Suite 105
Las Vegas, NV 89146
Telephone: (702) 307-9500

**PAUL, WEISS, RIFKIND, WHARTON &**
  **GARRISON LLP**
ANDREW J. EHRLICH (*Admitted Pro Hac Vice*)
New York Bar No. 4103909
Email: aehrlich@paulweiss.com
DANIEL S. SINNREICH (*Admitted Pro Hac Vice*)
New York Bar No. 5192497
Email: dsinnreich@paulweiss.com
KEVIN P. MADDEN (*Admitted Pro Hac Vice*)
New York Bar No. 5990049
Email: kmadden@paulweiss.com
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TODD LANGER, MARY BARIDA, AND JACKS WAY LLC, Individually and on Behalf of All Others Similarly Situated, | Lead Case No: 2:23-cv-00470-RFB-DJA |
| Plaintiffs, | |
| v. | **REPLY IN SUPPORT OF MOTION TO DISMISS** |
| MARATHON DIGITAL HOLDINGS, INC., MERRICK OKAMOTO, FREDERICK G. THIEL, SIMEON SALZMAN, and HUGH J. GALLAGHER, | |
| Defendants. | |

### MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

This Court properly dismissed the FAC because Plaintiffs failed to allege that Defendants intended to mislead shareholders about two esoteric accounting methods for bitcoin impairment and mining pools.  While permitting Plaintiffs to amend, the Court cautioned that for the SAC to survive dismissal, it would need to specifically allege that Defendants intended to deceive investors by deliberately "concealing their knowledge of" or "hiding" the fact that these two accounting practices violated GAAP to plead scienter. Tr. 14. Plaintiffs' Opposition confirms that the *only* new allegations concern ordinary course comment letter correspondence between Marathon and CorpFin over ten months.

The comment letter exchange does not get Plaintiffs over their hurdle for scienter. On its face, the correspondence only confirms that Marathon held a good-faith belief, based on substantial authority and vetted by its auditor, that its publicly-disclosed accounting judgments (though novel and highly technical, as Marathon expressly warned) complied with GAAP.  After the SEC expressed disagreement with Marathon's judgments, it didn't order an immediate change—it invited further discussion.  While after 10 months CorpFin ultimately disagreed with Marathon, the correspondence simply reflects the ordinary reality of a company and its regulator working together to apply pre-existing general rules to a novel, complex, and rapidly-evolving industry.  The Court should reject Plaintiffs' ***brazen and repeated misrepresentations*** about this correspondence, and the realities of this commonplace regulatory process, to concoct a securities fraud-by-hindsight lawsuit.

What is more, the correspondence renders implausible Plaintiffs' allegation that Marathon misrepresented its accounting methodology.  The fact that the SEC raised accounting issues in comment letters *at all* demonstrates that Marathon's disclosures were clear enough for CorpFin to know exactly what Marathon was doing, and not misleading.

Plaintiffs' loss causation arguments misstate the Ninth Circuit's requirement that stock drops be "significant," and concede that the two-day, 8.31% drop here was typical of Marathon's standard volatility and comparable to drops dismissed by other courts.

Finally, Plaintiffs consent to the Court considering several exhibits supporting the present motion. The exhibits they challenge are either subject to judicial notice or incorporated by reference in the SAC, and regularly considered by courts in this circuit in the § 10(b) context. Defendants' motion should be granted with prejudice.

## I.   PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER[1]

Plaintiffs do not dispute that they must plead "with particularity" facts giving rise to a "strong inference" of scienter—"a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc.* v. *Makor Issues & Rights Ltd*, 551 U.S. 308, 319 (2007); Opp 16. Plaintiffs' Opposition ("Opp.") asserts that they have met this exacting burden because Defendants supposedly "knew the proper accounting standards" and "knew that Marathon violated them." Opp. 1. However, Plaintiffs' own authority acknowledges that to plead scienter based on an erroneous accounting judgment, they must "plead facts explaining how the defendant's incorrect interpretation was ***so unreasonable or obviously wrong*** that it should give rise to an inference of deliberate wrongdoing." *Medicis Pharm. Corp. Sec. Litig.*, 2010 WL 3154863, at \*5 (D. Ariz. Aug. 9, 2010); *Ezzes* v. *Vintage Wine Ests., Inc.*, 2024 WL 895018, at \*10 (D. Nev. Mar. 1, 2024) (same, dismissing complaint); *Zamir* v. *Bridgepoint Educ., Inc*, 2018 WL 1258108, at \*6 (S.D. Cal. Mar. 12, 2018) (same, dismissing complaint). Plaintiffs come nowhere close to meeting this standard.

### A.   Plaintiffs Fail to Plead Facts Showing Defendants Intended to Defraud or Acted with Deliberate Recklessness

Plaintiffs' response concedes that their only new scienter allegations concern Marathon's correspondence with CorpFin. Opp. 1. Marathon's Motion, however, established that these letters are simply the ordinary regulatory process playing out exactly as designed: Marathon disclosed its accounting methods in its 2021 10-K; CorpFin reviewed that 10-K, suggested disagreement, and asked Marathon several questions about it; Marathon provided detailed responses explaining its positions and proactively *offered*

---

[1] Terms not defined herein retain the meaning ascribed in Defendants' Motion to Dismiss ("Mot."). All emphases added and internal quotation marks omitted unless noted.

to make changes if CorpFin disagreed; the dialogue continued; and when CorpFin ultimately disagreed, Marathon promptly revised its accounting methods.  Mot. 5-8, 11-15.

Plaintiffs make two principal arguments in opposition, both unavailing.  Notably, both arguments fundamentally and egregiously mispresent the CorpFin correspondence:

*First,* Plaintiffs argue that "Defendants told investors one thing, but did another" and "admitted" that to the SEC.  Opp. 17.  If this were true, one would imagine the SEC would have taken action for false disclosures.  It did not, because that did not happen, and this argument **blatantly misrepresents** the CorpFin correspondence.  It is also entirely inconsistent with Plaintiffs' own theory.  CorpFin initiated a dialogue about Marathon's impairment methodology *precisely because* it reviewed Marathon's disclosure in its 2021 10-K that it used bitcoin pricing on a "nightly basis" (*i.e.*, at a cut-off time) when performing quantitative impairment testing, and wanted Marathon's analysis of why it "believe[d]" that method was "proper."  ECF 69-2 at 4; Ex. D at F-13.  And when Marathon provided its initial explanation of why it "believe[d]" this method complied with GAAP, ECF No. 69-3 at 7-8, CorpFin did not complain that Marathon's explanation contradicted any of Marathon's prior disclosures.  ECF No. 69-4 at 4.  Instead, CorpFin merely asked Marathon to "[f]urther explain" how its disclosed method "complies with ASC 350."  *Id*. There are no allegations or indication that CorpFin had any concern whatsoever with the accuracy of Marathon's *disclosures* about its subjective accounting judgments; the issue was whether CorpFin considered those judgments to be GAAP-compliant.  *Podraza* v. *Whiting*, 790 F.3d 828, 838-39 (8th Cir. 2015) (rejecting plaintiffs' inference that did "not account for why Defendants would set out to commit fraud while repeatedly and accurately explaining exactly how the company was treating the costs").

Plaintiffs' argument that Marathon told investors it acted as an agent for MaraPool revenue recognition but "told the SEC the opposite" is also *false* and contradicted by the SAC.  CorpFin first asked Marathon for its principal/agent analysis in a May 2022 comment letter, ¶ 108; Marathon responded in June 2022 with its initial judgment that it acted as a "principal," ¶ 109.  Plaintiffs do not allege that Marathon had made any public

disclosures on this issue at that time.  *See* ¶ 84.  CorpFin provided feedback and requested additional details on Marathon's analysis in late June.  ¶ 110.  In response to CorpFin's feedback, Marathon "comprehensively re-evaluated" its accounting judgment in a detailed 5-page analysis and concluded in an August 26, 2022 letter to CorpFin that it "acted as an agent, and not a principal (as was previously indicated)." ¶ 111; Mot. 8.  That same month, Marathon publicly disclosed in a 10-Q filing on August 9, for the first time, that it "acts as an agent, and not as a principal," as "a pool operator," ¶ 84—***entirely consistent*** with the comprehensive reevaluation it provided to CorpFin.   As with bitcoin impairment accounting, the SEC never suggested (much less concluded) that Marathon's principal/agent disclosures misled investors.

***Second***, Plaintiffs argue that CorpFin "told Defendants" that their accounting methods violated GAAP and "order[ed]" Marathon to revise, but Defendants "refused" and instead "chose to keep its correspondence with the SEC a secret."  Opp. 5, 7, 17-19.  Plaintiffs, again, flatly ***misrepresent*** the CorpFin correspondence.  Far from "refusing" CorpFin's supposed "order," Marathon's response to CorpFin's June 24, 2022 request to "[p]lease revise" its impairment methodology was to (i) offer a detailed explanation defending its current accounting techniques, and (ii) ***offer to change its methodology*** if CorpFin preferred.  Mot. 7-8, 11-13; Ex. P at 4-5.  That is not a refusal.  And when CorpFin finally responded over two months later, CorpFin ***did not accept Marathon's offer or order any change***, but simply sought additional information.  Mot. 7; Ex. Q at 2.  Plaintiffs also ignore that Marathon ultimately ***did change its methods*** based on guidance from CorpFin and its auditor, which "cut[s] against a strong inference of scienter."  *Ezzes*, 2024 WL 895018 at *13-14; Mot. 12.

In any event, the scienter analysis turns on whether *Defendants*—not *CorpFin*— believed their methods complied with GAAP.  And, as late as December 2, 2022, Marathon reiterated its belief that its method complied with GAAP and provided CorpFin with a detailed written analysis noting its approach was endorsed by the AICPA, the professional association that established the FASB.  Mot. 4, 7; Ex. R at 5-7.  Plaintiffs do not dispute

4

this, nor that (a) the comment letter process is iterative and (b) a comment letter "request" is not an "order." Mot. 6; *see* Exs. N, X. In fact, the SEC acknowledges that "[a]t any time during the filing review process, a company or its representatives may request that the staff reconsider either a previously-issued comment or its view of the company's response to a comment." Ex. X at 3. Plaintiffs also concede that the SEC did not initiate a formal inquiry or enforcement action, which further cuts against scienter. Mot. 14.

Plaintiffs' attempt to distinguish *Podraza* is unavailing. They argue that in *Podraza* CorpFin did not "notify Defendants their accounting was incorrect," Opp. 17, but ignore that defendants there only restated after CorpFin told them they "should." *Podroza*, 790 F.3d at 839. Plaintiffs argue that the issuer in *Podraza* explained "exactly how" it conducted its accounting, Opp. 17, but, as explained above, Marathon did too. *Supra* 3-4. Moreover, Plaintiffs ignore the several other ways this case is identical to *Podraza*, including that (1) Marathon engaged in months-long comment letter correspondence where it "responded to the SEC's questions and defended [its] position as consistent with GAAP," 790 F.3d at 839; (2) there was never any enforcement inquiry or action; (3) the CorpFin correspondence began *after* Marathon had made disclosures on the topic; and (4) Marathon's independent auditor signed off on its financials. Mot. 12-13. And Plaintiffs either ignore Defendants' other cases entirely or make vain attempts to distinguish them.[2]

The only actual difference between this case and *Podraza* is CorpFin's timing. In *Podraza*, the issuer disclosed in its 2011 10-K that it had received CorpFin comments and that certain comments were unresolved, three months *before* it issued its restatement.

[2] Plaintiffs ignore *Zamir*, 2018 WL 1258108 at *17, which holds that defendants' transparent disclosure of its accounting methods to CorpFin undermines scienter. Plaintiffs' attempts to distinguish *In re Plug Power Inc. Sec. Litig.*, 2023 WL 5577276, at *17 (S.D.N.Y. Aug. 29, 2023); *Perrin* v. *SouthWest Water Co.*, 2011 WL 10756419, at *11 (C.D. Cal. June 30, 2011), and *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007), fail. It is uncontroversial that courts routinely decline to infer scienter based solely on CorpFin correspondence (*Plug Power*) or the announcement of an investigation (*Hansen*). And *Perrin* strikes at the core of the issue here—there is a considerable difference between knowledge that CorpFin questioned Marathon's accounting (a routine and normal part of the regulatory process), and an "intent to defraud investors." 2011 WL 10756419 at *11.

5

*Espinoza* v. *Whiting*, 8 F. Supp. 3d 1142, 1146 (E.D. Mo. 2014), *aff'd*, *Podraza*, 790 F.3d 828. Plaintiffs run wild with this fact, arguing that Marathon "hid" this "secret correspondence" from investors in a "deviat[ion] from its normal practice." Opp. 1, 18, 21. **False.** As Defendants explained, SEC rules only require an issuer to disclose the *existence of unresolved comments* that it "believes are material" *in its annual Form 10-K*. Mot. 15; Ex. Y at 11. Accordingly, after receiving CorpFin's initial round of comments in April 2022, the *first opportunity* Marathon had to disclose the existence of unresolved comments was in its next Form 10-K, filed on March 10, 2023. Marathon *proactively* issued a restatement *before* filing that 10-K, and then *did disclose* the existence of additional unresolved comments in the 10-K—precisely what the SEC requires. Mot. 15. Further, Plaintiffs' contention that it is Marathon's "normal practice" to (1) disclose the existence of unresolved CorpFin comments in real-time and (2) publicly file comment letters *before* CorpFin completes its review is a total fiction (and contrary to SEC rules[3]), and Plaintiffs plead no actual facts supporting that argument. *See* ¶¶ 228-230.[4]

Regarding MaraPool, Plaintiffs' claim that "Defendants admitted to the SEC that their MaraPool accounting violated GAAP and the SEC told them to revise that" is, again, *false*. Opp. 17. Plaintiffs presumably refer to CorpFin's response to Marathon's June 13, 2022 letter, where Marathon initially concluded that it was a "principal." ECF No. 69-4 at 10. CorpFin's response included several additional questions about Marathon's mining

---

[3] It is not even clear that Marathon is *permitted* to publicly file the letters, given that it is CorpFin's responsibility to make them public, which it *cannot* do until "20 business days after it has completed its review" of the filing in question. Mot. 15; Ex. X at 4.

[4] Plaintiffs cite *Diabat* v. *Credit Suisse Grp. AG*, 2024 WL 4252502 (S.D.N.Y. Sept. 19, 2024), which has vastly different facts. There, a bank's "scandals" caused "accounting issues" and overhauls to "processes, procedures, organizational and business structure, and senior management." *Id.* at *3, 134. CorpFin inquired about whether those revisions had a material impact on the bank's internal controls. The court held this inquiry caused the bank to identify material weaknesses in its internal controls, which it "deliberately withheld from the market in order to shore up the Company's stock price" when the bank was near collapse, despite continuing to make "unduly optimistic" representations about the bank's financial condition. *Id.* at *142-145. Here, Defendants did not "deliberately withhold" any information—CorpFin and Marathon were merely discussing Marathon's *publicly disclosed* accounting methods—and Plaintiffs do not provide any coherent fraud theory.

pools, and contained a standard, catch-all statement that Marathon's "revenue recognition accounting policy should be revised, accordingly." ECF No. 69-5 at 5. In response to this feedback, Marathon "comprehensively re-evaluated its revenue recognition accounting policy" and concluded that "it acted as an agent, and not a principal (as was previously indicated)," and that the bitcoin miners themselves acted as principals because "they are the primary responsible party for providing computing power to the customer." ¶ 111; ECF 69-7 at 4-8. There was no "admiss[ion]" of a GAAP violation. Indeed, CorpFin *never challenged* Marathon's conclusion that it acted as an agent. Mot 8.

### B.   Plaintiffs Fail to Plead any Motive to Defraud

Plaintiffs repeat their failed allegation that Okamoto's single stock sale in *December 2021*—which predates the comment letters—"contributes to scienter." Opp. 21; ¶ 245; *see* ECF No. 54 at 17. And remarkably, despite affirmatively raising the issue of stock sales in the SAC, Plaintiffs ask the Court to ignore SEC filings that provide a complete picture of Defendants' stock transactions and undermine scienter. Opp. 12-13. The Ninth Circuit *expressly rejected* this argument: "having raised questions about officers' stock sales," plaintiffs "can hardly complain when the officers refer to the same information in their defense." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999). Plaintiffs' argument that it matters "how" Defendants increased their shares—implying that vested stock options should not count—was *also expressly rejected* by the Ninth Circuit. *Id.* Plaintiffs cannot escape the fact that each Defendant here *substantially increased* his shareholdings during the Class Period, which numerous courts hold negates an inference of scienter. *Id.* at 986-988; *accord* Mot. 11. Plaintiffs' utter failure to identify any motive to defraud cuts strongly against their claims. Mot. 11-12.[5]

### C.   The Core Operations Inference Does Not Apply Here

---

[5] Plaintiffs' argument that Gallagher's and Salzman's resignations were "uncharacteristic," was previously briefed and rejected. ECF No. 55 at 7-8. *Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009) ("Mere conclusory allegations that a financial manager resigns or retires during the class period or shortly before the corporation issues its restatement, without more, cannot support a strong inference of scienter.").

Plaintiffs fall back, as a last-ditch effort, on the theory that senior executives *must have known* that the accounting was incorrect. Opp. 18-20. But in the absence of particularized facts—which are utterly absent here—the Ninth Circuit permits this so-called "core operations" theory only in the "rare circumstances" where "the nature of the relevant [concealed] fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." *Prodanova* v. *H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1111–12 (9th Cir. 2021).

Marathon's judgments concerning two esoteric accounting policies that scarcely impacted the Company's financials plainly do not meet this incredibly exacting standard. Plaintiffs argue that these were "critical accounting policies" but ignore Defendants' unrebutted showing that they concerned only 2.57% of the Company's assets and had ***no*** net impact on revenue. *Firefighters Pension & Ret. Sys.* v. *Ixia*, 2015 WL 1775221, at *30 (C.D. Cal. Apr. 14, 2015) (service contracts accounting for under 20% of revenue not a "core operation"). Plaintiffs cite ***no case*** that has ever found an accounting policy to be a "core operation"; to the contrary, accounting judgments are "not generally . . . found to be a core operation." *Korzen* v. *Tetra Tech Inc.*, 2014 WL 12603209, at *5 (C.D. Cal. Jan. 17, 2014). Additionally, while Mr. Thiel's testimony—which was made years after the relevant events and does not mention accounting—may indicate his involvement in Marathon's vital business operations, it plainly is not an admission "of detailed involvement in the minutia of a company's operations." *Police Ret. Sys. of St. Louis* v. *Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014).[6] And Plaintiffs' recycled allegations that scienter can be inferred because Marathon's executives were responsible for internal controls, Opp. 20, would apply to all executives and thus are routinely rejected.[7]

---

[6] Plaintiffs' case law is distinguishable because it concerned "specific allegations," absent here, "of direct involvement in the production of false accounting statements and reports." *In re Daou Systems, Inc.*, 411 F.3d 1006, 1023 (9th Cir. 2005).

[7] *See, e.g.*, *Okla. Firefighters Pension & Ret. Sys.* v. *IXIA*, 50 F. Supp. 3d 1328, 1361–62 (C.D. Cal. 2014); *Alaska Elec. Pension Fund* v. *Adecco S.A.*, 371 F. Supp. 2d 1203, 1216–18 (S.D. Cal. 2005); Mot. 16-17. Plaintiffs' cases (Opp. 20) are inapposite because they involved specific allegations of wrongdoing undertaken by individual defendants. *Lowry*

In any event, Plaintiffs' "core operations" argument completely misses the point. Even if bitcoin impairment testing were "critical" and this were the "rare" case where the Court could simply assume that Marathon's executives were aware of these accounting judgments, that would not satisfy scienter. That is because the question here is ***not*** whether executives knew ***how*** Marathon accounted for revenues and impairment, but rather, whether Defendants knew that Marathon's accounting approach was "***so unreasonable or obviously wrong*** that it should give rise to an inference of deliberate wrongdoing." *Zamir*, 2018 WL 1258108 at *6; *Ezzes*, 2024 WL 895018, at *11 (no scienter absent "facts demonstrating that Defendants knew" ASC 330 "was being incorrectly applied"); *supra* 2. The core operations doctrine cannot support this inference, particularly where the CorpFin correspondence reflects Marathon's good faith defense of its judgments, which were consistent with numerous competitors and industry guidance. Mot. 11-12.

> ### D. Weighing All the Inferences, the Non-Culpable Inference is Unequivocally More Compelling

The comparative scienter analysis mandated by the Supreme Court shows that the overwhelming inference arising from the SAC is that Marathon cooperated in good faith with CorpFin and believed that its accounting judgments—which were vetted by its auditor and also used by certain peers—complied with then-existing rules and guidance. Mot. 11-12. Plaintiffs utterly ignore this, and their Opposition advances no coherent fraud theory. They concede their failure to establish "an intend to defraud" (*sic*) shareholders. Opp. 22 n.19. They offer no reason why Defendants would lie about the two accounting methods. They concede that (a) there was no authoritative guidance for how to account for digital assets during the Class Period and (b) the restatement had a de minimis impact on Marathon's financials. Moreover, the premise of Plaintiffs' entire case—that Defendants' accounting judgments were "obviously wrong" (*supra* 2) because the applicable GAAP

v. *RTI Surgical Holdings, Inc.*, 532 F. Supp. 3d 652, 661 (N.D. Ill. 2021) ("individual defendants directed account managers to ship products early"); *Indiana Pub. Ret. Sys.* v. *AAC Holdings, Inc.*, 2021 WL 1316705, at *8 (M.D. Tenn. Apr. 8, 2021) ("Defendants' disclosure of rising DSOs is a further indicator that Defendants knew that their accounting for (and statements concerning) accounts receivable were overly rosy").

principles were "traditional" and therefore easy to apply to cryptocurrency, Opp. 20-21—is nonsensical. CorpFin and Marathon spent ten months and hundreds of pages debating these and other issues, and FASB overhauled this exact framework ten months after the Class Period *precisely because* traditional GAAP principles "did not faithfully represent the economics of crypto assets." Mot. 3-4. Viewed holistically, the non-fraudulent inference is the most "compelling" one: Marathon exercised its judgment in the absence of authoritative guidance and amid conflicting industry practices, and after lengthy discussion with CorpFin, voluntarily changed two accounting judgments. That is simply not fraud.

## II. PLAINTIFFS FAIL TO PLEAD FALSITY

Defendants demonstrated that none of the SAC's three categories of misstatements is actually alleged with particularity to be false. Mot. 20-22. Plaintiffs' response is a confusing concoction of conclusory assertions that Defendants "cannot deny" and "cannot dispute" falsity because of the restatement, without a *single citation* to any specific alleged misstatement or an explanation of how the restatement renders it false. Opp. 13-16.

**Financials and GAAP Compliance.** Plaintiffs concede that most challenged statements are opinions. Opp. 15. They argue that Defendants did not subjectively believe their opinions because "the SEC told the Company it violated GAAP," *id.*, but, as argued above, they are wrong.[8] *Supra* 2-7; Mot. 20-22. But even if Plaintiffs were correct, this argument concedes that all opinions *before* "the SEC told the Company it violated GAAP," *i.e.*, June 24, 2022 (Mot. 7), are not false and must be dismissed.

**Impairment Accounting Methodology.** Plaintiffs wrongly claim that Defendants "do not and cannot argue" that their descriptions of accounting methods were opinions. Opp. 15 n.5. They are wrong, Mot. 22, and those opinions were not false because they were not subjectively disbelieved. In any event, the opinions (¶¶ 171, 183-86) were all made before the comment letters *began*, and *cannot be false* under Plaintiffs' own theory.

**Internal Controls.** Plaintiffs insist "there is no dispute that the Company did not

---

[8] *In re Hi-Crush Partners L.P. Sec. Litig.*, 2013 WL 6233561, at *16 (S.D.N.Y. Dec. 2, 2013), Opp. 15, concerned a duty to disclose, not the falsity of an opinion statement.

have sufficient controls to prevent" misstated financials.  Opp. 14.  But Plaintiffs plead ***no facts*** about Marathon's internal controls, let alone explain why any specific statement about internal controls was rendered false by the restatement.  Mot. 22.

## III.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

Plaintiffs claim they do not have to "plead statistical significance," Opp. 23, yet the Ninth Circuit plainly requires a "complaint [to] allege that the defendant's share price fell ***significantly*** after the truth became known."  *Metzler Inv. GMBH* v. *Corinthian Colls., Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008); Mot. 23 (collecting cases).  Plaintiffs also argue that Defendants' cases do not involve "price drops of the magnitude present here," but this is both false and irrelevant.  It is false because the two-day, 8.31% decline is comparable to, *e.g.*, the two-day, 7.4% drop dismissed as insignificant in *Ramos* v. *Comerica Inc.*, 2024 WL 2104398, at *3-4 (C.D. Cal. Apr. 12, 2024); Mot. 23-24.  It is irrelevant because the analysis turns on a comparison to the stock's ***typical movements***, and Plaintiffs concede that Marathon's share price fluctuated by more than 8.31% on ***35% of single trading days*** in the months before and after the stock drop, more than comparable cases that dismissed on these grounds.  Mot. 23-24; *see Eng* v. *Edison Int'l*, 2017 WL 1857243, at *4 (S.D. Cal. 2017) ("A drop of 10% for a volatile stock may not be statistically significant.")

Plaintiffs next argue that the stock fluctuations here are uninformative because Marathon's stock price declined as an industry index rose.  Opp. 23.  But they cite no authority for performing an index comparison *or* their choice of index, which tracks highly diversified companies (*e.g.*, Accenture, American Express, Goldman Sachs) that are irrelevant comparators.  Finally, Plaintiffs concede that Marathon's stock price fully recovered in 11 days and has not dropped below the pre-disclosure price since, Mot. 24, but argue that the recovery took too long. Opp. 24.  They ignore that the recovery coincided with the Restatement, *see* Ex. T, meaning that once the market had the full information about the Restatement, there was no adverse price impact.

## IV.    THE COURT CAN PROPERLY CONSIDER DEFENDANTS' EXHIBITS

Plaintiffs do not dispute that Exhibits D, F, G, L, P, Q, R, and S are incorporated

11

by reference.  *See* Mot. 3 n.1.  Plaintiffs' allegations on their face—particularly when coupled with these exhibits—provide ample grounds for dismissal.  The Court need not resolve any objections about Defendants' exhibits in order to dismiss the SAC.

Still, Plaintiffs' challenge to the remaining exhibits is meritless.  Exhibits E, H, I, J, K, are SEC filings routinely considered by courts in § 10(b) cases.  *Ferris* v. *Wynn Resorts Ltd.*, 462 F. Supp. 3d 1101, 1117 (D. Nev. 2020) (taking judicial notice of "SEC filings, matters of public record, and news articles").  Exhibit M is a redline that compares the SAC to the FAC, which Plaintiffs failed to file.  Exhibits N, X, and Y are SEC rules and policies that are publicly available on the SEC's website, not, as Plaintiffs bizarrely suggest, "adjudicative facts" of which Defendants seek judicial notice.  Opp. 12.  Exhibits A, B, C, and Z are documents that Plaintiffs' affirmatively cite in the SAC, but now seek to shield from the Court because Defendants showed that they actually undermine Plaintiffs' argument. Mot. 3-7, 17.[9]  They are properly considered under the incorporation-by-reference doctrine, which "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."  *Khoja* v. *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  Exhibit O is part of the CorpFin correspondence that Plaintiffs have incorporated by reference.  Mot. 7 n.3.  Exhibits U, V, and W are SEC Forms 4 that are properly considered under binding Ninth Circuit precedent.  *Supra* 7.  Finally, Marathon's stock price data (Ex. T) is cited throughout the SAC and Opp., ¶¶ 12, 124, 196; Opp. 9, 22-24, and is routinely considered at the pleading stage.  *See Daniels Family 2001 Rev. Trust* v. *Las Vegas Sands Corp.*, 709 F. Supp. 3d 1217, 1235 (D. Nev. 2024).

## **CONCLUSION**

For the foregoing reasons, the SAC should be dismissed with prejudice.  Tr. 17.

---

[9] Plaintiffs claim that Defendants' citation to Exhibit Z is "unscrupulous," Opp. 12, but this exhibit was cited for the proposition that there were 83 comments submitted to the FASB—something Plaintiffs do not and cannot dispute.  Mot. 17.  The reference to "five comment letters" is a reference to the SAC, not Exhibit Z.  *Id*.

Dated this 10th day of September 2025.

FLANGAS LAW GROUP
*/s/ Kimberly P. Stein*
KIMBERLY P. STEIN
Nevada Bar No. 8675
E-mail: kps@fdlawlv.com

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
ANDREW J. EHRLICH (*Admitted Pro Hac Vice*)
New York Bar No. 4103909
Email: aehrlich@paulweiss.com
DANIEL S. SINNREICH (*Admitted Pro Hac Vice*)
New York Bar No. 5192497
Email: dsinnreich@paulweiss.com
KEVIN P. MADDEN (*Admitted Pro Hac Vice*)
New York Bar No. 5990049
Email: kmadden@paulweiss.com
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000

*Attorneys for Defendants Marathon Digital Holdings Inc., Hugh Gallagher, Merrick Okamoto, Simeon Salzman, and Fred Thiel*

13

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on September 10, 2025, I electronically filed the above and foregoing document entitled **REPLY IN SUPPORT OF MOTION TO DISMISS** using the CM/ECF system which will send a notice of electronic filing to all CM/ECF registrants.


                                        /s/Ronnielyn Abrera
                                        An employee of Flangas Law Group

14